UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|   |   |
|---|---|
| JASON BOUDREAU,<br>    *Plaintiff,*<br><br>v.<br><br>KEVIN PETIT, et al.<br>    *Defendants*. | C.A. No. 17-cv-301-S-PAS |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR JOINT MOTION FOR A STAY OF PROCEEDINGS**

Defendants, Kevin Petit ("Petit"), City of Warwick ("Warwick"), the Warwick Police Department ("WPD," collectively with Petit and Warwick, the "Warwick Defendants"), Steve Lussier ("Steve"), John Lussier ("John"), Donald Lussier ("Donald," collectively with Steve and John, the "ATC Defendants"), and the Rhode Island State Police ("State Defendant") submit this memorandum of law in support of their Joint Motion for a Stay of Proceedings filed contemporaneously herewith.[1]

**INTRODUCTION**

Jason Boudreau ("Plaintiff") originally filed a complaint ("the Complaint") in the Rhode Island Superior Court, Providence County, C. A. No. PC-17-2347, on May 18, 2017, alleging twenty-one causes of action against the Warwick Defendants, the ATC Defendants, and the State Defendants. The Warwick Defendants removed the action to the United States District Court for the District of Rhode Island on June 19, 2017 based upon Plaintiff's assertion of federal claims in

---

[1] In making such motion, the Warwick Defendants, ATC Defendants, and State Defendant reserve their rights to file an answer, assert defenses, and/or otherwise respond under Rule 12 of the Federal Rules of Civil Procedure.

the Complaint. *See* ECF No. 1. Pending concurrently with the instant federal civil lawsuit is a state criminal proceeding against Plaintiff for embezzlement, No. P2-2015-0095A (the "state criminal proceeding") in connection with his employment at Automatic Temperature Controls, Inc. ("ATC"). *See* Exhibit A, Certified Copy of the Criminal Docket in Case No. P2-2015-0095A.[2] As a result of the pending state criminal proceeding, the Warwick Defendants, ATC Defendants, and State Defendant respectfully and jointly request that the Court stay the instant matter until the conclusion of the Plaintiff's state criminal proceeding to promote the interests of the Court, judicial economy and the public's interest in the integrity of the criminal case.

## FACTS[3]

Plaintiff worked as a Finance and Operations Manager at ATC, a job which Plaintiff claims required him, among other things, to manage the company payroll and distribute bonuses to ATC employees. *See* Compl. at ¶¶ 12, 21, 29. However, on June 24, 2011, ATC terminated Plaintiff after discovering that he had used his company work computer to view pornographic images involving minors. *See id.* at ¶¶ 159, 151-52.[4]

Thereafter, Plaintiff filed a lawsuit in this Court on May 28, 2013 against the ATC Defendants and Petit, C.A. No. 13-388-S-LDA, alleging, among other things, that they had

---

[2] Plaintiff is currently being held at the Donald W. Wyatt Detention Facility due to a pending federal criminal case in Case No. 1:16-cr-00011-M-LDA.

[3] The facts set forth herein are allegations garnered from the Complaint, and by reciting same, the Warwick Defendants, ATC Defendants, or State Defendant do not admit such facts, but rather reserve their rights to dispute such allegations as they see fit, should this action ultimately proceed.

[4] Plaintiff was charged by State Defendant and prosecuted by the Rhode Island Department of Attorney General. Plaintiff pled nolo contendere to one count of child pornography on January 2, 2014 and was sentenced to five (5) years at the Adult Correctional Institute ("ACI"), all of which were suspended, and five (5) years' probation.

2

conducted unlawful searches and seizures and had violated the Federal Wiretap Act by installing monitoring software on his work computer ("the 2013 Lawsuit").[5]  *See id.* at ¶ 172.  On July 30, 2013, Steve met with Petit and gave a police statement, stating that Plaintiff had no authority to distribute bonus checks during his employment with ATC.  *See id.* at ¶ 198.  Steve also stated that ATC only distributed bonuses between July and September each year, and that Plaintiff had, for no reason, paid himself bonuses outside of this time frame in 2011.  *See id.* at ¶ 201.  He further communicated his belief that Plaintiff had embezzled checks paid to Town Fair Tire in 2010 and 2011.

