UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JASON BOUDREAU,
    Plaintiff,

v.     C.A. No. 17-301WES

KEVIN PETIT, et al.,
    Defendants.

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

    This matter is before the Court on Defendants' Motion to Stay this litigation until the conclusion of related state criminal proceedings against Plaintiff Jason Boudreau. ECF No. 9. On February 17, 2015, Boudreau was arraigned in Providence County Superior Court on a charge that he had embezzled from his former employer, Automatic Temperature Controls, Inc. ("ATC"). Previously, in 2012 and 2014, Boudreau was convicted on state felony charges of second degree child molestation, possession of child pornography, larceny and receiving stolen goods.[1] The state embezzlement charge had yet to go to trial when, on December 28, 2015, Boudreau was charged in this Court with possession of child pornography. Noting Boudreau's "abysmal" record of noncompliance with previous court-ordered obligations, this Court ordered that he be detained.[2] Meanwhile, proceeding *pro se*, on June 19, 2017, Boudreau filed this civil case against the principals of ATC, Steve, John and Donald Lussier ("the Lussiers"); Warwick Police Detective Kevin Petit; the City of Warwick; the Warwick Police Department; the Rhode Island State Police; and two State Police officers, James Brown and Nicholas Rivello

---

[1] In addition, in 2011, Boudreau was convicted of the misdemeanor of driving with a suspended license and, in 2014, of the misdemeanor of tampering with a motor vehicle.

[2] The detention order was entered in <u>United States v. Boudreau</u>, CR No. 16-011JJM (ECF No. 6).

(collectively, "Defendants"). Boiled to its essence, Boudreau's lengthy complaint (the "Complaint") alleges that the state embezzlement charge was concocted by the Lussiers and Detective Petit, in conspiracy with the State Police, based on false statements and fabricated, altered and destroyed evidence, in order to retaliate against Boudreau for his 2013 filing of a § 1983 federal lawsuit against the Lussiers, Detective Petit and the Rhode Island State Police, alleging they wrongfully intercepted the electronic communications that formed the basis for his 2014 child pornography conviction, in contravention of 28 U.S.C. § 2511.[3]

Arguing that the factual and legal issues presented in the present case overlap significantly with the parallel state criminal embezzlement charge, Defendants have jointly moved to stay this civil case until the conclusion of the state criminal case. Citing Wallace v. Kato, 549 U.S. 384 (2007) and Guerro v. Mulhearn, 498 F. 2d 1249 (1st Cir. 1974), Defendants contend that litigation of the civil claims, all of which are premised on Boudreau's allegation that the state criminal embezzlement charge was fabricated, will undermine and interfere with the state criminal proceeding. Moreover, they argue that the civil litigation may be unnecessary because some or all of the claims may ultimately be subject to dismissal under Heck v. Humphrey, 512 U.S. 477, 485 (1994) (barring collateral attack on criminal conviction through civil suit for damages).

Boudreau counters that it is premature to anticipate that his claims will be Heck-barred and, in any event, Heck will not be applicable because the civil and criminal cases lack the requisite identity of issues, because his civil case relates to events that occurred after the events in issue in the criminal case. In addition, he asserts that, due to the pending federal child pornography charges, his state criminal case for embezzlement has stalled and will remain

---

[3] Boudreau v. Lussier, C.A. No. 13-388WES.

2

moribund, even as potentially exculpatory memories fade and evidence is lost. If this civil case is stayed until after the resolution of the already-delayed state embezzlement case, he argues that he may be deprived of a meaningful opportunity to assert his constitutional rights.

The motion to stay has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(A) for determination. However, because the motion may have dispositive impact on Plaintiff's case, I have addressed it by report and recommendation. See Reynaga v. Cammisa, 971 F.2d 414, 416-17 (9th Cir. 1992) (magistrate exceeded authority where stay effected involuntary dismissal of case); Pass & Seymour, Inc. v. Hubbell Inc., 532 F. Supp. 2d, 418, 426 n.7 (N.D.N.Y. 2007).

