UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
JASON BOUDREAU,                )
                               )
          Plaintiff,           )
                               )
     v.                        )   C.A. No. 17-301 WES
                               )
KEVIN PETIT, STEVE LUSSIER, JOHN )
LUSSIER, DONALD LUSSIER, JAMES )
BROWN, NICHOLAS RIVELLO, CITY OF )
WARWICK, WARWICK POLICE DEPARTMENT,)
and RHODE ISLAND STATE POLICE, )
                               )
          Defendants.          )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

Before the Court are Defendants James Brown, Nicholas Rivello, and Rhode Island State Police's ("State Police") (collectively, "State Defendants") Motion to Dismiss for Failure to State a Claim, ECF No. 58, as well as Defendants Kevin Petit, City of Warwick, and Warwick Police Department's (collectively, "City Defendants") Motion to Dismiss, ECF No. 59. For the following reasons, State Defendants' Motion is GRANTED, and City Defendants' Motion is GRANTED IN PART and DENIED IN PART.

I. BACKGROUND

The Court is faced with a forty-nine-page Complaint – consisting of 519 paragraphs – that presents a tangled web of factual allegations and conclusory statements. Nonetheless,

1

Plaintiff Jason Boudreau's underlying theory is straightforward: he claims his former employer and a Warwick Police Officer conspired with two State Police officers to fabricate a baseless embezzlement charge against him. Boudreau asserts twenty-one counts under both federal and state law against those individuals, as well as against the City of Warwick, Warwick Police Department, and State Police, based on the purportedly improper search warrant and proceeding arrest.

Boudreau served as the Finance Manager at Automatic Temperature Controls, Inc. ("ATC") between September 2009 and June 2011. Compl. ¶¶ 12, 126, 151-52, ECF No. 1-1. As Finance Manager, Boudreau oversaw ATC's financing department, handled the company's financial statements, managed the company's payroll, and distributed salaries and bonuses to ATC employees. Id. ¶¶ 16, 29. Boudreau reported directly to Steve Lussier, John Lussier, and Donald Lussier ("the Lussiers"), who served as ATC's officers and shareholders.[1] Id. ¶¶ 13-15.

On June 24, 2011, ATC terminated Boudreau. Id. ¶ 126. Steve Lussier ("Lussier") stated that ATC terminated Boudreau after the company discovered pornographic images of minors on his work computer. Id. ¶¶ 151-52. It is Boudreau's position, however,

---

[1] Boudreau initially named the Lussiers as defendants. Compl. ¶¶ 4-6, ECF No. 1-1. By agreement, they were voluntarily dismissed from the case. Voluntary Dismissal, ECF No. 55.

that ATC terminated him due to his June 2011 arrest for driving with a suspended license. See id. ¶¶ 124-26. In particular, Boudreau alleges that the Lussiers "conspired" with Defendant Kevin Petit ("Petit") to have Boudreau arrested for driving on a suspended license.[2] Id. Petit is a Warwick Police Officer and member of the Rhode Island State Police Internet Crimes Against Children Task Force who had participated in the investigation of Boudreau's work computer. Id. ¶¶ 177-78.

Shortly after his termination, Boudreau initiated an action with the Rhode Island Department of Labor and Training ("DLT") regarding the non-payment of wages from ATC. Id. ¶ 129. Boudreau sought to recover his last paycheck and outstanding vacation pay from ATC. See id. ¶¶ 128-29. In response, Lussier asserted that ATC did not owe any outstanding wages or vacation pay because Boudreau had paid himself in "unwarranted bonuses by his own hand in the sum of $35,604.00." Ex. 2 Compl., Lussier Ltr. to DLT (July 11, 2011) 56, ECF No. 1-1. The DLT ultimately awarded Boudreau $2,800.00 in gross withheld wages in July 2011. Ex. 3 Compl., DLT Ltr. (July 20, 2011) 58, ECF No. 1-1.

Nearly two years later, Boudreau commenced an action against the Lussiers and Petit in this Court ("2013 Lawsuit"). Compl. ¶ 172. Boudreau asserted that the Lussiers and Petit violated the

---

[2] The charges for driving on a suspended license were later dismissed. Compl. ¶ 127.

Federal Wiretap Act by utilizing monitoring software on Boudreau's work computer.  See id.; see also Boudreau v. Lussier, 901 F.3d 65, 69-70 (1st Cir. 2018).  This Court later granted summary judgment against Boudreau.  See Boudreau, 901 F.3d at 80 (affirming the judgment in favor of all defendants).

Two weeks after receiving service of the 2013 Lawsuit, Lussier and Petit met at the State Police barracks on July 30, 2013. Compl. ¶ 192.  There, Boudreau alleges that Lussier and Petit engaged in a conspiracy to frame Boudreau for embezzlement in retaliation for the 2013 Lawsuit.  Id. ¶¶ 187, 194.  Lussier told Petit that Boudreau, between December 2010 and June 2011, had paid himself bonuses to which he was not entitled.  Id. ¶ 214.  Lussier did not provide Petit with ATC's financial statements, general ledger entries, or payroll records of other employees.  Id. ¶¶ 229, 237, 351-52, 473.

Boudreau alleges that Lussier and Petit were aware that such statements, as well as any supporting evidence, were either false or omitted exculpatory information.  Id. ¶¶ 426-33.  For instance, Boudreau states that Lussier and Petit produced payroll reports of legitimate pay to Boudreau and falsely asserted that ATC had not authorized such pay.  Id. ¶ 340.  Despite such alleged knowledge, Petit initiated the investigation and referred the case to the State Police.  Id. ¶¶ 428-33.  Boudreau alleges that none of the conduct at issue occurred within Petit's jurisdiction as a Warwick

Police Officer, and furthermore, that Petit had not previously handled embezzlement investigations for the State Police.  Id. ¶¶ 177-78, 277-81.

Approximately nine months later, Lussier participated in a second interview at the State Police barracks.  Id. ¶ 241.  This time, Lussier met with Defendants James Brown and Nicholas Rivello, who were two members of the State Police Financial Crimes Unit. Id.  During that interview, Lussier stated that Boudreau paid himself bonuses totaling $34,147 to which he was not entitled. Ex. 7 Compl., Steve Lussier Witness Statement 99, ECF No. 1-1. In support, Lussier provided ATC's payroll journals and Boudreau's individual earnings report.  Id. at 98.

Boudreau alleges that Lussier's statement to Brown and Rivello was inaccurate and contradicted ATC's financial documents, which Lussier had not provided to Petit, Brown, or Rivello.  Id. ¶¶ 251-52, 261.  Further, Boudreau alleges that Brown and Rivello were aware of the falsity of the statement, as they had conspired with Lussier and Petit to frame Boudreau for embezzlement.  Id. ¶¶ 377-84.  In relying on that statement, Brown and Rivello obtained a search warrant for Boudreau's bank records spanning from September 1, 2010 to June 30, 2011.  Id. ¶ 263.  After acquiring those records, the State Police arrested Boudreau and charged him

with embezzlement on June 11, 2014.[3]  Id. ¶ 266.

Years later, on May 18, 2017, Boudreau filed this action in the Rhode Island Superior Court, which City Defendants later removed to this Court.  See Petition for Removal, ECF No. 1. Following a two-and-a-half-year stay of this case pending the resolution of Boudreau's state court embezzlement charges, City Defendants and State Defendants each filed the instant motions to dismiss.  Order on Mot. to Stay, ECF No. 19; Text Order (Nov. 2, 2021).

