UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JASON BOUDREAU, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 17-301WES |
| | : | |
| KEVIN PETIT, et al., | : | |
|     Defendants. | : | |

### MEMORANDUM AND ORDER REGARDING RESPONSES TO ORDER TO SHOW CAUSE

PATRICIA A. SULLIVAN, United States Magistrate Judge.

This Memorandum and Order sets out the Court's determination regarding the issues initially raised by the Court in its Order to Show Cause. ECF No. 116.

**I.  Analysis and Findings Based on Show Cause Responses**

    A.  Background

This civil case asserts claims brought by *pro se*[1] Plaintiff Jason Boudreau, who is a felon currently serving a 235-month federal sentence imposed on November 18, 2021, for on-line possession of child pornography.[2] In this civil case, Plaintiff alleges that a criminal charge of

---

[1] While Plaintiff is *pro se*, the Court finds that he is a sophisticated and highly experienced civil litigant, well able to draft and file effective written arguments, both as to the facts and the law. This finding has impacted the degree to which the Court has deployed the usual leniency in considering his filings. See Claremont Flock Corp. v. Alm, 281 F.3d 297, 299 (1st Cir. 2002) (*pro se* litigant not entitled to special treatment where court found litigant was "sophisticated" businessman); IncredibleBank v. Provocative, C.A. No. 22-cv-445-JJM-PAS, 2024 WL 36059, at *3 (D.R.I. Jan. 3, 2024) (when *pro se* litigant "is clearly far more sophisticated than the typical *pro se* litigant . . . indulgence usual for the filings of *pro se* litigants is not appropriate"); Laccinole v. Int'l Union of Police Associations AFL-CIO, 638 F. Supp. 3d 110, 113 (D.R.I. 2022) (*pro se* leniency muted because plaintiff is a very sophisticated *pro se* litigant, having filed hundreds of lawsuits over eight years), appeal dismissed, No. 22-1912, 2023 WL 3719620 (1st Cir. May 9, 2023). Nevertheless, the Court has kept Plaintiff's *pro se* status and his limitations due to his incarceration well in mind and afforded him leniency as appropriate in considering his filings.

[2] Plaintiff's offenses against children, both hands-on and through serial possession of child pornography, are summarized in United States v. Boudreau, 58 F.4th 26, 29 (1st Cir.), cert. denied, 144 S. Ct. 229 (2023). Plaintiff's Rhode Island state conviction for possession of child pornography (P2-2012-0841A) is the child pornography charge that triggered the 2013 civil case (Boudreau v. Lussier, No. CA 13-388S, D.R.I.) that is foundational to this civil case. Plaintiff's other convictions for crimes against children include second degree child molestation (K2-2010-

embezzlement was wrongly brought against him by the State of Rhode Island in June 2014 based on manipulated evidence concocted (beginning in July 2013) by Warwick Police Officer Kevin Petit in coordination with the alleged victim of the embezzlement, Plaintiff's former employer, American Temperature Controls, Inc., ("ATC"), together with its principals, Richard, Donald and Steve Lussier ("Lussiers"). Boudreau v. Petit, C.A. No. 17-301 WES, 2024 WL 665546, at *1-2 (D.R.I. Feb. 16, 2024). Plaintiff also named as defendants the Rhode Island State Police ("RISP") and two RISP officers (collectively, the "State Defendants"). Id.

The story begins in September 2009, when Plaintiff was hired as ATC's finance manager. Id. at *1. He was fired in June 2011 following ATC's discovery that he had been using ATC's computer to criminally possess child pornography. Id. Based on this discovery, Plaintiff was subsequently convicted in Rhode Island state court of possession of child pornography on his plea of *nolo contendere*. See United States v. Boudreau, 58 F.4th 26, 29 (1st Cir.), cert. denied, 144 S. Ct. 229 (2023); see also Boudreau v. Lussier, 901 F.3d 65, 68-70 (1st Cir. 2018). Plaintiff claims that Officer Petit (who investigated the state child pornography case beginning in June 2011) fabricated evidence and presented to the RISP an embezzlement case that appeared (falsely) to be based on probable cause. See Boudreau, 2024 WL 665546, at *2. Plaintiff alleges that Officer Petit acted in retaliation for Plaintiff having served Officer Petit with a civil complaint in July 2013[3] that accused Officer Petit (and the Lussiers) with having wrongly monitored Plaintiff's ATC work computer to confirm that Plaintiff was using it to possess child

