UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JASON BOUDREAU, :
    Plaintiff, :
 :
    v. :    C.A. No. 17-301WES
 :
KEVIN PETIT, et al., :
    Defendants. :

**ORDER DENYING MOTION TO AMEND**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Now pending before the Court is *pro se*[1] Plaintiff Jason Boudreau's motion to amend the First Amended Complaint. ECF No. 176. In compliance with DRI LR Cv 15, the proposed amended pleading – the Second Amended Complaint – has been filed (albeit tardily) as ECF No. 211-1 ("SAC"). Both the existing and the proposed Defendants have filed timely objections. ECF Nos. 197, 198.

Presently asserted in this case is Plaintiff's relatively simple claim of serious but discrete police misconduct against an individual and a municipality – the existing Defendants are Warwick Police Officer Kevin Petit and the City of Warwick ("Warwick Defendants").[2] In the present version of the pleading, trimmed down by Plaintiff's settlement with some defendants and the Court's dismissal (twice) of Plaintiff's "conclusory" claims against the Rhode Island

---

[1] The Court has afforded Plaintiff such leniency as is appropriate in his circumstances as noted in other decisions issued in this case. E.g., Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 4279522, at *1 n.1 (D.R.I. Sept. 24, 2024).

[2] Although Plaintiff has separately named the Warwick Police Department as a defendant, the Department is a part of the municipality City of Warwick. "Subdivisions of the City are not legal entities that are 'persons' under 42 U.S.C. § 1983 or independent entities that can be sued." Irizarry v. Providence Dept. Public Safety, No. 1:21-cv-00081-MSM-LDA, 2021 WL 5040239, at *1 (D.R.I. Oct. 28, 2021) (granting motion to dismiss on behalf of the Providence Police Department). The City of Warwick is the proper defendant. See id.

State Police and two of its officers, Boudreau v. Petit, No. CV 17-301 WES, 2024 WL 665546, at *3 (D.R.I. Feb. 16, 2024), Plaintiff alleges retaliatory manipulation of evidence by Officer Petit outside the scope of his employment by the City of Warwick and outside the scope of his assignment to a state-wide task force focused on child pornography. Specifically, Plaintiff claims that this conduct began in mid-July 2013 and culminated in Plaintiff's now-dismissed June 11, 2014, state prosecution for embezzlement. See ECF No. 79. While this case has been pending since May 2017,[3] the discovery phase has been actively proceeding since the Court lifted the stay on March 29, 2023, with fact discovery now set to close on February 28, 2025. Despite the relatively narrow scope of the pending claims, the Court's judicial management of this case has been seriously challenged by the sheer volume of disputed motions Plaintiff has presented for judicial resolution,[4] complicated by Plaintiff's violation of a Court order and his abuse of discovery. See Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 4356314, at *4-7 (D.R.I. Sept. 30, 2024); Boudreau v. Petit, C.A. CV 17-301WES, 2024 WL 3092151, at *1 (D.R.I. June 18, 2024).

As the close of fact discovery finally nears, approaching eight years since this case was originally filed,[5] Plaintiff now seeks to significantly expand its scope by adding five new

---

[3] The case was filed in state court on May 18, 2017, on the cusp of the running of the three-year statute of limitations applicable to claims arising under 42 U.S.C. § 1983. ECF No. 1. It was removed to this Court on June 19, 2017. Id.

[4] In all, since the lifting of the stay, as of this writing, Plaintiff has presented seventeen contested motions, resulting in twelve substantive decisions and five text orders. Notably, most of these motions have been denied. To illustrate the scope of the judicial investment in managing these narrow claims against just one individual and a municipality, the Court notes that, as of this writing, there are seventeen decisions in this case that have been published on Westlaw.