On April 16, 2014, Steve met with Troopers Brown and Rivello, two members of the Rhode Island State Police ("RISP"), at the RISP barracks in Scituate, RI, and provided a further statement. *See id.* at ¶ 241.  On May 14, 2014, Brown obtained a search warrant for Plaintiff's bank records from September 1, 2010 to June 30, 2011.  *See id.* at ¶¶ 262-63.  The RISP then arrested Plaintiff and charged him with embezzlement on June 11, 2014.  *See id.* at ¶ 266.  This state criminal proceeding remains pending and Plaintiff is currently awaiting trial.  Exhibit A, Certified Copy of the Criminal Docket in C.A. P2-2015-0095A.

The gravamen of Plaintiff's complaint is that the ATC Defendants, after learning that Plaintiff filed the 2013 Lawsuit, "retaliated" against him by reporting Plaintiff's embezzlement of ATC funds to the WPD and RISP.  Further, Plaintiff claims that the WPD and RISP infringed his civil rights by violating the Fourth Amendment and engaging in a conspiracy with the ATC Defendants to fabricate, alter, and destroy evidence.

Plaintiff Boudreau's Complaint sets forth twenty-one (21) counts, all of which arise from the same facts and circumstances in Boudreau's state criminal case in P2-2015-0095A:

---

[5]     Judgment entered for all defendants in said action on November 30, 2015.

- Count I – Retaliation in Violation of 42 U.S.C. § 1983

- Count II – Conspiracy to Retaliate (42 U.S.C. § 1983)

- Count III – Abuse of Process

- Count IV – Deliberate Fabrication of False Evidence

- Count V – Conspiracy to Fabricate Probable Cause

- Count VI – Bad Faith Destruction of Evidence

- Count VII – Obstruction of Justice

- Count VIII – Denial of Right to a Fair Trial

- Count IX – Retaliatory Inducement to Prosecute for Exercise of First Amendment

- Count X – Retaliatory Prosecution

- Count XI – Defamation and Libel

- Count XII – Libel Per Se

- Count XIII – Concealment of Evidence (42 U.S.C. § 1983)

- Count XIV – False Report of a Crime

- Count XV – False Statements and Omissions in Warrant Affidavits (42 U.S.C. § 1983)

- Count XVI – Invasion of Privacy

- Count XVII – Failure to Intervene/Neglect to Prevent Harm from Conspiracy

- Count XVIII – Negligent Infliction of Emotional Distress

- Count XIX – Intentional Infliction of Emotional Distress

- Count XX – Negligent Employment/Retention/Failure to Discipline

- Count XXI – Failure to Properly Train and Supervise Law Enforcement Employees

Plaintiff's prayer for relief requests compensatory and punitive damages along with pre-judgment interest. *Id.* at pages 47-48

## ARGUMENT

This matter must be stayed since the factual and legal issues in this civil suit significantly overlap with the state criminal prosecution. Any disposition of the underlying civil claims could undermine or interfere with the state criminal proceeding and would constitute an impermissible collateral attack of the pending state criminal charges. *See Wallace v. Kato*, 549 U.S. 384, 394 (2007); *Heck v. Humphrey*, 512 U.S. 477, 489 (1994). In such instances, federal courts have authority to stay federal civil litigation of issues related to an underlying criminal charge.

In *Heck,* a state prisoner filed suit under § 1983 after being convicted of manslaughter in state court. 512 U.S. 477, 478 (1994). The plaintiff in that case alleged, among other things, that the defendants had engaged in "unlawful, unreasonable, and arbitrary investigation" leading to his arrest and "knowingly destroyed" exculpatory evidence which could have proved his innocence. *Id.* at 479. The Supreme Court held that a prisoner cannot sustain a claim under § 1983 in relation to a state law conviction "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned . . ." 512 U.S. at 489. Quite simply, the Court held that a prisoner cannot collaterally attack a conviction by filing a civil rights claim related to that conviction, unless the conviction is overturned. *Id.* at 487.