## I. Background[4]

### A. Criminal and Civil Litigation Based on Boudreau's Possession of Child Pornography

Boudreau's history is a tangle of multiple criminal prosecutions brought against him, overlapping with civil litigation initiated by him. The present story begins when Boudreau was hired by the Lussiers[5] as ATC's finance manager in September 2009. In that capacity, he managed ATC's payroll and accounts payable and paid himself "bonuses" totaling more than $34,000 between September 2010 until May 2011. ECF No. 1-1 ¶¶ 83-93, 111, 258. Illustrated in both the text of and the exhibits to the Complaint, he and the Lussiers hotly dispute whether these bonuses were authorized. See ECF No 1-1 at 55-56, 85-87, 98-99. Boudreau claims that all of the money he paid himself was appropriate. ECF No. 1-1 ¶¶ 47, 57-64, 83-93, 346. As the Lussiers later told the State Police, an investigation of Boudreau's financial dealings was

---

[4] As indicated in the text, this background is drawn from the Complaint, as well as from the public docket entries and published opinions in Boudreau's other civil and criminal cases. The intent is to provide background to the issues raised by the motion to stay. The Court is not making or proposing findings of fact regarding the merits of the criminal embezzlement charge; the wording of the text should not be so interpreted.

[5] In the interest of simplicity, the Court refers to "the Lussiers" as a unitary entity; in fact, the actor(s) who engaged in the various actions attributed to "the Lussiers" was at least one of them, but not necessarily all.

triggered in June 2011 by a bounced check.[6]  ECF No. 1-1 at 88-89.  This resulted in the discovery that ATC's checking account balance was off by $60,000.  Id.  In the same time period, ATC discovered that Boudreau was spending his time visiting child pornography sites on his office computer during the work day.  Id.  The latter discovery led to his immediate firing in June 2011. ECF No. 1-1 ¶ 126 & at 71.

Summoned by ATC, Detective Petit and the Cranston and Warwick Police became involved, Boudreau was charged and, in 2014, convicted on a plea of *nolo contendere* to possession of the child pornography found on the ATC computer.  Boudreau v. Automatic Temperature Controls, Inc., C.A. No. 16-646S, 2017 WL 3671019, at *2 & n.3 (D.R.I. Apr. 28, 2017), adopted in part, 2017 WL 2829685 (D.R.I. June 30, 2017); Boudreau v. Lussier, C.A. No. 13-388S, 2015 WL 7720503, at *1-5 (D.R.I. Nov. 30, 2015); Boudreau v. Lussier, No. CA 13-388S, 2014 WL 651536, at *1 (D.R.I. Feb. 19, 2014).

While the criminal charge of possession of child pornography was pending and continuing after it resolved in 2014 with his *nolo* plea, Boudreau launched a series of civil actions in state court, as well as in this Court, against the Lussiers, ATC, their attorneys, their software vendor and the law enforcement officials involved with the investigation and prosecution of the criminal child pornography case.  First, on May 28, 2013, he filed a *pro se* action in this Court under § 1983 and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511, 2520 ("ECPA"), against the Lussiers, another ATC employee, Detective Petit, various Cranston police officers, the Cities of Cranston and Warwick, and the Rhode Island State Police, alleging that the searches of his vehicles, home and office computer, including the alleged interception of electronic transmissions from the office computer, violated his Fourth

---

[6] Boudreau claims that this is a lie.

Amendment rights and the ECPA.  Boudreau v. Lussier, C.A. No. 13-388WES (D.R.I.) ("Boudreau 2013 Case").

The Boudreau 2013 Case grew into a massive piece of litigation.  By the time summary judgment entered against Boudreau in November 2015 on the merits of all of his claims,[7] Boudreau had flooded the record with fifty-three motions, including three for injunctive relief.  In one illustrative incident pertinent to the instant motion, Boudreau filed an emergency motion for temporary restraining order and preliminary injunction based on the warrantless search by the State of his electronic devices.  Boudreau 2013 Case, ECF No. 247.  The Court denied the motion, finding that the search was a standard probationary check on a convicted sex offender, pursuant to Boudreau's express written waiver of his Fourth Amendment rights.  Id., Text Order, July 31, 2015.  The Court further found that Boudreau "chose not to advise the Court of these probation conditions" and that Boudreau's motion was "baseless."  Id.  The Court invoked the holding of the United States Supreme Court in Younger v. Harris, 401 U.S. 37 (1971), finding that, "[Boudreau's] attempt to use this Court to interfere with the State's supervision of his conditions of criminal probation requires abstention under the Younger doctrine."  Id.  The matter was referred for a report and recommendation regarding whether the filing was made in good faith and, if not, whether Boudreau should be sanctioned.  Id.  Summary judgment terminated the proceeding before this issue was resolved.