II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint must assert "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In assessing such motions, federal courts employ a two-step analysis.  "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Garcia-Catalan v. United States, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st

---

[3] On February 6, 2023, the charges were dismissed because ATC and the Lussiers "were no longer willing to participate in the prosecution of the embezzlement charges."  Dismissal under Cr. R. 48(a), ECF No. 49-1.

Cir. 2012)).  Second, the court must "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011)).  To evaluate plausibility, "the reviewing court [must] draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

This Court recognizes that Boudreau is proceeding pro se in this matter.  To ensure pro se litigants receive "a meaningful opportunity to be heard," Eagle Eye Fishing Corp. v. U.S. Dept. of Commerce, 20 F.3d 503, 506 (1st Cir. 1994), courts read pro se complaints "with an extra degree of solicitude," Rodi v. Ventetuolo, 941 F.2d 22, 23 (1st Cir. 1991).  Even so, "the right to self-representation is not a 'license not to comply with relevant rules of procedural and substantive law.'"  Andrews v. Bechtel Power Corp., 780 F.2d 124, 140 (1st Cir. 1985), cert. denied, 476 U.S. 1172 (1986) (quoting Faretta v. California, 422 U.S. 806, 835 n.46 (1975)).  Ultimately, "[t]he Constitution does not require judges – or agencies, for that matter – to take up the slack when a party elects to represent himself."  Eagle Eye Fishing Corp., 20 F.3d at 506.

7

III. DISCUSSION

Boudreau brings a flurry of federal and state law claims against Petit, Brown, Rivello, the Warwick Police Department, the City of Warwick, and the State Police. The Complaint asserts the following counts against those parties, as numbered in the Complaint: (I) Retaliation; (II) Conspiracy to Retaliate; (III) Abuse of Process; (IV) Deliberate Fabrication of False Evidence; (V) Conspiracy to Fabricate Probable Cause; (VII) Obstruction of Justice; (VIII) Denial of Right to a Fair Trial; (IX) Retaliatory Inducement; (X) Retaliatory Prosecution; (XI) Defamation and Libel; (XII) Libel <u>Per Se</u>; (XIII) Concealment of Evidence; (XV) False Statements and Omissions in Warrant Affidavits; (XVI) Invasion of Privacy; (XVII) Failure to Intervene; (XVIII) Negligent Infliction of Emotional Distress; (XIX) Intentional Infliction of Emotional Distress; (XX) Negligent Employment; and (XXI) Failure to Properly Train and Supervise.[4]

The following recitation addresses the viability of the counts that are asserted against each party.

**A.  State Defendants**

The lion's share of Boudreau's allegations regarding State Defendants are conclusory, and what allegations remain fall short

---

[4] Boudreau also asserts claims against parties not subject to the instant motions, as numbered in the Complaint: (VI) Bad Faith Destruction of Evidence; and (XIV) False Report of a Crime.

of asserting viable claims.  Boudreau broadly alleges that Brown
and Rivello conspired with Lussier and Petit to improperly arrest
and charge Boudreau for embezzlement.  Compl. ¶¶ 239, 377.  In
support, Boudreau asserts that Brown and Rivello knew or had reason
to know of the falsity of the statements that Lussier provided to
Petit in July 2013 and to them in May 2014.  Id. ¶¶ 262, 378-84.
Accordingly, he says, Brown and Rivello violated Boudreau's rights
and harmed his reputation by moving forward with the search warrant
and arrest.  Id. ¶¶ 377-85, 417, 449-64, 486-504.

Boudreau's Complaint does not provide facts to support his
assertion that Rivello and Brown knew that Lussier's statements
were false.  Rather, Boudreau alleges that Lussier provided a
statement to Brown and Rivello concerning the bonuses at issue
that contradicted his previous statement and that contradicted
ATC's financial documents.[5]  Id. ¶ 378.  Boudreau asserts that
Brown and Rivello's decision to move forward with the investigation
in light of this purported discrepancy demonstrates the existence
of a conspiracy.  See id. ¶¶ 377-85; Pl.'s Resp. to Mot. 16, ECF

---

[5] Despite the Complaint's assertion that Rivello was present
for Lussier's 2014 statement, the partial transcript attached to
the Complaint states that Detective James Brown and Investigator
Gerald Ratigan conducted the interview.  Ex. 7 Compl., Steve
Lussier Witness Statement 91, ECF No. 1-1.  Nonetheless, this
discrepancy is of no moment, as Boudreau cannot establish claims
against Rivello even if Rivello had conducted the interview.

No. 69.  For the reasons discussed below, Boudreau fails to state a claim for relief.

    1. <u>Conspiracy to Fabricate Probable Cause Against Brown and Rivello (Count V)</u>

To establish a conspiracy claim based on a deprivation of civil rights, Boudreau must sufficiently allege that "a combination of two or more persons act[ed] in concert to commit an unlawful act." <u>Estate of Bennett v. Wainwright</u>, 548 F.3d 155, 178 (1st Cir. 2008) (citation omitted).  The essential element of such a claim "is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damages.'" <u>Ousley v. Town of Lincoln</u>, 313 F. Supp. 2d 78, 85 (D.R.I. 2004) (quoting <u>Earle v. Benoit</u>, 850 F.2d 836, 844 (1st Cir. 1988)).  Notably, "a claim of conspiracy . . . will not survive a motion to dismiss if it makes conclusory allegations without making supporting factual assertions." <u>Diaz v. Devlin</u>, 229 F. Supp. 3d 101, 111 (D. Mass. 2017) (citing <u>Slotnick v. Staviskey</u>, 560 F.2d 31, 33 (1st Cir. 1977)).

Here, Boudreau's claim rests upon the theory that Brown and Rivello knowingly relied on Lussier's purportedly false statements to obtain a search warrant, and therefore, their reliance supports the existence of a conspiracy.  <u>See</u> Compl. ¶¶ 366-86.  Boudreau alleges that Brown and Rivello knew or should have known that Lussier's statement from May 2014 was false because it contradicted

his July 2013 statement to Petit and contradicted ATC's payroll reports and financial statements.  Id. ¶ 378.

Such allegations fail to establish a viable claim.  Although a conspiracy claim may rely upon a "matter of inference", Diaz, 229 F. Supp. 3d at 111 (quoting Estate of Bennett, 458 F.2d at 178), a complaint "must set forth who did what to whom and why." DuBois v. Alves, No. CV 22-11203-RGS, 2022 WL 4376041, at *4 (D. Mass. Aug. 22, 2022) (quoting Columbus v. Biggio, 76 F. Supp. 2d 43, 52 (D. Mass. 1999)).  Here, Boudreau does not allege facts demonstrating how Brown and Rivello knew that Lussier's statements in May 2014 were false.  To the extent that Brown and Rivello could have known of the falsity based on purported discrepancies, that fact alone is not sufficient to support the existence of a concrete agreement to conspire.  See Diaz, 229 F. Supp. 3d at 111 (dismissing a conspiracy claim that did "not contain any allegations that would support an inference that there existed a concrete agreement between the officers involved in the investigation"); see also McSheffrey v. Wilder, No. 2:21CV630, 2023 WL 9188005, at *11 (E.D. Va. Nov. 16, 2023) (dismissing conspiracy claim when there were "no factual allegations supporting a conclusion that [the defendants] conspired to fabricate an indictment").  Further, Boudreau provides no facts

explaining why Rivello and Brown would seek to conspire against Boudreau.[6]

Accordingly, Boudreau fails to state a plausible claim of conspiracy to fabricate probable cause.