---

0725A) in Rhode Island and risk of injury to a child and attempt to commit illegal sexual contact with a child (W11D-CR13-0152028-S) in Connecticut. Plaintiff's criminal history also includes financial/property crimes in Rhode Island – he has convictions for larceny over $1,500 (P2-2012-2059A), receipt of stolen goods over $1,500 and tampering with a motor vehicle (P2-2011-3383B) and uttering fraudulent checks (61-1993-03261). In addition, he has been convicted of reckless driving in Rhode Island (31-2012-01621).

[3] The 2013 civil case was resolved adversely to Plaintiff; this Court granted summary judgment in favor of all defendants on all of Plaintiff's claims, which determination was affirmed on appeal. Boudreau, 901 F.3d at 69.

pornography.  See generally id.

While the embezzlement charge was pending, in late 2015, Plaintiff was charged again with possession of child pornography; these new charges were brought in federal court based on conduct in 2015.  See Boudreau, 58 F.4th at 29-30.  This time, Plaintiff was detained beginning in December 2015.  ECF No. 17 at 1 (detention based on Boudreau's "abysmal" record of noncompliance with previous court-ordered obligations).  After pleading guilty, Plaintiff was sentenced to nineteen and a half years in prison.  Boudreau, 58 F.4th at 30-31 ("The district court indicated that it would have imposed a harsher sentence if the Sentencing Guidelines range had been higher and stated that it needed to keep Boudreau 'locked up as long as [it] can in order to protect the public from [Boudreau] based on [his] history.'").  Because of Plaintiff's federal incarceration caused by his 2015 child pornography crimes, the State's embezzlement charges were stalled.  ECF Nos. 17, 19.  And because the state embezzlement charges remained pending, this civil case was stayed.  ECF Nos. 17, 19; Boudreau v. Petit, C.A. No. 17-301WES, 2019 WL 6117723, at *2-3 (D.R.I. Nov. 18, 2019).

On December 2, 2022, Plaintiff entered into a confidential Settlement Agreement[4] with ATC, the Lussiers and others.  ECF No. 140-2.  Pursuant to this settlement, Plaintiff accepted a monetary payment in consideration for which he dismissed with prejudice all of the cases he had filed against ATC and the Lussiers (including all claims in this case) and agreed never to use or disclose their financial information, including ATC's employee data and vendor information.[5]

---

[4] The Settlement Agreement recites that its terms are confidential, except to the extent that the Agreement is "used to enforce its provisions." ECF No. 140-2 ¶ 27. Based upon Plaintiff's alleged breach of the Settlement Agreement and to enforce its provisions, the Lussiers filed the Settlement Agreement on the public record attached to their motion to dismiss Plaintiff's First Amended Complaint. ECF No. 140-2. ATC also references the Settlement Agreement in its show cause response. ECF No. 141. Plaintiff acknowledges the authenticity of the Settlement Agreement. ECF No. 151 at 2; see also ECF No. 154.

[5] The fully integrated Settlement Agreement imposes no ongoing duty to preserve evidence on ATC or the Lussiers. Therefore, as of matter of law, their duty to preserve anything related to this civil case lapsed on April 26, 2023,

3

Id.  In turn, the Lussiers and ATC agreed to ask the State to dismiss the criminal embezzlement case and to advise the State that they were no longer willing to participate in its prosecution.  ECF No. 140-2 at 23.  Following receipt of ATC's letter, on February 6, 2023, the State moved to dismiss the embezzlement charge and the motion was granted by the Superior Court.  ECF No. 49.  The State's filing explains that it was moving to dismiss the embezzlement charge because the victim (ATC) was no longer willing to participate and because Plaintiff was already serving 235 months in prison on the federal child pornography case; the State's notice specifies that "[t]he Criminal Information is not being dismissed because of a lack of probable cause."  ECF No. 49-1.  In response, on March 29, 2023, this Court lifted the stay in this case.  Text Order of March 29, 2023.  A month later, on April 26, 2023, Plaintiff filed a Stipulation of Voluntary Dismissal pursuant to Fed. R. Civ. P. 41(a), which dismissed "with prejudice, with each . . . party to bear its own fees, costs, and expenses," all claims against the Lussiers.  ECF No. 55.  In reliance on this Stipulation, the Court terminated the Lussiers as parties.