[5] Almost six years of this delay was caused by the Court's stay entered pursuant to Wallace v. Kato, 549 U.S. 384 2007 and Heck v. Humphrey, 512 U.S. 477 (1994). This stay was necessitated by Plaintiff's commission of unrelated federal crimes (child pornography) that prevented the State from prosecuting the embezzlement case. ECF No 17, adopted by Text Order of Dec. 12, 2017. The case was also briefly delayed due to Plaintiff's intra-facility transfer by the Federal Bureau of Prisons. ECF No. 71, granted by Text Order of Nov. 13, 2023. None of the delay appears to be attributable to conduct of the existing or proposed Defendants.

Defendants, all state officials. These are the Rhode Island Attorney General and a Rhode Island state prosecutor (collectively "RIAG") and three senior officials of the Rhode Island State Police – a Superintendent, Steven O'Donnell, a Detective Commander, Todd Catlow, and a Commander, John Doe, of the Rhode Island State Police Internet Crimes Against Children Task Force (collectively "RISP"). See ECF Nos. 176, 211-1.

As to RIAG, Plaintiff proposes to add three new claims that are completely unrelated to those currently asserted in this case. Specifically, Plaintiff seeks to sue for malicious prosecution, destruction of evidence and the denial of his right to a fair trial based on alleged spoliation by state officials, sometime between October 2015 and June 2024, of what Plaintiff claims is exculpatory evidence related to the now-dismissed criminal charge of embezzlement. ECF No. 211-1 at 21-24. To factually support these new claims, Plaintiff relies on the inability of RIAG to locate – in the summer of 2024 – a copy of the thumb drive that it had provided to Plaintiff in October 2015 as criminal discovery in support of the embezzlement charge that was subsequently dismissed in February 2023. Id. Plaintiff's proposed new defendants include the current state Attorney General, although the SAC lacks any allegation that he had personal involvement in any of the underlying events. Plaintiff also seeks to sue the prosecutor who had been assigned to the embezzlement case and signed the state's discovery response producing the thumb drive to Plaintiff in 2015. As to the prosecutor, the SAC is devoid of any factual allegation that this individual was personally involved in the thumb drive's subsequent loss. The Court has already twice declined to entertain these spoliation claims in this case because they would seriously disrupt the Court's already challenged judicial management of it, as well as because, vis-à-vis the only parties left in this case (the Warwick Defendants), it is Plaintiff who is arguably the spoliator in that he was in actual and/or constructive possession of the thumb

3

drive and what he claims is the exculpatory evidence stored on it, but he has admitted that he lost it (he claims in 2021) because of his incarceration due to his commission of unrelated 2015 crimes involving child pornography. E.g., Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 4279514, at *1 (D.R.I. Sept. 24, 2024) ("Court declines to protract the proceeding on the motion to compel based on this allegation of spoliation or by convening the spoliation hearing that Plaintiff requests"). The existing Defendants and RIAG argue that these claims are futile, not only because of their implausibility but also because of RIAG's prosecutorial immunity.

As to RISP, Plaintiff seeks to add a claim that is related to his pending claims; it is based his contention that the RISP officials he seeks to join are subject to supervisory liability under 42 U.S.C. §1983 for Warwick Officer Petit's alleged misconduct. The Court notes that it has already (twice) dismissed claims against the Rhode Island State Police and two of its officers. Text Order of May 13, 2024; Boudreau, 2024 WL 665546, at *3-11. With this third attempt to pull the State of Rhode Island back into this case, Plaintiff now is proposing to name three senior RISP officials although his proposed pleading contains no factual allegation that any of them was directly involved in supervision of Officer Petit or with Plaintiff's embezzlement prosecution. Plaintiff does not propose to rename either the now-dismissed state entity (the Rhode Island State Police) or the now-dismissed state police officers (Officers Rivello and Brown) who (as he originally alleged) were directly involved in Plaintiff's embezzlement prosecution. Boudreau, 2024 WL 665546 at *3-11.