The Court reasoned that the favorable termination of the criminal proceeding requirement "avoids parallel litigation over the issues of probable cause and guilt…and it precludes the possibility of the claimant [*sic*] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation

5

of two conflicting resolutions arising out of the same or identical transaction" *Id.* (*quoting* S. SPEISER, C. KRAUSE, & A. GANS, AMERICAN LAW OF TORTS § 28:5, p. 24 (1991).

Therefore, the *Heck* Court concluded that when a prisoner institutes a federal district court civil action alleging § 1983 claims, the district court

> must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 487. The Court expounded that if a "state criminal defendant brings a federal civil-rights lawsuit during the pendency of his criminal trial, appeal, or state habeas action," abstention by the federal court or a stay may be an "appropriate response to the parallel state-court proceedings." *Id.*

More recently, the Supreme Court has affirmed and extended the logic of *Heck* to pending criminal charges, acknowledging that it is the "common practice" of a federal district court to stay a civil action that attempts to litigate issues relating to any underlying state-based pending criminal charge. *See Wallace*, 549 U.S. at 594. Specifically, the Court held that

> If a plaintiff files a [civil] claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.

*Id*. Numerous federal circuit courts have followed the holdings in *Heck* and *Wallace* and invoked this power to stay the civil proceedings that relate to parallel state court criminal proceedings. *See*

6

*United States v. Henry,* 491 F.2d 702 (6th Cir. 1974); *Texaco, Inc. v. Borda,* 383 F.2d 607 (3rd Cir. 1967); *Keating v. Office of the Thrift Supervision,* 45 F.3d 322 (9th Cir. 1995).

In this Circuit, "a federal suit for damages under § 1983 *must* be stayed pending completion of a parallel criminal prosecution in state court if the validity of the state criminal charge is a necessary issue in the federal suit." *Manning v. Tefft,* 839 F. Supp. 126, 128 (D.R.I. 1994) (citing *Guerro v. Mulhearn,* 498 F.2d 1249, 1255 (1st Cir. 1974)). The reason courts exercise the power to stay is rooted in principles of comity and judicial efficiency, as it will avoid litigating questions that could be settled by the criminal prosecutions. *See Landrigan v. City of Warwick,* 628 F.2d 736, 743 (1st Cir. 1980); *Guerro,* 498 F.2d at 1254. In *Landrigan,* the plaintiff filed a § 1983 action in federal court alleging, like in the instant case, that Warwick police officers arrested him on a motor vehicle violation charge without probable cause. 628 F.2d at 743. The District Court held that because the pending criminal prosecution "could settle the question whether defendants had probable cause to arrest plaintiff on that charge," the civil suit could not proceed. *Id*.

The District of Massachusetts has also recently exercised the power to stay civil claims while an interrelated criminal case is pending. *See Watson v. Perez*, 168 F. Supp. 3d 365 (D. Mass. 2016); *Crooker v. Burns*, 544 F. Supp. 2d 59, 60 (D. Mass. 2008); *Spencer v. Dookhan*, No. 13-11431-DJC, 2014 U.S. Dist. LEXIS 5088, at *2 (D. Mass. Dec. 5, 2014). In *Watson*, the plaintiffs were arrested and charged with several offenses stemming from a physical altercation at the Worcester District Court. 168 F. Supp. 3d at 368-69. An investigation ensued, and the plaintiffs filed an action alleging constitutional claims related to both the altercation and the investigation. *Id.* at 369-70. Although the court discussed and compared the two proceedings as state and federal rather than criminal and civil, it nonetheless decided to stay the civil matter until the resolution of the criminal proceeding. *Id.* at 373-74. The court reasoned that a decision in a civil matter brought

7

under 42 U.S.C. § 1983 "'may interfere with a state proceeding because it can have the same practical effect as a declaratory judgment: the federal court has produced a ruling on the merits that the federal plaintiff can then use to alter the state proceeding.'" *Id.* at 374 (*quoting Rossi v. Gemma*, 489 F.3d 26, 37 (1st Cir. 2007)).