A second civil case was launched in this Court on August 6, 2013, when Boudreau sued the Lussiers and Detective Petit for essentially the same conduct addressed in the Boudreau 2013

---

[7] The decision on summary judgment is found at 2015 WL 7720503 (D.R.I. Nov. 30, 2015).  Plaintiff's January 11, 2016, appeal of this adverse outcome remains pending as of this writing.  See Boudreau v. Lussier, U.S.C.A. for the First Circuit, Case Number 16-1049.

Case. Boudreau v. Lussier, C.A. No. 13-577MML (D.R.I.). This complaint was dismissed without prejudice because of the overlap of claims and parties with the prior case.

More recently, after his 2014 felony conviction for possession of child pornography, Boudreau continued to file civil cases based on claims concerning the events that culminated in that conviction. In August 2016, he sued ATC and a software company in Rhode Island Superior Court, reprising the claim that ATC intercepted his electronic communications. After the case was removed to this Court, the federal claims were dismissed as time barred, and the state-law claims were dismissed based on the lack of federal jurisdiction. Boudreau v. Automatic Temperature Controls, Inc., C.A. No. 16-649S, 2017 WL 2829685 (D.R.I. June 30, 2017).[8] And on December 20, 2016, Boudreau sued the Lussiers, one of ATC's employees, ATC's law firm, and the software company in Providence County Superior Court, claiming that the software used on his office computer to detect child pornography violated the Rhode Island Wiretap Act, the Rhode Island Computer Crimes Act, and his right to privacy pursuant to R.I. Gen. Laws § 9-1-28.1. The case was removed to this Court in March 2017 (C.A. No. 17-090WES), where Boudreau's scorched-earth approach to litigation resulted in two motions to remand, a motion for reconsideration, a motion to certify an interlocutory appeal and a motion to disqualify counsel for the Lussiers. All were denied. Midway through this deluge, the Court ordered that Boudreau obtain prior written approval before filing any additional motions or other papers. C.A. No. 17-090WES, ECF No. 20. As of this writing, defendants' motion for summary judgment is pending. ECF No. 41.

      B.      **Criminal Embezzlement Case**

---

[8] Remanded to Rhode Island Superior Court, the case has been scheduled for oral argument on defendants' motion to dismiss. Case No. PC-2016-3609.

The tale of the criminal embezzlement case takes the reader back to June 2011, when the Lussiers uncovered that Boudreau was using his office computer to view child pornography. ECF No. 1-1 at 88-89. As the Lussiers told law enforcement, during the same time period, they also examined Boudreau's financial dealings and discovered an array of problems, including that he was paying himself unauthorized bonuses. A month after Boudreau was fired in June 2011, this charge was reported to the Rhode Island Department of Labor and Training, where it was ignored. ECF No. 1-1 ¶¶ 131-32 & at 55-56. According to the Complaint, it was not raised again until two years later, on July 30, 2013, when one of the Lussiers, accompanied by Detective Petit of the Warwick Police, who had been involved with the investigation of the child pornography charge, was interviewed by the Rhode Island State Police regarding ATC's claim that Boudreau had paid himself unauthorized bonuses. ECF No. 1-1 ¶¶ 191-237. The Complaint alleges that nothing happened for almost nine more months until April 16, 2014, when the State Police again interviewed the Lussiers. ECF No. 1-1 ¶ 241. Following that interview in May 2014, search warrants were issued for bank records. ECF No. 1-1 ¶¶ 262-63. In June 2014, Boudreau was arrested on the charge of embezzlement. ECF No 1-1 ¶ 266. He was arraigned in Rhode Island Superior Court on February 17, 2015 and an attorney entered an appearance on his behalf.[9] ECF No. 9-2 at 3.

The Superior Court conducted eight pretrial conferences between April and December 2015, with repeated continuances at the request of Boudreau's attorney. ECF No. 9-2 at 3; ECF No. 15 at 1. Then, on December 28, 2015, a federal arrest warrant issued on new charges of possession of child pornography. United States v. Boudreau, CR No. 16-011JJM, ECF No. 3. Boudreau was arrested on December 30, 2015; a detention hearing held the same day in this

---

[9] This case is on Providence/Bristol County Superior Court's criminal docket at Case No. P2-2015-0095A.