> 2. Denial of a Right to a Fair Trial Against State Defendants (Count VIII)

Boudreau next asserts that State Defendants violated his right to a fair trial.  The Complaint posits that Brown and Rivello improperly obtained a search warrant by relying on statements and information from Lussier that they knew were false, which resulted in the State Attorney General choosing to prosecute Boudreau. Compl. ¶¶ 417-24.  In support, Boudreau alleges that State Defendants knowingly utilized false statements on accusatory instruments, created false information concerning the embezzlement claim, and concealed and destroyed exculpatory evidence.  Id.

A party establishes a denial of fair trial claim by demonstrating that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result."  Soomro v. City of

---

[6] Boudreau posits that Rivello and Brown assisted Petit to protect him from a civilian's lawsuit under the "Blue Wall of Silence."  Pl.'s Resp. to Mot. 11, ECF No. 69.  Boudreau provides no such allegation in his Complaint, and in fact, he alleges that Lussier did not reveal to Brown and Rivello in his 2014 statement that Boudreau had previously filed suit against him and Petit. Compl. ¶ 267.

New York, 174 F. Supp. 3d 806, 815 (S.D.N.Y. 2016) (quoting Jovanovic v. City of New York, 486 F. App'x 149, 152 (2d Cir. 2012)).  Such claims provide redress on the grounds that "[f]abrication of evidence in order to pursue criminal charges offends fundamental notions of decency." Ricci v. Rhode Island, No. 120CV00543MSMPAS, 2023 WL 4686025, at *9 (D.R.I. July 21, 2023).  In light of that rationale, the investigating officer must have knowledge that the evidence was fabricated.  Id.

Boudreau's allegations do not create a plausible inference that State Defendants had knowledge of fabricated evidence.  As previously discussed, Boudreau does not provide sufficient facts to illustrate how or why State Defendants would know that Lussier's statements were not accurate.  Likewise, Boudreau's Complaint provides no basis for the allegation that State Defendants fabricated information or concealed exculpatory evidence.  It is entirely unclear from the Complaint whether State Defendants had access to exculpatory information. It is also unclear how State Defendants could have access to such information, particularly when such evidence would likely be in the possession of ATC and its officers.  See Demosthene v. City of New York, No. 14CIV816SJVMS, 2018 WL 10072931, at *8 (E.D.N.Y. July 20, 2018) (dismissing a denial of fair trial claim because the plaintiff did not "present[] facts that could show [the officers'] personal involvement in the alleged evidence fabrication"), report and

recommendation adopted, No. 14 CV 816 (SJ) (VMS), 2019 WL 3992868 (E.D.N.Y. Aug. 16, 2019), aff'd, 831 F. App'x 530 (2d Cir. 2020).

Accordingly, Boudreau fails to state a plausible claim regarding denial of right to a fair trial.

### 3. Concealment of Evidence Against Brown and Rivello (Count XIII)

In a similar vein, Boudreau sets forth a concealment of evidence claim under 42 U.S.C. § 1983 based on the theory that Brown and Rivello concealed evidence to fabricate probable cause. The Complaint alleges that Brown and Rivello, as well as the Lussiers and Petit, violated his constitutional rights by willfully and maliciously concealing exculpatory documents and information. Compl. ¶¶ 465-80. Such information consists of payroll reports of ATC employees who had received bonuses, ATC job costs reports, ATC's general ledger reports, and ATC's monthly financial statements. Id. ¶¶ 467-74.

As previously noted, Boudreau's Complaint does not allege how Brown and Rivello, as State Police officers, knew of or had access to any exculpatory information that would be solely within the control of ATC. Indeed, Boudreau expressly asserts that, when Lussier provided his statements to police, he withheld ATC's general ledger entries, ATC's payroll records involving other employees, and ATC's financial statements. Id. ¶¶ 229, 237, 351-52, 473. Therefore, Brown or Rivello could not have possibly

concealed or destroyed such information when Lussier withheld it from them in the first place.  See id.

Further, Brown and Rivello had no obligation to seek out and uncover such evidence following Lussier's May 2014 statement.  It is well settled that an officer "may terminate [his] investigation when []he accumulates facts that demonstrate sufficient probable cause."  Acosta v. Ames Dept. Stores, Inc., 386 F.3d 5, 11 (1st Cir. 2004).  As a result, once probable cause exists, there is no constitutional duty for a police officer "to explore the possibility that exculpatory evidence may exist or to conduct any further investigation in the hope of finding such evidence."  Id.; see Holder v. Town of Sandown, 585 F.3d 500, 505 (1st Cir. 2009) ("[W]e have already rejected the proposition that a police officer has a standing obligation to investigate potential defenses or resolve conflicting accounts prior to making an arrest." (citation omitted)).

The First Circuit recognizes that "[p]robable cause requires only a probability that the [suspect] committed the crime." Holder, 585 F.3d at 504.  In assessing whether an officer relied on probable cause, courts make an objective inquiry based only on the facts that were known to the officer at the time.  Id.  Notably, the officer's conclusion regarding the existence of probable cause need only be reasonable, rather than "ironclad[] or even highly probable."  Acosta, 386 F.3d at 11.

15

Here, Boudreau's Complaint and the attached transcript from Lussier's May 2014 interview reveal that probable cause existed following the interview. Under Rhode Island law, the offense of embezzlement consists of three elements: "1) that defendant was entrusted with the property for a specific use, (2) that he came into possession of the property in a lawful manner, often as a result of his employment, and (3) that defendant intended to appropriate and convert the property to his own use and permanently deprive that person of the use." State v. Oliveria, 432 A.2d 664, 666 (R.I. 1981); see R.I. Gen. Laws § 11-41-3.

Lussier, as ATC's President, addressed each of those elements in his statement to Brown and Rivello. Specifically, Lussier stated that Boudreau was responsible for the payroll of ATC's employees during his tenure as ATC's Financial Manager. Ex. 7, Compl., 92-93. Lussier later stated that Boudreau utilized that position to improperly pay himself bonuses totaling over thirty-four thousand dollars. Id. at 98-99. And in support of that assertion, Lussier provided payroll journals and Boudreau's individual earnings report. Id. at 94. Therefore, there was no obligation for Brown and Rivello to investigate for exculpatory evidence, as it was objectively reasonable for them to have believed that probable cause existed.[7] See Acosta, 386 F.3d at 10

---

[7] Moreover, as previously discussed, there are no factual allegations demonstrating that Brown and Rivello had reason to

(noting that "information furnished by a victim is generally considered sufficiently reliable to support a finding of probable cause"(citing <u>Forest v. Pawtucket Police Dep't</u>, 377 F.3d 52, 57 (1st Cir.2004)).

Accordingly, Boudreau fails to state a plausible claim of concealment of evidence.

    4. <u>False Statements and Omissions in Warrant Affidavits Under 42 U.S.C. § 1983 Against Brown (Count XV)</u>

The theory of liability and supporting factual allegations for Boudreau's claim against Brown for false statements and omissions in warrant affidavits largely overlap with his concealment of evidence claim. Therefore, that claim fails on the same grounds as Count XIII.

    5. <u>Invasion of Privacy (R.I. Gen. Laws § 9-1-28.1) Against Brown and State Police (Count XVI)</u>

Boudreau asserts an invasion of privacy count against Brown and the State Police. The claim centers on the theory that Brown and the State Police violated Boudreau's right to privacy by gaining access to his bank records through a warrant based on false and misleading evidence. Compl. ¶ 493. Consequently, Boudreau alleges that the improper release of such records to third parties

---

doubt Lussier's statements. <u>See</u> <u>Holder v. Town of Sandown</u>, 585 F.3d 500, 506 (1st Cir. 2009) (holding that "there was no reason, inherent in the situation, for [the officer] to believe that [the victim] had lied").

resulted in "unreasonable publicity to [his] private life."  Id. ¶¶ 494-95.