After the Lussiers were dismissed from the case by Plaintiff, the State Defendants filed a motion to dismiss, which was granted by the Court on February 16, 2024.  Boudreau, 2024 WL 665546.  In this decision, Plaintiff was ordered to file an amended complaint limited to a short and plain statement of only the "remaining claims"/"surviving counts."  Id. at *17 & n.18 (emphasis added).  He did not comply.  Instead, he filed the First Amended Complaint (ECF No. 79), which names all of the terminated Defendants (the Lussiers and the State Defendants) and reasserts the previously dismissed claims.  This misconduct has burdened the terminated parties and the Court with an unnecessary set of motions to dismiss.  The wrongfully restated claims

---

when Plaintiff filed the Stipulation of Voluntary Dismissal pursuant to Fed. R. Civ. P. 41(a).  See Edwards v. Hearst Communications, Inc., 15-CV-9279 (AT) (JLC), 2017 WL 6458612, at *1-4 (S.D.N.Y. Dec. 18, 2017) (defendant's duty to preserve evidence ended upon dismissal of action with prejudice because, at that point, future litigation was not reasonably foreseeable).

against the State Defendants, which the Court had previously dismissed with prejudice, Boudreau, 2024 WL 665546, at *1, *17, were dismissed for the second time by Text Order of May 13, 2024. My recommendation that the Lussiers' motion to dismiss be granted is pending. ECF No. 169.

  B.  Order to Show Cause

On May 2, 2024, the Court entered the Pretrial Scheduling Order to manage discovery regarding the only claims left in the case – those against Officer Petit and the City of Warwick. See ECF No. 90. In June 2024, the Clerk's Office brought to the attention of the Court Plaintiff's troubling conduct in issuing third-party subpoenas, particularly as to the Lussiers and ATC. ECF No. 116. The Court noted that the subpoenas appeared to be potentially abusive in that they seemed to be burdensome and seeking material that is neither relevant nor proportional. Id. The Court also noted that Plaintiff had filed the First Amended Complaint in defiance of the Court's Order, as well as that it inaccurately creates the illusion that claims against the Lussiers are still pending. Id. Therefore, the Court *sua sponte* issued an Order preliminarily finding abuse of the tools of discovery and requiring Plaintiff to show cause why he should not be required to seek leave of Court before he may serve any third party with a Fed. R. Civ. P. 45 subpoena.[6] Id. The Order to Show Cause was informed by Plaintiff's past discovery abuse, particularly as to discovery directed to ATC. Boudreau v. Lussier, No. CA 13-388S, 2014 WL 651536, at *1-3 (D.R.I. Feb. 19, 2014) (quashing ten overbroad subpoenas addressed to ATC's business vendors and other third parties seeking burdensome production of documents not relevant to the case; noting that "[t]he Court is also concerned that . . . Plaintiff could be using this civil litigation to . . . retaliate against those he holds responsible for his criminal charges");

---

[6] The Court's description of the factual background, preliminary findings and statement of the applicable law in the Order to Show Cause are incorporated herein by reference.

5

cf. Boudreau v. Smith, Case No. 3:17-cv-589 (SRU), 2019 WL 3973997, at *1-10 (D. Conn. Aug. 22, 2019) (finding much of Plaintiff's discovery either overbroad or entirely irrelevant).

The subpoenas that triggered the Court's Order to Show Cause are addressed to American Payroll, Inc., ("American Payroll"), Masters & Servant, USI Insurance, LLC, ("M&S"), and Rhode Island Department of Labor and Training ("RIDLT"); all of these are focused on ATC and the Lussiers. Plaintiff has also provided notice of his intent to serve yet another subpoena, this one addressed directly to ATC. Collectively, the Court refers to these four subpoenas as the "ATC Subpoenas." In addition, there is a subpoena to Yahoo!, and Plaintiff has advised the Court of his intent to issue another to his former criminal defense attorney John Cotoia. The latter two are referred to as the "non-ATC Subpoenas." Plaintiff has also issued and served or tried to serve other subpoenas addressed to RISP and the Rhode Island Attorney General; these were excluded from the Order to Show Cause and are not in issue in this Memorandum and Order.