The claims that Plaintiff now seeks to assert against RISP appear to be factually based on information that has been known to him since this case was originally filed in 2017. Indeed, these claims appear to replicate the supervisory liability allegations in Counts 20 and 21 of the original complaint against RISP (ECF No. 1-1 at 45-46) that the Court previously dismissed as

4

not viable. To overcome this potentially fatal delay (including the bar of the long-since lapsed statute of limitations), Plaintiff buttresses his argument in favor of amendment with the assertion[6] that he learned "[d]uring [unspecified] discovery" that these three senior RISP officials were responsible for supervising and training Warwick Police Officer Petit "specifically regarding the embezzlement complaint." ECF No. 176 at 2. However, the SAC itself vaguely alleges only that the three RISP officials were aware of or should have been aware of alleged police misconduct in 2013/2014 due to complaints against Officer Petit yet they failed to take action; the SAC is utterly devoid of facts to support this conclusory assertion. ECF No. 211-1 ¶ 201; see Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (allegation of supervisor's mere knowledge of subordinate's misconduct is insufficient to support plausible claim); Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011) ("Threadbare recitals . . . supported by mere conclusory statements, do not suffice."). The existing Defendants and RISP ask the Court to deny the motion to amend because these claims are futile; RISP also argues that they are unduly delayed, untimely, and would seriously prejudice RISP and the State, including by causing the State to invest substantial resources in litigating a third motion to dismiss. See ECF Nos. 197, 198.

Citing case law from district courts outside of the First Circuit, Plaintiff counters that the existing Defendants lack standing to oppose an amendment that adds new claims against new parties and does not alter the claims against them.[7] Relatedly, he also contends that the proposed

---

[6] This conclusory allegation clashes with Plaintiff's pivotal factual assertion that Officer Petit was never employed to work in RISP's financial crimes unit and was acting outside the scope of his duties either as an RISP task force officer or as an employee of the City of Warwick when he allegedly conspired to concoct evidence to support a charge against Plaintiff of embezzlement. Indeed, Plaintiff's contention that Officer Petit was not working within the scope of his employment was one of the facts supporting the Court's determination that the claims against Officer Petit would survive the motion to dismiss. Boudreau, 2024 WL 665546, at *12.

[7] Plaintiff has raised a potentially complex standing issue that may pose a difficult issue of first impression for the Court. For example, Plaintiff accurately cites Chesler v. City of Jersey City, Civil Action No. 2:15-cv-1825-SDW-

Defendants – both RISP and RIAG – lack standing to present futility arguments unless and until they are joined as parties in the case.[8]  Plaintiff also vigorously disputes that RIAG is immune and that his denial-of-fair-trial claim against RIAG fails because he has not plausibly alleged that his liberty has been impacted.  ECF No. 211 at 6-13.  Plaintiff has not disputed that his claims against RISP are futile.

Under these circumstances, with the period for an amendment as a matter of course long past, Rule 15(a)(2) of the Federal Rules of Civil Procedure permits the amendment of a complaint only with leave of the Court, which should be freely given when justice so requires.  Id.  The determination whether to permit an amendment must be made in the discretion of the Court, considering the totality of the circumstances, including the motion's timeliness.  Nikitine v. Wilmington Trust, Co., 715 F.3d 388, 390-91 (1st Cir. 2013).  Leave to amend a complaint may be denied for a variety of reasons, including futility, bad faith, undue delay, or dilatory tactics.  Id.  Thus, where a claimant proposes to add multiple new defendants, each of whom will have the right to litigate the sufficiency of the claims against them (resulting in extensive motion practice), to pursue discovery and to participate in a significantly more complex trial, the court

---

ESK, 2019 WL 6318301, at *3-4 (D.N.J. Nov. 26, 2019) and Clark v. Hamilton Mortg. Co., No. 1:07-cv-252, 2008 WL 919612, at *2 (W.D. Mich. April 2, 2008) for the proposition that the present parties in a case normally lack standing to assert the futility of new claims on behalf of a proposed new defendant.  However, in cases from our Circuit, courts have entertained the existing defendant's challenge to the futility of an amendment adding a new claim against a new party.  E.g., Washington Tr. Advisors, Inc. v. Arnold, 678 F. Supp. 3d 192, 199 (D. Mass. 2023); Morin v. University of Massachusetts, Civil Action No. 09-12022-JLT, 2011 WL 7767948, at *2 (D. Mass. Oct. 31, 2011), adopted, 2012 WL 1415914 (D. Mass. Apr. 23, 2012).  Plaintiff's citation to Brenner v. Williams-Sonoma, Inc., 867 F.3d 294 (1st Cir. 2017) as controlling authority supporting his argument is in error.  Brenner merely stands for the proposition that non-parties do not have standing to file an appeal.  See id.