Additionally, in *Crooker*, the plaintiff was arrested and later convicted of a felony following several searches. 544 F. Supp. 2d at 60. After his conviction, the plaintiff filed civil claims against many of the individuals who participated in the criminal investigation, and was then indicted on new charges stemming, in part, from the searches that led to his initial arrest and conviction. *Id.* at 62. The court invoked *Wallace*, and determined that the civil proceeding could become entangled with the criminal proceeding, and held that the reasoning in *Wallace* "manifestly points to the proper course of action here, which is to stay all of these civil cases until the pending criminal indictment is resolved." *Id.* at 65.

Similarly, in *Spencer*, the plaintiff was convicted of drug possession and faced another, pending proceeding on additional drug charges at the time he filed his civil claims. 2014 U.S. Dist. LEXIS 5088, at *2. Recognizing that the civil claims related to the plaintiff's ongoing criminal proceedings, the court invoked its discretion as authorized by *Wallace* and *Crooker* and elected to stay the civil matter until the resolution of the criminal proceedings. *Id.* at *12-13.

Every claim in Plaintiff's Complaint arises from the investigation leading to the state criminal proceeding, and all such claims are so intertwined that a disposition of the civil claims in this Court may call into question the validity of a potential future conviction in the state criminal proceeding. The allegations in Plaintiff's Complaint that evidence was falsified, that the affidavits were based on fabricated evidence, that the ATC Defendants, Warwick Defendants and State Defendant all conspired together to charge Plaintiff with embezzlement all seek to collaterally

attack the pending state criminal embezzlement charges against Plaintiff. For instance, if this Court found that in some way, Plaintiff's civil rights were violated during the investigation of the embezzlement charges, then Plaintiff may argue collateral estoppel in the state criminal proceeding in an effort to attack a potential conviction or aid in his criminal defense. Moreover, if Plaintiff is convicted, then all of his § 1983 claims must, as a matter of law, be dismissed. *See Heck*, 512 U.S. at 489. Accordingly, as in *Crooker*, the situation in this case "manifestly points to the proper course of action here," which is to stay this matter until the resolution of Plaintiff's criminal case. 544 F. Supp. 2d at 65.

## **CONCLUSION**

For all of the foregoing reasons, the Warwick Defendants, ATC Defendants, and State Defendant respectfully and jointly request that the Court stay this proceeding pending the outcome of the state criminal proceeding, and at the conclusion of such proceeding, if Plaintiff is acquitted, then Plaintiff should be required to file a motion to lift such stay and proceed with the case.

| | |
|---|---|
| KEVIN PETIT, CITY OF WARWICK, AND THE WARWICK POLICE DEPARTMENT, | STEVE LUSSIER, JOHN LUSSIER, AND DONALD LUSSIER, |
| By their attorney, | By their attorneys, |
| /s/ Marc DeSisto | /s/ Douglas A. Giron |
| _____ | /s/ Christopher J. Fragomeni |
| | _____ |
| Marc DeSisto, Esq. (#2757) | Douglas A. Giron, Esq. (#2943) |
| DESISTO LAW OFFICES | Christopher J. Fragomeni, Esq. (#9476) |
| 211 Angell Street | SHECHTMAN HALPERIN SAVAGE, LLP |
| Providence, RI 02906 | 1080 Main Street |
| p: 401-272-4442 | Pawtucket, RI 02860 |
| f: 401-272-9937 | p: 401-272-1400 |
| marc@desistolaw.com | f: 401-272-1403 |
| | dgiron@shslawfirm.com |
| | cfragomeni@shslawfirm.com |

RHODE ISLAND
STATE POLICE,

By its attorneys,

PETER F. KILMARTIN
ATTORNEY GENERAL

/s/ Kate C. Brody
_____

Kate C. Brody, Esq. (#8425)
Special Assistant Attorney General
Susan E. Urso, Esq. (#4688)
Assistant Attorney General
150 S. Main Street
Providence, RI 02906
p: 401-274-4400, Extension 2293/2233
kbrody@riag.ri.gov
surso@riag.ri.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that the within document has been electronically e-filed and e-served on all counsel of record on this the 21st day of July 2017, and it is available for viewing and downloading.  A copy has also been mailed, postage prepaid, on this 21st day of July 2017 to:


Jason Boudreau,
#10950070
Donald W. Wyatt Detention Facility
950 High Street
Central Falls, RI 02863

                                              */s/ Kate C. Brody*