Court resulted in an order of detention, based, among other reasons, on the strength of the evidence and Boudreau's previous noncompliance with court-ordered obligations. Id., ECF No. 6. Boudreau remains at the Wyatt Detention Facility.

Because he is in federal custody, Boudreau failed to appear at the January pretrial conference held by the Rhode Island Superior Court on the state embezzlement charge. ECF No. 9-2 at 3. Based on his nonappearance, a warrant issued on February 2, 2016. Id. Boudreau advised the Superior Court by letter of his circumstances, as well as of his willingness to appear by video conference. ECF Nos. 9-2 at 3, 14 at 1. Boudreau claims that discovery in the embezzlement case remains incomplete and that the State has done nothing to move the case forward since his detention; similarly, Boudreau's court-appointed attorney has done nothing to move the case due to a policy implemented by his office to delay until a pending warrant is quashed. ECF Nos. 14 at 2, 15 at 2, 16 at 1. Defendants advise that Boudreau's right to request transfer to state custody for disposition of the state criminal charge, pursuant to the Interstate Agreement on Detainers, 18 U.S.C. App'x 2 § 2 (Article III) ("IAD"), will not arise until the federal criminal charges are resolved by acquittal or the imposition of sentence. ECF No. 15 ¶¶ 6-7 & Ex. A.

### C. Complaint

I turn at last to the claims in this case.

The one-hundred-page (with attachments) Complaint consists of 281 paragraphs of background facts – paragraphs 12 through 281 are incorporated by reference into twenty-one counts, which are set forth in paragraphs 282 through 519. The Complaint's foundational allegation, repeated throughout, is that, in July 2013, the Lussiers and Detective Petit lied and conspired with the State Police to fabricate the probable cause that supports the embezzlement charge. As a result of this conspiracy, Boudreau claims, search warrants were issued that were

unsupported by probable cause, resulting in a groundless accusation of felony embezzlement against him. ECF No. 1-1 ¶¶ 187-281.

According to the Complaint, the conspiracy to bring the baseless embezzlement charge began on July 30, 2013, when one of the Lussiers, accompanied by Detective Petit, was interviewed by the State Police. ECF No. 1-1 ¶¶ 191-239. To establish that this was an act of retaliation, Boudreau points to an event that occurred less than two weeks before the State Police interview. Specifically, on July 16, 2013, the Lussiers and Detective Petit received copies of the Boudreau 2013 Case complaint in the mail. ECF No. ¶¶ 1-1 173, 174 & at 81. Based on the timing of the first State Police interview and on Detective Petit's participation in it,[10] Boudreau alleges that the Lussiers and Detective Petit concocted the facts to establish probable cause, and conspired with the State Police, to cause the issuance of the warrants and charging documents for the purpose of retaliating against Boudreau for filing the Boudreau 2013 Case against them. ECF No. 1-1 ¶ 300.

Boudreau's Complaint, grounded in federal and state law, includes the following claims: retaliation; conspiracy to retaliate; retaliatory inducement to prosecute for the exercise of First Amendment rights and retaliatory prosecution; abuse of process; false statements and omissions in warrant affidavits; deliberate fabrication of false evidence; conspiracy to fabricate probable cause; bad faith destruction and concealment of evidence; obstruction of justice; denial of the right to a fair trial; defamation and libel; invasion of privacy; negligent and intentional infliction of emotional distress; and the failure of law enforcement to intervene to prevent harm, negligent

---

[10] The Complaint posits that, as a member of the Internet Crimes Against Children task force, Detective Petit has no responsibility for financial crimes like embezzlement, and that, as a Warwick police officer, he has no authority in Cranston where ATC is located. The pleading thus implies that Detective Petit's only motivation for assisting the Lussiers in reporting the alleged embezzlement to the State Police was to retaliate against Boudreau for the filing of Boudreau 2013 Case. See ECF No. 1-1 ¶¶ 177-78, 184-85, 196.

employment and the failure to train law enforcement employees. According to Boudreau, only six of the twenty-one Counts require that he demonstrate the lack of probable cause either for the warrants or for the embezzlement charge. ECF No. 16 at 3-4. These are Count 5 (conspiracy to fabricate probable cause); Count 8 (denial of right to fair trial); Count 9 (retaliatory inducement to prosecute); Count 10 (retaliatory prosecution); Count 13 (concealment of evidence); and Count 14 (false report of a crime).