The Rhode Island Right to Privacy Act ("RIPRA") provides redress for unreasonable invasions of privacy.  R.I. Gen. Laws § 9-1-28.1; Brousseau v. Town of Westerly, 11 F. Supp. 2d 177, 183 (D.R.I. 1998).  To establish a violation of the right to privacy, a party must demonstrate: 1) "an invasion of something that is entitled to be private or would be expected to be private"; and 2) "[t]he invasion was or is offensive or objectionable to a reasonable man."  R.I. Gen. Laws § 9-1-28.1.  The Rhode Island Supreme Court recognizes there can exist "an expectation of privacy in . . . bank records" and that "bank records would not be publicized."  Pontibriand v. Sundlun, 699 A.2d 856, 865 (R.I. 1997).

Although Boudreau likely has an expectation of privacy in his bank records, the Complaint does not establish that the invasion was offensive or unreasonable.  RIPRA does not extend the right to privacy to bank records or other evidence that law enforcement agencies properly obtain through the warrant process.  See Brousseau, 11 F. Supp. 2d at 183 ("[I]t is difficult to believe that the Rhode Island General Assembly intended to impose liability for constitutionally permissible searches by government officials."); see also Schroeder v. Utah Att'y Gen.'s Off., 358 P.3d 1075, 1081 (Utah 2015) ("A state intrusion is not

18

unreasonable, however, when the state acts under a valid warrant or subpoena."); Brutman v. Union Bank of Cal., N.A., No. C051070, 2006 WL 3503476, at *21 (Cal. Ct. App. Dec. 6, 2006) (holding that "plaintiff has no viable claim for invasion of privacy, because his bank records were disclosed pursuant to a search warrant").

Accordingly, Boudreau may not maintain a claim for invasion of privacy.

6. Failure to Intervene/Neglect to Prevent Harm from Conspiracy Against Brown and Rivello (Count XVII)

Boudreau asserts a claim titled "Failure to Intervene/Neglect to Prevent Harm from Conspiracy" against Brown and Rivello pursuant to 42 U.S.C. § 1986.   Compl. ¶¶ 499-504.   Much like Boudreau's other claims against Brown and Rivello, the basis for this count is that Brown and Rivello were aware that Petit and the Lussiers had provided false and misleading information.   Id. ¶ 500. Consequently, Boudreau alleges that Brown and Rivello are liable for not taking action to prevent such wrongful conduct.   Id. ¶¶ 501-04.

Boudreau premises his claim on § 1986.   That section renders liable "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commissions of the same, neglects or refuses [to do so]."   42 U.S.C. § 1986.   Nonetheless, a plaintiff seeking to

recover under § 1986 must first state a claim for conspiracy to interfere with civil rights under 42 U.S.C. § 1985. <u>Gattineri v. Town of Lynnfield</u>, 58 F.4th 512, 516 (1st Cir. 2023) (noting that "violations of § 1986 necessarily depend upon a preexisting violation of § 1985"); <u>see</u> <u>Hahn v. Sargent</u>, 523 F.2d 461, 470 (1st Cir. 1975) (holding that "dismissal of appellant's claim under § 1986 falls upon the rejection of his § 1985 claims").

To establish a conspiracy claim under § 1985, Boudreau's allegations must demonstrate the following elements:

> (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege.

<u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996). In interpreting the second element, the First Circuit requires allegations of "racial, or otherwise class-based, invidiously discriminatory animus" as the motivation for the state officials' actions. <u>Knowlton v. Shaw</u>, 704 F.3d 1, 12 (1st Cir. 2013); <u>see</u> <u>Parker v. Landry</u>, 935 F.3d 9, 18 (1st Cir. 2018) ("[N]ot every agreement is sufficient to ground a section 1985(3) conspiracy[.]").

Boudreau's claim falls short on two fronts. First, Boudreau fails to establish a violation of § 1983 by Brown or Rivello, which is a prerequisite to establishing a claim under § 1985. <u>See</u>

Gattineri, 58 F.4th at 516 (dismissing a § 1985 claim because the plaintiffs were "[w]ithout any viable § 1983 claims to anchor [their] § 1985(3) conspiracy [claim]").  Second, even if Boudreau could establish a § 1983 claim, his Complaint does not provide any allegations that Brown or Rivello were motivated by a class-based animus against Boudreau.  See Knowlton, 704 F.3d at 12 (dismissing a § 1985 claim because plaintiff did not allege class-based animus as a motivating factor for the officials' conduct).

Accordingly, Boudreau fails to state a plausible claim on this count.

### 7. Defamation and Libel Against Rivello, Brown, and State Police (Count XI)

Boudreau asserts claims for defamation and libel on the grounds that State Defendants republished Lussier's purportedly false statements to the Providence Journal and Rhode Island Attorney General's office.  Compl. ¶¶ 447-64.  According to Boudreau, the Providence Journal relied on State Defendants' statements to publish an article reporting that the State Police arrested and charged Boudreau for embezzlement after his former employer accused him of improperly paying himself unauthorized bonuses.[8]  Id. ¶ 455.  Further, the State Attorney General relied

---

[8] Similar to his other claims, Boudreau alleges that Lussier's statements were false because they contradict "ATC's payroll reports, financial statements, and emails that the Defendants intentionally destroyed."  Compl. ¶ 457.

upon such statements to proceed with formal proceedings against Boudreau for embezzlement.[9] See id. ¶¶ 451, 455.

To state a defamation claim under Rhode Island law, a party must sufficiently allege "(1) the utterance of a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence; and (4) damages, unless the statement is actionable irrespective of special harm." Nassa v. Hook-SupeRx, Inc., 790 A.2d 368, 373 n.10 (R.I. 2002). Rhode Island courts define defamatory statements as those that are "false and malicious, imputing conduct which injuriously affects a man[']s reputation, or which tends to degrade him in society or bring him into public hatred and contempt." Fosu v. Univ. of R.I., 590 F. Supp. 3d 451, 460 (D.R.I. 2022) (quoting Reid v. Providence J. Co., 37 A. 637, 638 (R.I. 1897)). Ultimately, "whether a statement is defamatory is a question of law for the Court to decide." Santagata v. MiniLuxe, Inc., No. CV 18-428 WES, 2020 WL 2322851, at *6 (D.R.I. May 11, 2020) (citing Budget Termite & Pest Control, Inc. v. Bousquet, 811 A.2d 1169, 1172 (R.I. 2002)).

---

[9] Although Boudreau does not expressly allege it in his defamation count, the Court infers from Boudreau's other allegations that his claim also includes the theory that the State Attorney General relied upon those purportedly defamatory statements to pursue charges against him. See Compl. ¶ 451, 455.

In their Motion to Dismiss, State Defendants aver that the statements were not defamatory because Boudreau was indeed charged and arrested for embezzlement based on his former employer's accusations.  Mem. Law Supp. State Defs.' Mot. Dismiss ("State Defs.' Mem.") 17, ECF No. 58-1; see Marcil v. Kells, 936 A.2d 208, 213 (R.I. 2007) ("A plaintiff must show that the publication was defamatory on its face or by way of innuendo.").  Although State Defendants are correct that Boudreau was charged and arrested based on his employer's accusations, Boudreau's Complaint also alleges that State Defendants republished Steve Lussier's statements to the police, which consisted of purportedly false information that attributed criminal conduct to Boudreau.  See Compl. ¶¶ 448-53. Therefore, State Defendants' argument does not address Boudreau's theory that they republished the purportedly false information contained in Lussier's statements.