C.     Responses to Order to Show Cause and Show Cause Determination

Plaintiff responded to the Order to Show Cause with filings[7] that collectively argue that the ATC and non-ATC Subpoenas seek documents that are relevant and proportional and that he is "not issuing subpoenas to harass Steve Lussier or ATC" and "does not have any ill-will or animosity toward ATC or the Lussier Defendants [ATC's principals]." ECF No. 135 at 7.

Plaintiff's responses fail to address the Court's concern that he violated a Court Order by filing the First Amended Complaint that renames the Lussiers and reasserts barred claims against them. Beyond conclusory statements that he is not abusing the discovery privilege for the

---

[7] Plaintiff's first response to the Order to Show Cause is docketed at ECF No. 135. After ATC filed its reply to his response, Plaintiff filed a second response. ECF No. 151. Plaintiff has also addressed the Order to Show Cause in two motions to strike, one focused on the confidential Settlement Agreement and one focused on the ATC Reply to the Court's Order to Show Cause. ECF Nos. 154, 155. The Court has considered all of Plaintiff's filings.

purpose of harassment of ATC, particularly Steve Lussier, Plaintiff fails to explain how the ATC Subpoenas conceivably comply with his obligation to "take reasonable steps to avoid imposing undue burden or expense." Fed. R. Civ. P. 45(d)(1). Nor does Plaintiff explain why he is now pressing for sweeping production of ATC's confidential information when, pursuant to the Settlement Agreement he signed almost two years ago, he dropped all claims against the Lussiers (terminating their obligation to preserve any documents) and accepted compensation in consideration for his agreement that he would never "use or disclose [ATC's confidential information] to any other person." ECF No. 140-2 ¶ 26.

Regarding relevancy, Plaintiff's show cause responses rest on the foundational proposition that, to prosecute this civil case against Officer Petit, he needs to prove that he is not guilty of the now-dismissed criminal embezzlement charge. Apart from its remote relevancy to whether Officer Petit manipulated evidence, there are two problems with this justification for the ATC Subpoenas.

First, Plaintiff did not draft the ATC Subpoenas to laser-focus on such arguably relevant material. Rather, as discussed *infra*, they are hopelessly overbroad. Thus, they would impose a substantial burden and significant expense on ATC (and its insurer and RIDLT) to search for responsive documents. Further, to the extent that responsive documents may still be located, such a search would result in production of highly confidential information, including intensely personal information about the Lussiers and ATC's employees, that is utterly irrelevant to this case.

Second, as Plaintiff is aware, the materials that are pertinent to the criminal child pornography and embezzlement charges were removed from ATC to be maintained in the

7

custody of the State in connection with those criminal prosecutions by the State.[8]  Indeed, Plaintiff's filings in this case make plain that the ATC materials that are relevant to guilt or innocence of embezzlement were produced to Plaintiff's criminal attorney in 2015, and the attorney provided them directly to Plaintiff in 2016.[9]  ECF No. 150 at 1-3.  This was confirmed by Plaintiff's recent representation to the Court that the documents he is really seeking from ATC are the "same documents" that the Rhode Island Attorney General deemed relevant to the embezzlement case, which were provided to Plaintiff in criminal discovery.  ECF No. 164 at 2; see also ECF No. 133-1 at 2.  Plaintiff further concedes that he personally remained in physical possession of all of the arguably relevant documents he now seeks via the ATC Subpoenas at least through his transfer to the Federal Bureau of Prisons (presumably in 2021).[10]  ECF No. 150

---

[8] As this Court noted in an earlier decision in this case, the State has maintained 500 gigabytes of data taken from ATC on a computer hard drive that has been in law enforcement custody since at least 2015.  Boudreau v. Petit, No. CV 17-301WES, 2024 WL 3391178, at *1 (D.R.I. July 3, 2024), adopted by text order (D.R.I. July 12, 2024).  RISP has represented that this hard drive remains in its possession and has been preserved because it contains evidence related to Plaintiff's conviction for possession of child pornography, as well as that it will be preserved for the duration of this case.  Id.