[8] Plaintiff supports this argument with cases from other Circuits, which contrast with in-Circuit cases that appear to permit futility arguments by the proposed parties.  Compare Tri Star Metals LLC v. Burgess, Civil No. 1:18-CV-02390-NLH-KMW, 2019 WL 13395377, at *2 (D.N.J. Aug. 12, 2019) ("[Non party]'s opposition to the Motion [to amend] is procedurally premature."), and State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 246 F.R.D. 143, 146 n.1 (E.D.N.Y. 2007) (non-parties should not be afforded standing to oppose motion for leave to amend because "they are not yet named parties to this action"), with Correia v. Town of Framingham, Civil No. 12-10828-NMG, 2013 WL 4499345, at *1 (D. Mass. July 24, 2013) (denying motion to amend based on proposed defendants' futility objection), adopted, ECF No. 108 (D. Mass. Aug. 16, 2013).

may deny the motion in light of the manifest prejudice this would inflict *inter alia* on the existing parties.  Massachusetts ex rel. Powell v. Holmes, Civil Action No. CV 18-11336-FDS, 2022 WL 20505709, at *6-7 (D. Mass. Feb. 4, 2022).  In addition, the adverse impact on judicial economy may be considered when deciding motions to amend.  See Fed. Ins. Co. v. Fire Sprinkler Tech., Inc., Civil Action No. 1:20-cv-10403-ADB, 2021 WL 1857403, at *3 (D. Mass. May 10, 2021); EMC Corp. v. Pure Storage, Inc., 310 F.R.D. 194, 202-03 (D. Mass. 2015).  Although Fed. R. Civ. P. 15(a)(2) proposes that leave to amend be "freely give[n]" in instances in which "justice so requires," this "does not mean . . . that a trial court must mindlessly grant every request for leave to amend."  Mulder v. Kohl's Department Stores, Inc., 865 F.3d 17, 20 (1st Cir. 2017) (internal quotation marks omitted).  Fed. R. Civ. P. 15(a) requires courts to take potential prejudice into account, including that a court may *sua sponte* consider undue delay and prejudice.  JJCO, Inc. v. Isuzu Motors America, Inc., Civ. No. 08-00419 SOM/LEK, 2009 WL 3818247, at *4 (D. Haw. Nov. 12, 2009); see Turk v. Morris, Manning & Martin, LLP, 661 F. Supp. 3d 1276, 1286 (N.D. Ga. 2023) ("Court may decline leave to amend based on matters complained of by Defendant or based on issues identified *sua sponte*").

      Based on the foregoing, without resolving the complex standing issues that must be addressed before denying a motion to amend based on futility and respectful of Plaintiff's *pro se* status, the Court declines to resolve this motion to amend based on the futility of the proposed claims.  This approach leaves Plaintiff free to assert these claims in one or more new cases, with the caution that the futility arguments asserted here create the risk that such a new case might be dismissed not just for failing to state a claim but as frivolous, including that Plaintiff could be sanctioned for bringing it.  Rather, focused on the totality of the circumstances, including the motion's untimeliness, particularly the unwarranted delay as to RISP; the manifest prejudice to

the existing parties of complicating and protracting this case by adding these new parties and new claims at this late stage of this case; the significant adverse impact on judicial economy from granting an amendment that would significantly impede the Court's ongoing struggle to manage the forward progress of this litigation; and (most importantly) the interests of justice, the Court exercises its discretion to DENY Plaintiff's motion to amend (ECF No. 176).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 23, 2024