The Complaint seeks compensatory and punitive damages of over $10 million, as well as a declaration that the allegations of embezzlement are "utterly false" and were filed in a false police report in retaliation for the filing of a lawsuit. ECF No. 1-1 ¶¶ 481-85 & at 47-48. While not requested in the Complaint, in his opposition to the stay motion, Boudreau asks the Court to "enjoin the state proceeding, as that criminal case was commenced in retaliation for the Plaintiff's filing of a lawsuit against the Defendants in 2013." ECF No. 12 at 21.

## II. Applicable Law and Analysis

Since the decision of the United States Supreme Court in Wallace v. Kato, it has been well settled that a civil rights action that is "related to rulings that will likely be made in a pending or anticipated criminal trial" should be stayed "until the criminal case or the likelihood of a criminal case is ended." 549 U.S. at 393-94. This "common practice" results from the appropriateness of suspending the civil suit until it is clear whether the Supreme Court's ruling in Heck v. Humphrey will require its dismissal. [11] Wallace, 549 U.S. at 394.

---

[11] Heck holds that a plaintiff convicted of a crime cannot recover damages for an alleged violation of his constitutional rights, if the facts giving rise to the violation, if true, would invalidate the conviction, unless the plaintiff proves "that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87. Such a civil rights claim must be dismissed as Heck-barred. Wallace v. Kato, 549 U.S. 384, 393 (2007); see Crooker v. Burns, 544 F. Supp. 2d 59, 62 (D. Mass. 2008) ("Heck bar" prevents collateral attack on criminal conviction through civil suit).

The definitive guidance in our Circuit anticipated Wallace. Since Guerro v. Mulhearn, district courts must either dismiss or hold in abeyance any federal civil rights action that potentially undermines the validity of a state criminal proceeding which has not yet completed its full course of trial and direct appeal. 498 F.2d at 1255. As further explicated in Manning v. Tefft, such a stay is rooted in principles of comity and judicial efficiency, to avoid the subversion of the state criminal prosecution and the litigation of questions that may be settled by the state prosecution. 839 F. Supp. 126, 128 (D.R.I. 1994) (citing Landrigan v. City of Warwick, 628 F.2d 736, 743 (1st Cir. 1980)). Such a stay is consistent with the federalism buttressing the abstention doctrine in Younger. 401 U.S. at 46;[12] see Landrigan, 628 F.2d at 743; Watson v. Perez, 168 F. Supp. 3d 365, 373-74 (D. Mass. 2016); Spencer v. Dookhan, C.A. No. 13-11431-DJC, 2014 WL 6904377, at *3 (D. Mass. Dec. 5, 2014); Manning, 839 F. Supp. at 128.

The Guerro stay is mandatory when the civil rights case alleges there was no probable cause to issue warrants, arrest or charge, and the state criminal prosecution will settle the probable cause issue. Manning, 839 F. Supp. at 127 (§ 1983 action must be stayed where judgment in plaintiff's favor would border on determination that he is not guilty of state criminal charge). The mandatory stay should enter even though it is likely that litigation of the state criminal charges will be delayed by the plaintiff's conviction on unrelated federal charges. Id. at 127-28 (federal case stayed while state criminal information pending even though no trial date set and "it has been suggested that the State of Rhode Island may have lost interest in prosecuting [plaintiff] because he currently is serving a 33-year sentence at the United

---

[12] Younger holds that the federal court lacks jurisdiction to interfere in a pending state criminal prosecution, even where there is a claim of a violation of important federal rights, as long as the federal claims can be "raised and resolved somewhere in the state process." Maymó -Meléndez v. Álvarez-Ramírez, 364 F.3d 27, 36 (1st Cir. 2004). When Younger applies, the federal court must abstain. Spencer v. Dookhan, Civil Action No. 13-11431-DJC, 2014 WL 6904377, at *3 (D. Mass. Dec. 5, 2014).

11

Penitentiary in Lewisburg, Pennsylvania"). On the other hand, if it is unclear how the federal rulings will affect the state criminal case, the stay is permissive; whether it should issue is based on balancing the potential harm to comity and the orderly administration of criminal justice with the potential prejudice to the litigant in staying the case. Guerro, 498 F.2d at 1255. If the civil case presents an issue that is "entirely separate and distinct from those underlying the state prosecution," a stay is not appropriate as to that issue. Manning, 839 F. Supp. at 128-29.