State Defendants also contend that Boudreau's claims are precluded by a qualified privilege.  State Defs.' Mem. 18-19.  The Court agrees.  Public officials acting in their official capacity receive a qualified privilege when performing their official duties.  See, e.g., Henry v. Media Gen. Operations, Inc., 254 A.3d 822, 835-38 (R.I. 2021) (holding that a public official acting in his duties is only liable for defamatory statements made with actual malice); see also Burke v. Town of Walpole, 405 F.3d 66, 95 (1st Cir. 2005) (noting that "several jurisdictions have

recognized . . . a conditional privilege for statements made by the police to members of the press or public"). A qualified privilege precludes liability for false and defamatory statements when "the publisher act[s] in good faith correctly or reasonably believes that he has a legal, moral or social duty to speak out, or that to speak out is necessary to protect either his own interests, or those of third [parties], or certain interests of the public." Ponticelli v. Mine Safety Appliance Co., 247 A.2d 303, 305-06 (R.I. 1968).

Nonetheless, a qualified privilege does not prevent liability when "the alleged defamatory statement is the product of ill will or malice." Ims v. Town of Portsmouth, 32 A.3d 914, 930 (R.I. 2011). To defeat the privilege, the defamed party must sufficiently allege that the "primary motivating force for the communication was the publisher's ill will or spite." Swanson v. Speidel Corp., 293 A.2d 307, 309 (R.I. 1972) (quoting Ponticelli, 247 A.2d at 308). Because the existence of a qualified privilege is an issue of law, it is within the Court's purview to determine whether the privilege exists. Mills v. C.H.I.L.D., Inc., 837 A.2d 714, 720 (R.I. 2003).

The Complaint does not provide facts to support an inference that Rivello and Brown's statements were primarily motivated by ill will or spite. As outlined previously, Boudreau's allegations concerning State Defendants do not demonstrate that they knew or

could have known of the purported falsity of Lussier' statements. Moreover, the Complaint does not state why Rivello or Brown would be motivated to harm Boudreau's reputation, particularly when they had no connection to Boudreau, the Lussiers, or Petit prior to the embezzlement investigation.  See Fosu, 590 F. Supp. 3d at 462 (finding no qualified privilege based on the allegation that the defendant university engaged in a campaign to destroy the plaintiff's reputation for speaking out against the university).

Therefore, a qualified privilege precludes Boudreau from asserting claims of defamation and libel against State Defendants.

### 8. Libel Per Se Against Brown and Rivello (Count XII)

Although Boudreau asserts a libel per se claim, he does not provide specific allegations in support of that count.  Compl. ¶¶ 462-64.  Even if the Court assumes that the defamation allegations serve as the basis for Boudreau's libel per se claim, a qualified privilege precludes such a claim.  See Zeigler v. Rater, 939 F.3d 385, 393-97 (1st Cir. 2019) (applying the qualified privilege to preclude a libel per se claim).  Moreover, such a claim is inapplicable to Brown and Rivello's statements, as it only applies to statements "imput[ing] insolvency, financial embarrassment, unworthiness of credit, or failure in business to a plaintiff." Andoscia v. Coady, 210 A.2d 581, 584 (R.I. 1965).

Accordingly, the Court dismisses that count against Brown and Rivello.

9. <u>Negligent and Intentional Infliction of Emotional Distress Against Brown and Rivello (Counts XVIII and XIX)</u>

Boudreau cannot establish claims for negligent infliction of emotional distress or intentional infliction of emotional distress. <u>See</u> Compl. ¶¶ 505-11. The Rhode Island Supreme Court confines the application of negligent infliction of emotional distress to the "limited circumstances where the plaintiff is either in the zone of the physical danger, or is a bystander to a tragic incident involving someone with whom he or she is closely related." <u>Swerdlick v. Koch</u>, 721 A.2d 849, 864 (R.I. 1998). The tort is plainly inapplicable in this case because there are no allegations that Boudreau was put in such situations. Therefore, the claim must be dismissed. <u>See</u> <u>Jalowy v. Friendly Home, Inc.</u>, 818 A.2d 698, 710 (R.I. 2003) (dismissing a negligent infliction of emotional distress claim because the plaintiff "was not physically endangered by defendants' alleged negligence; because he did not otherwise fall within either of the above-specified classes of persons who can bring claims for negligent infliction of emotional distress" (citing <u>Liu v. Striuli</u>, 36 F. Supp. 452, 480 (D.R.I. 1999)).

Further, to establish claims for either negligent or intentional infliction of emotional distress, a plaintiff must allege "physical symptomatology resulting from the allegedly improper conduct." <u>Vallinoto v. DiSandro</u>, 688 A.2d 830, 838 (R.I.

26

1997) (citing <u>Reilly v. United States</u>, 547 A.2d 894, 898 (R.I.1988)); <u>see</u> <u>Swerdlick</u>, 721 A.2d at 864 (noting that the physical symptomatology requirement applies to both types of emotional distress claims); <u>see also</u> <u>Norton v. Hoyt</u>, 278 F. Supp. 2d 214, 220 (D.R.I. 2003) ("The Rhode Island Supreme Court has raised this already high bar by making physical symptomatology an additional predicate to recovering damages." (citing <u>Reilly</u>, 547 A.2 at 899)). Boudreau falls far short of that standard because he does not allege any physical symptoms whatsoever. <u>See</u> <u>Lisnoff v. Stein</u>, 925 F. Supp. 2d 233, 242 (D.R.I. 2013) (dismissing a claim for intentional infliction of emotional distress due to "the complete absence of any assertions that [defendant's] alleged conduct resulted in physical symptomatology").

Accordingly, Boudreau fails to establish claims for either negligent infliction of emotional distress or intentional infliction of emotional distress against State Defendants.

> 10. <u>Negligent Employment and Failure to Properly Train</u>
> <u>and Supervise Under 42 U.S.C. § 1983 Against the</u>
> <u>State Police (Counts XX and XXI)</u>

Lastly, Boudreau asserts claims pursuant to § 1983 against the State Police based on theories of negligent employment and failure to properly train. Compl. ¶¶ 512-19. The Civil Rights Act of 1871 established § 1983 as a mechanism to "render[] certain 'persons' liable for deprivation of constitutional rights." <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 72 (1989) (Brennan,

27

J., dissenting).  In interpreting what constitutes a "person," the United States Supreme Court established "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  Id. at 71 (majority op.).  Consequently, a party may not state a claim against a state agency under that section.  Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 124 (1st Cir. 2003) (noting that claims under § 1983 are not viable against a state or its agencies); see also Brown v. Newberger, 291 F.3d 89, 92 (1st Cir. 2002) ("The claims under 42 U.S.C. § 1983 fail because a state and its agencies are not 'persons.'" (quoting Will, 491 U.S. at 71)).

Because Boudreau has no viable § 1983 claim against the State Police, the Court grants State Defendants' Motion on that count.