[9] In addition to the documents given to Plaintiff in 2016, according to a filing made by Plaintiff in the Superior Court embezzlement case, Plaintiff was interviewed by the RISP on June 13, 2014, and stated that he has exculpatory documents pertinent to the embezzlement charge in his home.  Motion to Dismiss, Ex. 14 at 18, State v. Boudreau, No. P2-2015-0095A (R.I. Super. Ct. Aug. 28, 2019) ("I got 'em; they were legitimate; the company was aware of it. . . . I actually – you know, I have my own rec- I mean I've – I've kept things to a T; I have records at home.")

[10] Confirming this proposition, in the Superior Court docket, Plaintiff filed a letter related to the embezzlement charge addressed to the Office of the Attorney General dated February 4, 2021, in which he wrote, "I would be happy to meet with you here at Wyatt to have the opportunity to share with you the documented evidence that is exculpatory."  Letter to Clerk of Providence Super. Ct., State v. Boudreau, No. P2-2015-0095A (R.I. Super. Ct. Feb. 15, 2021).  Thus, Plaintiff's filings in this Court and the Superior Court raise the question whether, as a civil plaintiff with a duty to preserve evidence, he failed to take adequate steps to preserve the relevant ATC documents provided to him.  See United States v. Rinaldi, 3:18-CR-279, 2020 WL 3288173, at *17 & n.12 (M.D. Pa. June 18, 2020) (although detained, *pro se* criminal defendant had duty to preserve evidence); Calderon v. Corporacion Puertorriquena de Salud, 992 F. Supp. 2d 48, 51 (D.P.R. 2014) (plaintiff's duty to preserve relevant evidence begins when he reasonably foresees litigation; failure to preserve such evidence constitutes spoliation).  In that regard, Plaintiff represents that he was unable to take the relevant ATC materials when he was sentenced and transferred to the Federal Bureau of Prisons, ECF No. 150 at 2-3, confirming that Plaintiff's challenge in preserving the relevant ATC records is an arguably foreseeable (to Plaintiff) consequence of Plaintiff's having committed the unrelated (to embezzlement) crime of possession of child pornography in 2015.  There is nothing about this circumstance that justifies shifting the burden of recreating the relevant set of documents to ATC, its vendors and RIDLT.

at 2-3.  Confirming that it is Plaintiff himself who has been in possession of these documents, the Court also notes that, over the years since this case was filed, Plaintiff has attached, referenced and/or quoted from the relevant ATC documents in numerous filings in this Court and the Superior Court.  Yet Plaintiff's show cause responses fail to explain why Plaintiff now needs ATC (and its vendors and RIDLT) to search for and produce the same documents again in response to the burdensome, overbroad, intrusive and disproportionate discovery embodied in the ATC Subpoenas.[11]

What Plaintiff's responses to the Order to Show Cause <u>do</u> reveal is also pertinent.  They compel the finding that Plaintiff's principal discovery goal in issuing the ATC Subpoenas is to continue aggressively to attack and burden ATC and Steve Lussier, now third parties, justified by the speculative possibility that such discovery conceivably will uncover some document that might contradict some statement Mr. Lussier has made, thus bearing on "witness credibility."  ECF No. 151 at 18; <u>see</u> ECF No. 135 at 2.  Such a purpose is not within the scope of permissible discovery: "to seek such information [regarding a third party] in the hopes of finding impeachment evidence would permit a fishing expedition based solely on speculation."  <u>Chestnut v. Kincaid</u>, Civil No. LKG-20-2342, 2022 WL 358170, at *2 (D. Md. Feb. 7, 2022) (striking subpoenas disproportionately seeking third party's personal phone records "based on pure speculation, which does not meet the demanding and sensitive inquiry required for discovery related to third parties") (internal quotation marks omitted).