Cases interpreting these principles have declined to struggle to parse the civil claims when the gravamen of the case is an attack on the viability of the pending criminal charge. For example, in Crooker v. Burns, the § 1983 civil action alleged Fourth Amendment violations in the seizure of personal property, only some of which would likely become evidence in the pending criminal case. 544 F. Supp. 2d 59, 61 (D. Mass. 2008). Rather than engaging in the "extreme waste of judicial resources" required to make an item-by-item determination, the court stayed the entire proceeding: "[t]hough it is conceivable that some of the allegedly improper seizures involved items irrelevant to both [plaintiff]'s outstanding criminal conviction and the pending charges, and thus [would] escape the Heck bar, conservation of judicial resources dictates a single determination as to the applicability of Heck at the conclusion of all criminal proceedings." Id. at 64-65; see, e.g., Conrad v. Wayne KRC, C.A. No. 6:15cv77, 2015 WL 1739056, at *2 (E.D. Tex. Apr. 14, 2015) ("The civil case should, however, be stayed until the pending criminal case has run its course, as until that time it may be difficult to determine the relation, if any, between the two."); Davis v. Richland Cty., No. 4:12-cv-3429-RMG, 2014 WL 3805802, at *5 (D.S.C. July 30, 2014) (where pending criminal charges implicated only one of two plaintiffs, entire matter stayed in interest of judicial economy); Quinn v. Guerrero, No. 4:09cv166, 2010 WL 412901, at *1-4 (E.D. Tex. Jan. 28, 2010), adopted, 2010 WL 653477

12

(E.D. Tex. Feb. 23, 2010) (when the court cannot determine which claims are barred by Heck, civil case should be stayed in its entirety until criminal proceedings are completed).

In determining whether to issue such a stay, courts are mindful that delay of the civil rights claim creates the risk of lost evidence and fading memories. While such equitable considerations are acknowledged as significant, once a stay is mandated because many, if not all, of the civil claims will likely be Heck-barred if the state criminal proceeding ends in conviction, the factors that justify the stay – the importance of the interest of efficiency and comity – tip the balance in favor of waiting until the state proceeding runs its course. As the court held in Quinn:

> The Court is sympathetic to Plaintiff's concerns about the effect that the passage of time may have on evidence and witnesses, but these concerns do not outweigh the considerations occasioned by Heck and other cases.

2010 WL 412901, at *4. Notably, the Quinn court did not ignore the plaintiff's concerns about the deleterious effects of delay. To the contrary, it addressed them by issuing a strongly-worded reminder to defendants in the civil case of their "obligation to preserve evidence, including electronic data, during the pendency of this suit." Id. at *4.

Relatedly, Younger mandates abstention if a federal civil case seeks declaratory or injunctive relief affecting a state criminal prosecution. 401 U.S. at 41 n.2, 54. The First Circuit has interpreted Younger as also requiring abstention in § 1983 actions seeking damages where the award sought would have "the same practical effect as a declaratory judgment: the federal court has produced a ruling on the merits that the federal plaintiff can then use to alter the state proceeding." Rossi v. Gemma, 489 F.3d 26, 37-38 (1st Cir. 2007); see also Watson, 168 F. Supp. 3d at 374. As long as there is no colorable allegation that the claimed defects in the pending criminal proceeding cannot be raised in state court, Younger requires the federal court to defer. Spencer, 2014 WL 6904377, at *1, 3 (court abstains from civil claim that criminal charge

13

was brought as "witch hunt" based on fabricated evidence to retaliate for prior case). In examining whether the ongoing state proceeding presents an adequate opportunity to raise federal claims as defenses, the fact that the state proceeding "has moved at a snail's pace" is no reason to refrain from abstaining, as long as the federal-court plaintiffs never availed themselves of state court remedies (like mandamus) to prevent the delay. Sirva Relocation, LLC v. Richie, 794 F. 3d 185, 196 (1st Cir. 2015).