**B.   City Defendants**

### 1. Retaliation in Violation of 42 U.S.C. § 1983 Against Petit (Count I)

Boudreau asserts a First Amendment retaliation claim on the basis that Petit retaliated against Boudreau for filing the 2013 Lawsuit.  Compl. ¶¶ 282-307.  To establish retaliatory motive, Boudreau relies on the allegation that Petit met with Steve Lussier to discuss the embezzlement issue within two weeks of Boudreau's service of the 2013 Lawsuit upon Petit and Lussier.  Id. ¶¶ 192-93, 292-94.  Boudreau also notes that Petit did not serve as a police officer in ATC's municipality, did not serve in the State

Police's Financial Crime Unit, and had never previously engaged in an embezzlement investigation for the State Police. Id. ¶¶ 177-78, 269-72.

To state a claim for retaliation, a party must allege that "(1) he or she engaged in constitutionally protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) the protected conduct was a substantial or motivating factor in the adverse action." D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 43 (1st Cir. 2012). Even when a party establishes those elements, a defendant may avoid liability if he or she "would have reached the same decision . . . even in the absence of the protected conduct." Powell v. Alexander, 391 F.3d 1, 17 (1st Cir. 2004) (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

Boudreau presents sufficient allegations to state a prima facie retaliation claim. First, Boudreau engaged in constitutionally protected conduct when commencing the 2013 Lawsuit, as it is long settled that filing a lawsuit constitutes protected conduct. See id. (noting that filing a lawsuit is constitutionally protected conduct); Fabiano v. Hopkins, 245 F. Supp. 2d 305, 310 (D. Mass. 2003) (same); see also Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983) ("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."). Second,

Boudreau indisputably experienced an adverse result by being charged and arrested for embezzlement. See Lyons v. Wall, 464 F. Supp. 2d 79, 84 (D.R.I. 2006) ("An action is considered 'adverse' for retaliation purposes if it would 'deter a person of ordinary firmness' from the exercise of the right at stake." (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982))).

Third, the temporal proximity between Boudreau's filing of the 2013 Lawsuit and the meeting between Lussier and Petit establishes a causal connection. Temporal proximity alone can serve as "sufficient circumstantial evidence of causation" in the retaliation context. Mattei v. Dunbar, 217 F. Supp. 3d 367, 377 (D. Mass. 2016). For a plaintiff to rely solely on temporal proximity, the time between the protected activity and the retaliatory action must be "unusually suggestive." Watson v. Rozum, 834 F.3d 417, 424 (3d Cir. 2016). Here, Lussier and Petit's meeting at the State Police barracks occurred approximately two weeks after Boudreau completed service in the 2013 Lawsuit, which falls well within the range of "unusually suggestive" timing. See Nagle v. Marron, 663 F.3d 100, 111 (2d Cir. 2011) (holding that a six-week period between the protected conduct and retaliatory conduct was sufficient); Mattei, 217 F. Supp. 3d at 377-78 (ruling that plaintiff could establish a prima facie retaliation claim when the two events occurred within a month).

30

In his Motion to Dismiss, Petit contends that Boudreau's claim fails because Petit relied upon Lussier's statement to him. City Defs.' Mem. Law Supp. Mot. Dismiss 5, ECF No. 59-1 ("City Defs.' Mem."). Petit states that Lussier's statement provided sufficient evidence to make a probable cause determination. Id. Consequently, Petit properly initiated the investigation against Boudreau based on a finding of probable cause, rather than to retaliate against Boudreau for filing the 2013 Lawsuit. See Powell, 391 F.3d at 17; see also Nieves v. Bartlett, 139 S. Ct. 1715, 1726 (2019) ("The presence of probable cause should generally defeat a First Amendment retaliatory arrest claim.").

The Court disagrees with Petit's rationale at the pleadings stage. Although Petit could rely on a victim's statements when making a probable cause determination, State Defs.' Mem. 11 (citing Acosta, 386 F.3d at 10), such an argument does not address Boudreau's theory that Petit conspired with Lussier to fabricate evidence and probable cause. Indeed, the Complaint provides facts supporting a plausible inference that Petit and Lussier collaborated to create a false statement, including that Petit had a motive to retaliate based on Boudreau's filing of the 2013 Lawsuit against him and Lussier, that he met with Lussier within two weeks of Boudreau's filing of the 2013 Lawsuit, that he had previously investigated Boudreau for child pornography, and that he was investigating Boudreau for a crime not involving child

31

pornography in a neighboring city.[10]  See Little Kids, Inc. v. 18th Ave. Toys, Ltd., No. CV 18-533WES, 2020 WL 7264267, at *13 (D.R.I. Dec. 10, 2020) ("Because '[c]onspiracies are normally kept secret,' a complaint that is built on circumstantial factual allegations may be viable as long as it is plausible." (quoting Danielson v. Huether, 355 F. Supp. 3d 849, 869 (D.S.D. 2018))).

Accordingly, the Court denies City Defendants' Motion as to Count I.

### 2. Conspiracy to Retaliate Against Plaintiff for Filing a Lawsuit in Violation of 42 U.S.C. §§ 1983 and 1985 Against Petit (Count II)

Boudreau's claim against Petit pursuant to § 1985 fails for the same reasons as his Failure to Intervene claim against Rivello and Brown.  See Compl. ¶¶ 308-26.  The First Circuit requires allegations of class-based animus as the motivation for a § 1985 claim.  Knowlton, 704 F.3d at 12.  Boudreau does not provide any allegations to support that element, and therefore, the Court grants City Defendants' Motion on Count II.

### 3. Abuse of Process Claim Against Petit (Count III)

Under Rhode Island law, abuse of process occurs "when a legal proceeding, although set in motion in proper form, becomes

---

[10] Conversely, there are no factual allegations to support such an inference against State Defendants.  See generally Compl. In contrast to Petit, who had previously investigated Boudreau and had been named as an adverse party in Boudreau's 2013 Lawsuit, State Defendants had no connection to Boudreau prior to the embezzlement investigation.

perverted to accomplish an ulterior or wrongful purpose for which it was not designed." Hillside Assocs. v. Stravato, 642 A.2d 664, 667 (R.I. 1994) (citing Brough v. Foley, 572 A.2d 63, 67-68 (R.I. 1990)).  A party establishes such a claim by demonstrating that: "(1) the defendant instituted proceedings or process against the plaintiff and (2) the defendant used these proceedings for an ulterior or wrongful purpose that the proceedings were not designed to accomplish." Butera v. Boucher, 798 A.2d 340, 353 (R.I. 2002) (citing Nagy v. McBurney, 392 A.3d 365, 370 (R.I. 1978)).  In defining wrongful purpose, Rhode Island courts require a showing of "a collateral advantage . . . , such as the surrender of property or the payment of money, by the use of the process as a threat or a club." Id. (quoting W. Page Keeton, et al., Prosser & Keeton on the Law of Torts § 121 (5th ed. 1984)).  Notably, "a pure spite motive is not sufficient where process is used only to accomplish the result for which it was created." Fiorenzano v. Lima, 982 A.2d 585, 590 (R.I. 2009) (quoting Butera, 798 A.2d at 354).

Boudreau asserts a claim for abuse of process against Petit on the grounds that Petit initiated the legal process to retaliate against Boudreau for filing of the 2013 Lawsuit. Compl. ¶¶ 330-33. However, absent from Boudreau's complaint are any allegations that Petit initiated the legal process to gain a collateral advantage.  See id. ¶¶ 327-37. Boudreau merely asserts that Petit's "motive was to retaliate against the Plaintiff for the

33

Plaintiff filing a lawsuit against the Defendants." Id. ¶ 331. Such a pure spite motive is insufficient to establish an abuse of process claim. See Fiorenzano, 982 A.2d at 590 (upholding dismissal of abuse of process claim because the plaintiff did not provide any evidence supporting an attempt by the defendant to gain a collateral advantage).