In their response, ATC and the Lussiers contend that the purpose of the ATC Subpoenas is to burden and harass them, consistent with Plaintiff's ongoing vendetta that they hoped would

---

[11] Plaintiff points to the recent revelation that the Rhode Island Attorney General, like Plaintiff himself, is unable locate a copy of a thumb drive that contains relevant ATC documents.  Plaintiff does not explain why the failure of the Rhode Island Attorney General to maintain a copy of this thumb drive is a justification for the crushing discovery that Plaintiff seeks to propound on ATC, its vendors and RIDLT.

end with the Settlement Agreement.  ECF No. 141.  They ask the Court to protect them from abusive discovery that is largely focused on matters that are no longer relevant to anything in issue in this case.  Id.

Based on the foregoing, the Court finds that Plaintiff has seriously abused his discovery privileges by using Fed. R. Civ. P. 45 for the purpose of harassment of ATC and the Lussiers, to inflict burden on them and not to procure discovery that is relevant or proportional to his remaining claims against Officer Petit and the City of Warwick.  The Court further finds that Plaintiff has blatantly and intentionally breached his Fed. R. Civ. P. 45(d)(1) duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to [a] subpoena."  To prevent the perpetuation of such abuse of process in this civil proceeding, the Court hereby exercises its discretionary power to order that Plaintiff may not use the Fed. R. Civ. P. 45 discovery tool except with leave of Court.  See, e.g., Hossain v. Job Service North Dakota, Case No. 1:20-cv-009, 2020 WL 6852655, at *2 (D.N.D. Nov. 20, 2020) (court has discretion to refuse to allow Rule 45 to be used abusively); Friedman v. Bank of Jackson Hole, No. 2:19-cv-01054-JAD-DJA, 2020 WL 2996072, at *2 (D. Nev. June 4, 2020) (directing that no further subpoenas may be issued to *pro se* plaintiff without court approval).

Mindful of this Order, the Court next turns to the four ATC Subpoenas and then to the two non-ATC Subpoenas to determine whether Plaintiff may have leave of Court to proceed with any or all of them.

    D.    ATC Subpoenas

        1.    Subpoena to ATC

This sweeping subpoena seeks eighteen categories of documents, calling for the production of a substantial amount of electronically stored information and paper documents that

contain highly confidential and sensitive financial and personal information pertaining to a period between ten and fifteen years ago most of which (apart from the overlap with what Plaintiff already received from the State in criminal discovery) appears to have little to do with what remains in issue in this case.  ECF No. 127-1.  To illustrate with one example, Request 17 of the ATC subpoena calls for the production of documents sufficient to show the names and (presumably current or last known) addresses and telephone numbers for every person who worked for ATC over a one-and-a-half-year period in 2010-2011.  Id. at 3.  Plaintiff purports to use the power of this Court to require ATC to give this highly sensitive personal identifying information about its employees to a prisoner in a federal facility whose criminal history includes not just crimes against children but also larceny, receipt of stolen goods and uttering fraudulent checks.  To explain why such an invasive request is proportional and seeks relevant material, Plaintiff relies on vague speculation (with no foundation to support the argument) that some of these persons might have information relevant to the ATC bonuses some employees received in 2010 and 2011, which conceivably will "contradict[] Steve Lussiers sworn police statements," thereby having a bearing on "witness credibility."  ECF No. 151 at 17-18.  The Court finds that Request 17 was propounded solely for the purpose of harassment and not for the purpose of discovery of Plaintiff's remaining claims.

The Court makes the same finding as to the hopelessly overbroad Requests 1-14 and 16.  These likely would require the engagement of an electronic vendor to locate responsive documents.  They sweepingly call for production of:

- All of ATC's financial documents for varying periods between 2009 and 2012 (ATC's payroll reports, financial statements/reports/narratives, income statement/balance sheet, job cost reports, work-in-progress reports, and documents related to business tax return) with no focus on the embezzlement charges;

11

- All documents related to Plaintiff's 2011/2012 wage/unemployment dispute with ATC, which predates Officer Petit's alleged conduct by a year or more;

- All cell phone invoices and related documents for Steve Lussier's cell phone for a period during 2013 without limitation to topic;

- All documents reflecting communications between some of the Lussiers and Officer Petit covering the period when the child pornography charge was pending and to the present with no limit as to topic;

- All electronic communications between Plaintiff and Steve Lussier at any time during Plaintiff's ATC employment without regard to topic; and

- All transcripts of depositions taken in the 2013 federal civil case with conclusory statements to explain why they are relevant and no explanation why Plaintiff no longer has them and why he is not able to order a copy from the court reporter.