The claims in Boudreau's Complaint lie squarely within the scope of Wallace, Younger and Guerro, where the Court is required to abstain or issue a stay.[13] The Complaint's essence is that Boudreau is innocent of the embezzlement charged by the State; that the evidence presented to the State Police to induce them to investigate the embezzlement charge was fabricated and altered; and that exculpatory evidence was destroyed – all to retaliate against Boudreau for filing the Boudreau 2013 Case. The Complaint not only seeks a declaration of the falsity of the embezzlement charge, but also claims that the filing of the false charge and the related public statements have caused him injury. That the lack of probable cause is intertwined with every claim is clear from Boudreau's pleading of the background facts – his allegation of the intentional fabrication of probable cause is pled in twelve separate paragraphs, which are interspersed throughout the fact section and woven into every one of the twenty-one Counts. ECF No. 1-1 ¶¶ 190, 194, 200, 203, 209, 212, 227, 239, 250, 260, 264, 265. Indeed, Boudreau concedes that an element of six of his twenty-one Counts is the absence of probable cause. ECF No. 16 at 3-4. Further, with retaliatory prosecution (and inducement to prosecute) as the crux of his civil case, it is clear that the issue of probable cause, *vel non*, is essential to the case.

---

[13] Plaintiff's principle legal argument relies on cases – e.g., Rapp v. Putnam, 644 F. App'x 621 (6th Cir. 2016); Fox v. DeSoto, 489 F.3d 227 (6th Cir. 2007) – holding that the Heck-bar does not arise until there is a criminal conviction. This argument misconstrues Defendants' motion. They do not seek dismissal based on Heck. Rather, they seek a stay based on Wallace, in anticipation that Heck may later be implicated.

14

Hartman v. Moore, 547 U.S. 250, 262-66 (2006) (lack of probable cause is essential element of claim of inducement to criminal prosecution in retaliation for speech, just as for claim of retaliatory prosecution). To illustrate, even Boudreau's vague allegation about the failure to train law enforcement employees, read in context, clearly rests on the foundation that the alleged embezzlement was investigated and prosecuted despite the absence of probable cause. See ECF No. 1-1 ¶¶ 516-19.

Boudreau argues passionately that a stay would result in an unconscionable delay that will prejudice his constitutional claims. However, a careful review of the unique circumstances of this case suggests that any harm caused by a delay is likely to be limited. The underlying embezzlement case is not one that depends on the ability of third-party witnesses to testify regarding matters of fading recollection (such as the description of a perpetrator observed during the commission of a crime). Rather, the pivotal factual dispute is whether Boudreau received authorization to pay himself certain extra payments; the witnesses will be Boudreau himself (should he choose to testify) and the Defendants in this case. Otherwise, the case will depend on documents. Boudreau alleges that the payments he took were bonuses, and that contemporaneous financial records and emails of ATC will confirm that. In any event, according to Boudreau, any loss of evidence has long-since happened. Under these circumstances, I find that a continued delay of Boudreau's federal civil rights case will not have a catastrophic impact on his ability to assert his civil rights claims, if they do not turn out to be Heck-barred by his embezzlement conviction in state court.

Boudreau also argues that a stay is inappropriate because the sequence of the federal and state criminal proceedings have operated to halt progress on the state criminal case; thus, a stay will result in even further postponement of Boudreau's civil suit. He contends that such a delay

15

implicates the Younger principle that abstention should not be deployed if its use would effectively deprive the federal litigant of a meaningful opportunity to raise federal defenses. In considering these arguments, it is pertinent that Boudreau was detained in part based on his own "abysmal" record of noncompliance with court-ordered obligations. Also pertinent is that Boudreau's attorney in the state criminal embezzlement case repeatedly requested continuances before Boudreau was arrested and detained on the federal pornography charges. Moreover, the attorney had already moved for discovery of the embezzlement documents and the State claims that it has complied with all of its discovery obligations. Although Boudreau claims that critical material has not been provided, his attorney has done nothing to follow up since Boudreau was detained, not because of any legal impediment but because of a policy in his office to delay while a warrant is pending. The only limitation on Boudreau's attorney's ability to proceed with discovery or other motions raising constitutional defenses is that Boudreau cannot appear in state court except by video conference. However, Boudreau has consented to video appearances, while the State claims that Boudreau has appeared by video in other state criminal proceedings since he has been federally detained.

      These facts make plain that this is a case, like Sirva Relocation, where the slow, and now-halted, pace of the state criminal proceeding results in large part from the actions and inactions of Boudreau and his attorney. As such, it does not amount to a deprivation of a meaningful opportunity to raise federal defenses sufficient to avoid Younger abstention. Sirva Relocation, 794 F.3d at 196 (abstention appropriate despite state's "lackadaisical handling of matter" where plaintiff never sought to expedite proceedings); see Manning, 839 F. Supp. at 127 (stay required by Guerro despite delay due to State's loss of interest in prosecuting plaintiff serving 33-year federal sentence). In any event, Boudreau's ability to raise his federal defenses in the state

16

proceeding remains intact because he may choose to assert them as soon as the pending federal criminal charges are resolved.