Accordingly, the Court grants City Defendants' Motion as to Count III.

### 4. Deliberate Fabrication of False Evidence Against Petit (Count IV)

Boudreau's claim for "deliberate fabrication of false evidence" largely mirrors his retaliation claim in Count I. The Complaint asserts that Lussier and Petit sought to retaliate against Boudreau for filing the 2013 Lawsuit using false statements and misleading evidence. Compl. ¶¶ 338-64. Specifically, Boudreau alleges that Lussier and Petit "fabricate[d] false evidence against the Plaintiff by producing payroll reports of legitimate pay and falsely claiming that such pay was not authorized." Id. ¶ 340. He also states that Lussier did not provide payroll records concerning bonuses of other ATC employees, which would demonstrate that Boudreau had not acted improperly. See id. ¶ 351.

To establish a fabrication of evidence claim, a party must allege that the defendants knew the evidence was fabricated, as well as "that the fabricated evidence was so significant that it

could have affected the outcome of the criminal case." Ricci, 2023 WL 4686025, at *9 (quoting Black v. Montgomery Cnty., 835 F.3d 358, 369 (3d Cir. 2016)) (citations omitted)).  In applying that principle, this Court has recognized that false affidavits in support of a search warrant constitute significant evidence that could affect the outcome of the criminal case.  Id.

Here, Boudreau's allegations clear the hurdle of stating a claim.  The statements and evidence that Lussier provided to Petit – and later to Rivello and Brown - constitute significant evidence, as they were the basis for the proceeding search warrant.  See id. (holding that a fabricated affidavit was significant because it "was critical to the issuance of a warrant justifying the searches").  Further, as previously discussed, Boudreau's allegations create a plausible inference that Petit knew that Lussier's statements were false.

City Defendants' Motion is therefore denied as to Count IV.

### 5.  Obstruction of Justice as to Petit (Count VII)

The Complaint includes a claim for obstruction of justice against Petit on the grounds that he and the Lussiers fabricated evidence.  See Compl. ¶¶ 399-414.  However, Boudreau cannot maintain such a claim because obstruction of justice is a criminal matter that does not include a private cause of action.  See, e.g., McNeil v. Bristol Cnty. Probate, No. CV 16-11712-FDS, 2017 WL 275601, at *2 (D. Mass. Jan. 20, 2017) (dismissing an obstruction

of justice claim because private citizens do not have the authority "to seek other relief based on alleged violations of criminal statutes" (citation omitted)); Garay v. U.S. Bancorp., 303 F. Supp. 2d 299, 303 (E.D.N.Y. 2004) ("Because obstruction of justice is a criminal matter, there is no private cause of action.").

Accordingly, the Court grants City Defendants' Motion as it relates to Count VII.

### 6. Denial of Right to a Fair Trial Against Petit and the Warwick Police Department (Count VIII)

Boudreau asserts a denial of his right to a fair trial claim against Petit and the Warwick Police Department based on Petit's purported attempt to frame Boudreau for embezzlement.  Compl. ¶¶ 415-24.  As discussed in relation to State Defendants' Motion to Dismiss, a party seeking redress for such a claim must allege that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result."  Soomro, 174 F. Supp. 3d at 815 (quoting Jovanovic, 486 F. App'x at 152).

In their Motion, City Defendants aver that the existence of probable cause precludes Boudreau from asserting such a claim. Nonetheless, City Defendants' probable cause argument fails for the reasons articulated in Section III.B.1 above.  Furthermore, it is well established that probable cause is not a defense to a

denial of fair trial claim.[11]  See Morse v. Spitzer, No. 07-CV-4793 CBA RML, 2012 WL 3202963, at *5 (E.D.N.Y. Aug. 3, 2012).

Therefore, the Court denies City Defendants' Motion on Count VIII.

### 7. Retaliatory Inducement to Prosecute for Exercise of First Amendment Against Petit[12] (Count IX)

Boudreau's claim for inducement to prosecute relies on the same facts as his claims for retaliation and denial of a fair trial.  See Compl. ¶¶ 399-414.  Petit moves to dismiss the claim on the grounds that Petit properly determined the existence of probable cause based on Lussier's statements to Petit.  However,

---

[11] State Defendants contend that Boudreau cannot maintain a right to fair trial claim because a trial never occurred.  State Defs.' Mem. 14-15.  In support, State Defendants rely on the Tenth Circuit's holding that the right to a fair trial is not implicated when the charges are dropped prior to trial.  Id. (citing Morgan v. Gertz, 166 F.3d 1307, 1310 (10th Cir. 1999)).  Nonetheless, such a view is not universal, as some courts merely require a plaintiff to sustain a deprivation of liberty.  See, e.g., Frost v. N.Y. City Police Dep't, 980 F.3d 231, 249 (2d Cir. 2020) ("Indeed, a criminal defendant can bring a fair trial claim even when no trial occurs at all."); Falls v. (Police Officer) Detective Michael Pitt, No. 16-CV-8863 (KMK), 2021 WL 1164185, at *38 (S.D.N.Y. Mar. 26, 2021) ("In a fair trial claim such as the one he has raised, the relevant injury is a plaintiff's deprivation of liberty.").  Because City Defendants did not brief the issue and Boudreau is pro se, the Court will not dismiss the claim for the time being.  As described later, infra n.18, the Court is ordering Boudreau to file an amended complaint.  Therefore, Boudreau may identify in his amended complaint what deprivation of liberty he may have suffered, if any, and then City Defendants may address the issue at the summary judgment stage.

[12] The Complaint does not allege which Defendants are included in Count IX.  However, Boudreau states in his brief that the claim only pertains to Petit.  Resp. 12.

for the reasons previously stated, the Court finds that the probable cause argument does not warrant dismissal at this stage for the claims involving Petit.

Accordingly, the Court denies City Defendants' motion as to Count IX.

### 8. Retaliatory Prosecution Against Petit (Count X)

Under Rhode Island law, malicious prosecution involves "a suit for damages resulting from a prior criminal or civil proceeding that was instituted maliciously and without probable cause, and that terminated unsuccessfully for the plaintiff therein." Horton v. Portsmouth Police Dept., 22 A.3d 1115, 1121 (R.I. 2011) (quoting Palazzo v. Alves, 944 A.2d 144, 152 (R.I. 2008)). To establish such a claim, a plaintiff must prove four elements: "(1) the defendants initiated a prior criminal proceeding against him; (2) there was a lack of probable cause to initiate such a proceeding; (3) the prior proceeding was instituted maliciously; and (4) the proceeding terminated in the plaintiff's favor." Ousley v. Town of Lincoln, 313 F. Supp. 2d 78, 87 (D.R.I. 2014) (citing Solitro v. Moffatt, 523 A.2d 858, 861-62 (R.I. 1987)).

Boudreau states a claim for malicious prosecution against Petit. First, Petit initiated the prior criminal proceeding against Boudreau by taking Lussier's statement and providing it to Rivello and Brown. See Limone v. United States, 579 F.3d 79, 89

(1st Cir. 2009) ("If an individual induces another person (say, a police officer or prosecutor) to lodge formal criminal charges, he may be held to have instituted criminal proceedings."). Second, as previously discussed, the Complaint's allegations create a plausible inference that Petit and Lussier conspired to fabricate a false statement to establish probable cause that otherwise did not exist. Third, it is plausible that Petit maliciously instituted the proceeding in retaliation for Boudreau's filing of the 2013 Lawsuit. See Nagy, 392 A.2d at 367 (defining malice as the defendant "was actuated by a primary motive of ill will or hostility" (citations omitted)). Lastly, the State ultimately dropped the embezzlement charges against Boudreau. Dismissal Under R.I. Cr. R. 48(a), ECF No. 49-1.