That leaves Request 15 (seeking documents provided to Officer Petit by Steve Lussier on July 30, 2013) and Request 18 (seeking written statements, declarations and affidavits provided by Steve Lussier to assist Officer Petit and the City of Warwick in defending this case). While these appear to seek relevant material, the Court finds that it is material that Plaintiff already received in criminal discovery or that he otherwise has access to, or that he may seek production of from Officer Petit and the City of Warwick. Thus, to the limited extent that the ATC subpoena seeks material that is relevant, the Court finds that it is nevertheless improper in that these requests transgress Plaintiff's duty to take "reasonable steps to avoid imposing undue burden or expense" on the third party subject to this subpoena. See Fed. R. Civ. P. 45(d)(1).

At bottom, the Court finds that Plaintiff's conduct in targeting ATC with this unwarranted and largely unnecessary discovery intentionally transgresses Fed. R. Civ. P. 45(d)(1) and is a flagrant abuse of the discovery process for the purpose of harassment and to inflict burden, which has resulted in actual prejudice to ATC. Based on these findings, the Court orders that Plaintiff may not serve or proceed further with the ATC subpoena.

2.      Subpoena to American Payroll

Plaintiff's response reveals that he issued and served this subpoena seeking highly sensitive payroll information and emails about ATC employees and received a return from American Payroll, which advised that it has "destroyed these requested documents," and that it had "deleted [the requested] emails."  ECF No. 135 at 14-16.  Thus, this subpoena presents an issue that is moot.  Nevertheless, the Court finds that this subpoena suffers from the same defects as the ATC subpoena in that it is overbroad, burdensome and seeks production of highly sensitive confidential material, as well as that, to the extent that it seeks relevant information, such material was provided to Plaintiff in criminal discovery in the embezzlement case (as well as in the recent production from the Rhode Island Attorney General).

3.      Subpoena to M&S

Plaintiff's sweeping subpoena to this insurance company, which wrote insurance for ATC, is based on Steve Lussier's recorded statement at RISP Headquarters on June 30, 2013, regarding Plaintiff's embezzlement.  See ECF No. 135 at 3-4.  The excerpt from this transcript quoted by Plaintiff reflects that Mr. Lussier briefly described another financial machination by Plaintiff that is unrelated to the bonuses charged as embezzlement.  Despite seeking documents that are entirely irrelevant, Plaintiff argues that M&S must be put to the disproportionate expense of searching for every document it has that relates to ATC for the relevant period based on Plaintiff's speculation that this might somehow yield a document that could be used to impeach Steve Lussier.  Such a purpose is beyond the scope of permissible third-party discovery.  See Chestnut, 2022 WL 358170, at *3 (barring discovery based on speculation that it might yield a record that could impeach a nonparty).  Further, the information sought is confidential financial information related to ATC's business, which Plaintiff contractually agreed not to use or disclose

13

in the Settlement Agreement.  ECF No. 140-2 ¶ 26.  The Court finds that this subpoena seeks documents that are not relevant and requires a search that is not proportional, as well as that Plaintiff has issued it for the purpose of harassment of and to inflict burden on ATC.  The Court orders that it may not be pursued further.

        4.     Subpoena to RIDLT

After ATC fired Plaintiff in June 2011, in 2011 and 2012, RIDLT responded to Plaintiff's claim for unpaid wages and unemployment benefits.  As reflected in the RIDLT transcript and correspondence (of which Plaintiff already has copies that he has attached to filings in this case and other cases), ATC's witness testified that Plaintiff was fired due to his use of ATC computers to possess child pornography, which Officer Petit was then investigating.  Thus, to the extent that these state administrative proceedings relate to Officer Petit, the link derives from Plaintiff's commission of the crime of possession of child pornography and precedes the alleged conduct by Officer Petit in issue in this case by a year or more.  Tacitly conceding the lack of relevance, Plaintiff argues that RIDLT should undertake the costly (to the public) burden of searching for all such documents based on the Plaintiff's speculation that the search might somehow turn up a document that could impeach Steve Lussier.  The Court finds that this subpoena seeks documents that are not relevant or proportional and that Plaintiff has issued it for the purpose of harassment of and to inflict burden on ATC (and RIDLT).  The Court orders that this subpoena may not be pursued further.