Based on the foregoing, I find that every Count of this Complaint appears to implicate matters that go to the heart of "the validity of a state criminal conviction which has not yet completed the full course." Guerro, 498 F.2d at 1255. For that reason, despite a state criminal proceeding that has been thrown off track by Plaintiff's federal arrest and detention on unrelated charges, I find that the requested stay is mandatory and recommend that the Court stay this matter until the state criminal prosecution is concluded.

Further, to the extent that it is conceivable that some aspect of this Complaint could be litigated without undermining the matters in issue in the state criminal proceeding,[14] I find that the "potential harm to comity and the orderly administration of criminal justice" outweigh the less-than-catastrophic harm to Boudreau arising from a delay, particularly where the harms to comity and the administration of justice are far from hypothetical, given Boudreau's conduct as a litigant in other civil rights cases he has filed.[15] See Guerro, 498 F.2d at 1255; Quinn, 2010 WL 412901, at *1-4 (stay ordered where need to protect rights of parties in criminal matter outweighs concerns about the passage of time on plaintiff's civil case). At bottom, like the court in Crooker, I decline to devote judicial resources to attempting to untangle this complex pleading as Plaintiff urges. See 544 F. Supp. 2d at 64 (citing Wallace, proper course is to stay all civil claims until pending indictment is resolved). Rather, I recommend that the Complaint be stayed

---

[14] To be clear, I find that none of the Counts or claims in the Complaint is "entirely separate and distinct from that underlying the state prosecution," so as to render the stay unnecessary as to such a Count or claim. See Manning, 839 F. Supp. at 128-29.

[15] For example, in the Boudreau 2013 Case, the Court made the finding that Boudreau tried to use his status as a federal court plaintiff to interfere with the State's supervision of his conditions of criminal probation, leaving unresolved only whether he acted in good faith in so doing. Likewise, in Boudreau's latest case focused on the legality of the child pornography investigation leading to his 2014 conviction, his conduct has resulted in a court order barring him from filing motions or papers without leave of Court.

in its entirety. To mitigate the potential harm from the delay, as in Quinn, I remind all Defendants of their obligation to preserve evidence while this civil suit is stayed, including the electronic data and the other documents Boudreau references in his Complaint and other filings, to the extent that such materials ever existed or still exist.

Alternatively, viewing the Complaint through the Younger lens, I find that Boudreau has filed a civil case based on a retaliatory prosecution and retaliatory inducement to prosecute for which he is seeking money damages, declaratory relief and potentially an injunction barring the state prosecution,[16] and that it is crystal clear that the effect of this § 1983 action, were Boudreau to prevail on his claim that Defendants lacked probable cause, would substantially undermine the validity of the state embezzlement charge. See Landrigan, 628 F.2d at 743 (citing Guerro, 489 F.2d at 1253). Thus, the federalism concerns behind Younger abstention are applicable[17] and require that the civil case should be held in abeyance pending final determination in the state court system of the criminal charge resulting from that arrest. Landrigan, 628 F.2d at 748. Finding that Younger abstention is appropriate in the circumstances presented by Boudreau's Complaint, I also recommend that the Court abstain until the state criminal case has concluded.

## III.     Conclusion

Based on the foregoing, I recommend that Defendants' Joint Motion for a Stay of Proceedings (ECF No. 9) be GRANTED. Any objection to this report and recommendation must

---

[16] The latter request for relief is mentioned in one of Boudreau's briefs, ECF No. 12 at 21, although not (yet) in the Complaint itself.

[17] Plaintiff argues that Younger does not apply because he has accused the police of bad faith. This contention fails because the law is clear that the making of such a claim does not alter the Younger requirement that the federal court abstain. As Landrigan holds, to avoid Younger abstention, the bad faith showing must be more than just alleged bad faith on the part of the police officers who initiated the criminal proceeding. 628 F.2d at 743-44. Rather, the claimant must show bad faith by those responsible for the prosecution. Id. Because Younger stipulates that federal interference with state criminal proceedings is to be the exception rather than the rule, an allegation of police bad faith does not suffice to license federal interference. Landrigan, 628 F.2d at 743.

be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 9, 2017