Accordingly, the Court denies City Defendants' Motion to Dismiss as to Count X.

### 9. Defamation and Libel Against Petit (Counts XI and XII)

The Complaint presents defamation and libel claims against Petit on largely the same grounds as his companion claims against State Defendants. In particular, Boudreau alleges that Petit knowingly provided defamatory statements concerning Boudreau to Rivello and Brown to initiate criminal proceedings in retaliation for the 2013 Lawsuit.[13] Compl. ¶¶ 447-61.

---

[13] Aside from their probable cause argument, City Defendants do not contest whether Boudreau sufficiently stated the elements

Although a qualified privilege precludes defamation and libel claims against State Defendants, the same cannot be said for Petit.[14]  As previously noted, a plaintiff may defeat a qualified privilege by demonstrating that the "primary motivating force for the communication was the publisher's ill will or spite." Swanson, 293 A.2d at 309 (quoting Ponticelli, 247 A.2d at 308).  Here, the allegations plausibly establish that Petit sought to retaliate against Boudreau for his filing of the 2013 Lawsuit.  See Compl. ¶ 426.  Thus, in light of Petit's purported motivation, he does not receive the protections of a qualified privilege, at least at the motion to dismiss stage.  See Fosu, 590 F. Supp. 3d at 462.

Accordingly, the Court denies City Defendants' Motion as to Count XI.[15]

10. Concealment of Evidence Under 42 U.S.C. § 1983 Against Petit (Count XIII)

Boudreau asserts that Petit is liable under § 1983 for knowingly concealing exculpatory evidence, such as payroll and

---

of a defamation claim.  Therefore, the Court will refrain from such an analysis.

[14] Counsel for Petit did not brief this issue.  City Defs.' Mem. 5.  Nonetheless, because the Court dismissed the defamation claim against State Defendants on those grounds, it will also examine whether a qualified privilege precludes such claims against City Defendants.

[15] For the same reasons as set forth in Section III.A.8 above, the Court dismisses Count XII for libel per se as it relates to Petit.

bonus reports, job cost reports, general ledger reports, and monthly financial statements. Compl. ¶¶ 465-80. Petit moves to dismiss the claim on the grounds that probable cause existed based on Lussier's statements to Petit. However, for the reasons previously stated in Section III.B.1, the Court finds that the probable cause argument does not warrant dismissal at this stage for the claims involving Petit.

Accordingly, the Court denies City Defendants' Motion as to Count XIII.[16]

### 11. Negligent and Intentional Infliction of Emotional Distress Against Petit (Counts XVIII and XIX)

Boudreau fails to state claims for negligent infliction of emotional distress or intentional infliction of emotional distress against Petit. As discussed in relation to State Defendants, both of those torts require the plaintiff to suffer physical symptomatology from the negligent or intentional act at issue. Vallinoto, 688 A.2d at 838. Here, Boudreau does not allege that he suffered physical manifestations from Petit's conduct, and therefore, the Court must dismiss those claims. See Lisnoff, 925

---

[16] The Court notes that it is unclear whether Petit knew of or had access to the referenced documents. See generally Compl. Nonetheless, because Boudreau is pro se and City Defendants failed to raise this issue in his briefing, the Court declines to address it. See iRobot Corp. v. SharkNinja Operating LLC, No. 19-CV-12125-ADB, 2019 WL 7578466, at *7 n.5 (D. Mass. Nov. 26, 2019) (stating that the court would not address issues not raised in the motion at issue).

F. Supp. 2d at 242 (dismissing intentional infliction of emotional distress claim due to the absence of physical symptomatology allegations).

Accordingly, the Court grants City Defendants' Motion as to Counts XVIII and XIX.

12. <u>Negligent Employment and Failure to Properly Train and Supervise Under 42 U.S.C. § 1983 Against the Warwick Police Department and City of Warwick (Counts XX and XXI)</u>

Lastly, Boudreau asserts that the Warwick Police Department and City of Warwick are liable for negligent employment practices and failure to properly train. Compl. ¶¶ 512-19. Unlike the state and its agencies, municipalities and their entities are subject to § 1983 claims when their "employees were acting pursuant to an official policy or custom of the municipality when they inflicted the alleged injury." <u>Raymond v. City of Worcester</u>, 142 F. Supp. 2d 145, 148 (D. Mass. 2001) (citing <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 691 (1978)). Consequently, Boudreau may assert claims for negligent employment or inadequate training against the Warwick Police Department and City of Warwick under § 1983.[17]  <u>See</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989)

---

[17] Although City Defendants do not address those claims in their brief, the Court looks to State Defendants' arguments concerning the validity of such claims. <u>See</u> State Def.s' Mem. 23. Moreover, neither State Defendants nor City Defendants contest whether Boudreau sufficiently states the elements of such claims; therefore, the Court refrains from addressing that issue.

("[A] city can be liable under § 1983 for inadequate training of its employees. . . ."); <u>Hayden v. Grayson</u>, 134 F.3d 449, 456 (1st Cir. 1998) ("[O]f course, the Town could be held liable under section 1983 were it to appear that the injury to plaintiffs was caused by the Town's failure to train [the defendant]." (emphasis omitted)).

Accordingly, the Court denies City Defendants' Motion on Counts XX and XXI.

IV. CONCLUSION

For the foregoing reasons, State Defendants' Motion to Dismiss, ECF No. 58, is GRANTED.  City Defendants' Motion to Dismiss, ECF No. 59, is GRANTED IN PART and DENIED IN PART.  City Defendants' Motion is GRANTED with respect to Counts II, III, VII, XVIII, and XIX.  With respect to the surviving counts, Plaintiff is ORDERED to file an amended complaint within 30 days of the issuance of this opinion that complies with Rule 8's mandate that the plaintiff present his legal claims in "a short and plain statement."[18]

---

[18] City Defendants contend that the Court should dismiss Boudreau's Complaint for failing to comply with Rule 8's "short and plain statement" requirement.  City Defs.' Mem. 2-4.  Although Boudreau established viable claims against City Defendants, his Complaint does not conform with Rule 8.  <u>See generally</u> Compl.

IT IS SO ORDERED.

William E. Smith
District Judge
Date: February 16, 2024

---

Nonetheless, the Court finds that "dismissal is too harsh a sanction at this juncture," particularly when Boudreau states several viable claims. Nwaubani v. Grossman, No. CV 13-12552-JLT, 2014 WL 12914528, at *6 (D. Mass. Feb. 28, 2014); see Kuehl v. FDIC, 8 F.3d 905, 908 (1st Cir. 1993) (noting that "courts should be reluctant to impose a dismissal with prejudice for a rules violation that is neither persistent nor vexatious, particularly without some review of the merits"); Guilbeault v. R.J. Reynolds Tobacco Co., No. CIV. A. 98-035L, 1998 WL 919117, at *1 n.1 (D.R.I. July 24, 1998) (stating that courts should only strike pleadings "where there is a gross violation of Rule 8" (quoting Newman v. Massachusetts, 115 F.R.D. 341, 343-44 (D. Mass. 1987)). Therefore, the Court orders Boudreau to file an amended complaint for his remaining claims that comports with Rule 8's "short and plain statement" requirement.