    E.     <u>Non-ATC Subpoenas</u>

        1.     Subpoena to Yahoo!

Plaintiff alleges that soon after Officer Petit was served in July 2013 with Plaintiff's 2013 civil case, in connection with the embezzlement investigation, Officer Petit improperly procured

14

and served on Yahoo! an unauthorized search warrant, which required the production of Plaintiff's email account from the beginning of time to the date of the warrant. ECF No. 135 at 10. Mindful that this subpoena seeks only a copy of the warrant and no other documents, the Court finds that it is not an abuse of discovery and that Plaintiff (at his own expense) may serve this subpoena on Yahoo!. Plaintiff is further ordered that he must promptly serve the parties with everything that he receives from Yahoo! by filing all communications with and materials produced by Yahoo! on the Court's docket.

2.   Subpoena to Attorney John Cotoia

Plaintiff seeks leave to serve a third-party subpoena on John Cotoia, the criminal defense attorney who represented him on the embezzlement charge, requiring the production of ATC financial documents Attorney Cotoia obtained "as part of his defense" of that charge. ECF No. 135 at 12.

Attorney Cotoia was counsel of record in the embezzlement criminal case from February 2015 to September 2019. Boudreau, 2019 WL 6117723, at *1 & n.5; see also State v. Boudreau, P2-2015-0095A (R.I. Super. Ct). On October 28, 2015, Attorney Cotoia received from the State production of relevant documents on a thumb drive and access to a hard drive with far more material; in 2016, he gave the thumb drive and all documents relevant to the embezzlement charge to Plaintiff while he was detained (on the 2015 child pornography charges) at the Wyatt Detention Facility.[12] ECF No. 150 at 1-3; see ECF No. 135 at 12. Thus, the Court approves proceeding with this subpoena, with costs and fees to be borne by Plaintiff, provided that

---

[12] The Court notes that the Rhode Island Attorney General's opposition to one of Plaintiff's motions to compel a response to one of Plaintiff's subpoenas (not in issue in connection with this Order to Show Cause) contains the representation that its office has copies of (and produced) certain documents relevant to the embezzlement charge to Plaintiff but it has been unable to locate the thumb drive. It further represents that it inquired regarding the missing thumb drive of Attorney Cotoia, who recalled having possession of the documents pertinent to the embezzlement charge, including the thumb drive, but advised that he gave all of them to Plaintiff and no longer has them. ECF No. 139 at 3 n.1.

15

Plaintiff is ordered that he must promptly serve the parties with everything that he receives from Attorney Cotoia by filing all communications with him and filing under seal (to protect any confidential financial information) all materials produced by Attorney Cotoia on the Court's docket.[13]

## II.     Conclusion

Based on the foregoing, the Court finds that Plaintiff has failed to show cause why he should not be required to seek leave of Court before he may serve any third party with a Fed. R. Civ. P. 45 subpoena.  The Court further finds that Plaintiff has violated Fed. R. Civ. P. 45(d)(1) and seriously abused his discovery privileges by using Fed. R. Civ. P. 45 for the purpose of harassment of ATC and the Lussiers and to inflict burden on them and not to procure discovery he needs that is relevant or proportional to his remaining claims against Warwick Police Officer Petit and the City of Warwick.  To prevent the perpetuation of such abuse of process in this civil proceeding, the Court hereby exercises its discretionary power to order that Plaintiff may not use the Fed. R. Civ. P. 45 discovery tool except with leave of Court.  See, e.g., Hossain, 2020 WL 6852655, at *2 (court has discretion to refuse to allow Rule 45 to be used abusively); Friedman, 2020 WL 2996072, at *2 (directing that no further subpoenas may be issued to *pro se* plaintiff without court approval).  The Court further orders that Plaintiff may not proceed with any of the four ATC Subpoenas, but Plaintiff has leave to proceed with the two non-ATC Subpoenas.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 30, 2024

---

[13] If Mr. Cotoia's production is too voluminous to file on the Court's docket, Plaintiff is ordered to direct Mr. Cotoia to communicate directly with counsel for Officer Petit and the City of Warwick to coordinate Defendants' access to these materials.