UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JASON BOUDREAU, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 17-301MSM |
| | : | |
| KEVIN PETIT, et al., | : | |
| Defendants. | : | |

## MEMORANDUM AND ORDER DENYING MOTION FOR SANCTIONS FOR SPOLIATION AGAINST WARWICK POLICE DEPARTMENT

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Now pending before the Court is *pro se*[1] Plaintiff Jason Boudreau's motion asking the Court to impose the sanction of default pursuant to Fed. R. Civ. P. 37 on Defendant Warwick Police Department for spoliation of evidence.[2] ECF No. 178. Plaintiff claims that he is the victim of police misconduct committed by Warwick Police Officer Kevin Petit, who allegedly retaliated because Plaintiff sued him in a 2013 lawsuit (ultimately found to be without merit) by fabricating and concealing evidence to falsify probable cause resulting in Plaintiff's now-dismissed June 11, 2014, state criminal prosecution for embezzlement. Pivotal to Plaintiff's

---

[1] The Court has afforded Plaintiff appropriate leniency. See Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 4279522, at *1 n.1 (D.R.I. Sept. 24, 2024).

[2] This is not Plaintiff's first spoliation accusation in this case. Plaintiff has also accused the Office of the Rhode Island Attorney General, a non-party, of spoliation. ECF Nos. 150, 176, 191. As the Court has ruled, this spoliation claim is somewhat illogical in the context of this case as the allegedly "lost evidence" apparently was within Plaintiff's constructive/actual possession, custody and control prior to and after his claims in this case were pending, but, aware of the content, he failed to take steps sufficient to preserve the evidence. See Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 5202023, at *2 (D.R.I. Dec. 23, 2024) ("vis-à-vis the only parties left in this case (the Warwick Defendants), it is Plaintiff who is arguably the spoliator in that he was in actual and/or constructive possession of the thumb drive and what he claims is the exculpatory evidence stored on it, but he has admitted that he lost it (he claims in 2021) because of his incarceration due to his commission of unrelated 2015 crimes involving child pornography"); Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 4794724, at *2 n.1 (D.R.I. Nov. 14, 2024) (noting "troubling fact" that Plaintiff has represented to various courts and governmental entity that he was in possession of, and was fully aware of content of, material he now claims was spoliated by non-party).

theory of the case is the allegation that Officer Petit engaged in this seriously wrongful manipulation of evidence outside the scope of his employment by the City of Warwick and outside the scope of his assignment to a state-wide task force focused on child pornography. See generally Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 5202023, at *1 (D.R.I. Dec. 23, 2024). As of this writing, Plaintiff has failed to articulate more than conclusory allegations (retaliatory fabrication of probable cause) regarding what he claims is Officer Petit's wrongful conduct, beyond the undisputed fact that Officer Petit interviewed employee(s) of the alleged victim about the embezzlement at Rhode Island State Police Headquarters in 2013.

I.   **Applicable Law**

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Wai Feng Trading Co. Ltd v. Quick Fitting, Inc., C.A. No. 13-33WES, 2019 WL 118412, at *4-5 (D.R.I. Jan. 7, 2019). To support an inference of spoliation, "the party urging that spoliation has occurred must show that there is evidence that has been spoiled (i.e., destroyed or not preserved)[,]" as well as that "the opposing party had notice of a potential claim and of the relevance to that claim of the destroyed evidence." Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 399 (1st Cir. 2012). However, while each party must take reasonable steps to preserve relevant information after the duty to preserve attaches, the law is also clear that the duty to preserve is not meant to impose an unreasonable or disproportional burden in that a party need not preserve every paper, electronic document, backup tape or cloud-storage repository that conceivably might later be deemed to be relevant. Steves & Sons, Inc. v. JELD-WEN, Inc., 327 F.R.D. 96, 108 (E.D. Va. 2018). Thus, preservation by a defendant beyond what is squarely identified in the pleadings is generally required only upon notice, such as by a preservation letter.

See Disedare v. Brumfield, Civil Docket No. 22-2680, 2024 WL 1526699, at *8-9 (E.D. La. Apr. 9, 2024) (duty to preserve appropriately applied to small number of scans and videos for narrow time period as clearly identified in preservation letter).  Federal law governs the issue of spoliation in cases pending in federal court.  Wai Feng Trading Co. Ltd, 2019 WL 118412, at *4.

In considering whether an entity is or was subject to a duty to preserve evidence, the court should consider the capability of the entity to maintain the evidence sought to be preserved throughout the period when the lawsuit is pending, mindful not only of the evidence's original form, condition or contents, but also of the physical, spatial and financial burdens created by ordering (or holding after the fact) that ongoing evidence preservation was mandated.  See Pitt v. Seltice Storage, LLC, No. 2:23-cv-00441-BLW, 2024 WL 4349085, at *3 (D. Idaho Sept. 30, 2024) (duty to preserve is not boundless).  Thus, open-ended suspension of the operation of retention policies is rarely required.  See Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (entities would be crippled if law imposes duty to "preserve every shred of paper, every e-mail or electronic document, and every backup tape" upon receipt of notice of litigation or threat of litigation).  In that regard, the committee notes to Fed. R. Civ. P. 37(e) are clear: "aggressive preservation efforts can be extremely costly, and parties (including governmental parties) may have limited staff and resources to devote to those efforts."  The failure to implement an over-inclusive and disproportionate suspension of retention policies resulting in the loss of a small amount of information that is relevant only in hindsight is not actionable spoliation.  See Bistrian v. Levi, 448 F. Supp. 3d 454, 474-75 (E.D. Pa. 2020).

For lost electronically stored information ("ESI"), the Court's guide is Fed. R. Civ. P. 37(e).  The Rule requires, first, that the movant establish that ESI has been lost and the relevant information it contained is not available in any other location.  Second, the court must consider

whether and when a duty to preserve the lost ESI arose; this requires consideration of when the party in possession of the ESI was on notice not only of the litigation but also that the specific ESI would be relevant to the litigation. Jenkins v. Woody, Civil Action No. 3:15cv355, 2017 WL 362475, at *12-15 (E.D. Va. Jan. 21, 2017). Fed. R. Civ. P. 37(e) applies only if the party in possession of the lost ESI failed to take "reasonable steps" to preserve the information. Fed. R. Civ. P. 37(e). If the movant establishes that a party failed to take reasonable steps to preserve specified ESI after a duty to preserve it arose and that the information cannot be restored or replaced through alternative sources, the court's next inquiry is whether the loss of the ESI has caused prejudice or whether the party in possession acted "with the intent to deprive another party of the information's use in the litigation." Fed R. Civ. P. 37(e)(1)-(2).

Subsection (e)(1) of the Rule is applicable "upon a finding of prejudice[.]" Fed. R. Civ. P. 37(e)(1). Proof that the specific lost ESI is important or material to a significant issue falls on the movant. Wai Feng Trading Co. Ltd., 2019 WL 118412, at *6. If prejudice is found, the Rule authorizes the court to employ measures "no greater than necessary to cure the prejudice[.]" Fed. R. Civ. P. 37(e)(1). These include prohibiting the party that failed to preserve from putting on certain evidence, permitting the parties to present evidence or argument to the jury regarding the loss of the ESI or giving the jury instructions to assist in its evaluation of such evidence or argument. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. The Rule is clear – without a finding of intentional spoliation, neither a mandatory adverse inference that the ESI was unfavorable to the spoliating party nor dismissal/default is appropriate. See Fed. R. Civ. P. 37(e) & advisory committee's note to 2015 amendment.

Rule 37's subsection (e)(2) applies only "upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Id. It includes the most

4

extreme sanctions – an adverse inference instruction or an order to "dismiss the action or enter a default judgment." Id. If such intent is shown, there is no need separately to establish prejudice. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Intent may be inferred based on evidence that ESI once existed and would have been material to a fact issue pivotal to the outcome of the case; that the spoliator, aware of its content and materiality, engaged in an affirmative act to cause it to be lost; that the spoliating party knew of its duty to preserve at the time of the act; and that the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator. Moody v. CSX Transportation, Inc., 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017). The burden is on the movant to show intent by clear and convincing evidence. Walsh v. Tara Constr., Inc., Civil Action No. 19-10369-LTS, 2021 WL 12094222, at *4 (D. Mass. June 7, 2021) ("First Circuit has applied a clear and convincing standard to discovery misconduct resulting in severe sanctions").

In our Circuit, the cases dealing with spoliation are clear that the most extreme sanction – dismissal/default judgment – should not be deployed except in the most egregious circumstances. See, e.g., McLaughlin v. Lenovo Global Tech. (United States) Inc., 682 F. Supp. 3d 149, 164-67 (D. Mass. 2023) (despite evidence that compels conclusion that plaintiff intentionally wiped hard drive to deprive defendant of metadata whose content cannot otherwise be proven, court finds that "harsh sanction" of dismissal is not appropriate, ordering instead that plaintiff is barred from use of specified evidence and that jury shall be instructed that it may, but need not, presume that deleted information was unfavorable to plaintiff); Atalian US New England, LLC v. Navarro, C.A. No. 20-00133-JJM, 2022 WL 2681297, at *4 (D.R.I. July 12, 2022) (based on "strong and convincing" evidence of intentional deletion of evidence and interests of justice, court finds that default judgment is only effective sanction to remedy intentional discovery violation); Postle v.

SilkRoad Tech., Inc., Civil No. 18-cv-224-JL, 2019 WL 692944, at *7 (D.N.H. Feb. 19, 2019) (despite intentional destruction of ESI, "court is disinclined to dismiss . . . claim or to enter default judgment . . . on . . . counterclaims," but will presume deleted evidence was unfavorable and will so instruct jury with specific wording of jury instructions to be developed at trial). For example, this Court imposed the extreme sanction of dismissal for spoliation in a case where the plaintiff, a sophisticated insurance company experienced in preserving necessary evidence, had examined, but then destroyed, the precise item in issue before bringing litigation claiming that the destroyed item had been defective. Amica Mut. Ins. Co. v. BrassCraft Mfg., Co., C.A. No. 17-103-JJM-LDA, 2018 WL 2433560, at *4 (D.R.I. May 29, 2018). The Court dismissed the case because this intentional conduct had made it impossible for the manufacturer of the item to mount a defense to the claim. Id.

## II.    Analysis

Plaintiff asks the Court to order the most extreme sanction – judgment of default – against Warwick in his favor on his claims of municipal liability and retaliation. As grounds, Plaintiff alleges that Warwick responded to certain of his discovery requests with the statement that "in accordance with the Rhode Island record retention rules, all responsive materials, if any, have not been kept in the ordinary course of business." ECF No. 178 at 3. For purposes of sanctions, the requests Plaintiff has put in issue seek six categories of documents or information:

- All documents and information related to any allegation by any person of any police "misconduct" (including but not limited to claims of retaliation, falsifying documents and/or warrant applications, concealing evidence and fabricating probable cause) by any Warwick police officer at any time from 2008 (2011 as to documents) to the present (Requests 6, 16, 31; Requests to Admit 36, 37);

- Timecards, dispatch/duty rosters, logs and all documents that demonstrate whether Officer Petit was on or off duty pertaining to July 15-30, 2013, April 16, 2014, and June 11, 2014 (Requests 19, 20, 25);

- All documents related to any complaints and internal affairs records for Officer Petit (Requests 14, 30);

- All documents related to any training ever provided to Officer Petit bearing on "probable cause" (Request 38);

- All documents and visitor logs that contain the names of every individual who entered the Warwick Police Station during a fifteen-day period in 2013 and during a two-month period in 2014, without respect to purpose and without any relationship to the issues in this case (Request 39);

- All documents that name Officer Petit's "supervisors" on two specific days, one in 2013 and one in 2014 (Request 46).

See ECF No. 178. As to his requests for documents related to Warwick police misconduct, Plaintiff contends that Warwick has long been obliged by state law to retain records of "[i]nvestigations of complaints of alleged officer misconduct," which may include "reports, correspondence, statements, investigation documentation, findings and disposition," for seven years. R.I. Secretary of State, Records Retention Schedule – Municipal Police Departments, LG6.12.8. As to the other requests in issue, Plaintiff contends that the applicable Rhode Island Records Retention Schedule establishes that the default retention period for municipal police records is, generally, at least three years. See generally id. LG6. Plaintiff has never issued a preservation letter for documents pertinent to this case.

Foundational to the sanctions motion is Plaintiff's argument that Warwick's duty to suspend its retention program and preserve all records conceivably in issue was triggered by its receipt on August 8, 2014, of the summary judgment memorandum that Plaintiff filed in Boudreau v. Lussier, 13-cv-388WES. Plaintiff argues that this filing put Warwick on notice of his claims against Warwick in this case (which was not filed until May 18, 2017). Applying the Rhode Island mandatory retention periods, Plaintiff reasons that, as of August 2014, Warwick became subject to the sweeping duty to suspend ongoing implementation of its routine records

7

retention plan as to any document pertaining to any complaint about any police officer, which necessarily encompasses all such records for the prior seven years (that is, back to August 2007). Applying the same logic to the remaining requests in issue – e.g., visitor logs, dispatch/duty rosters, timecards and training records – compels the conclusion that Warwick should have retained everything for the three-year retention period back to August 2011. Therefore, Plaintiff contends that Warwick's reliance on the operation of its retention policy to explain the unavailability of the above-listed information and documents from 2008/2011 through 2014 is necessarily an admission of spoliation.

      The fatal flaw in this argument is that Plaintiff's 2014 memorandum in Boudreau, 13-cv-388WES, ECF Nos. 157-157-2, does not allege that Warwick or Officer Petit engaged in retaliatory misconduct resulting in the initiation of a wrongful prosecution for embezzlement. Although Officer Petit and Warwick were defendants in Plaintiff's unsuccessful 2013 case, the section of Plaintiff's memorandum on which this spoliation motion relies does not even mention them. Rather, it is laser focused on alleged retaliatory fabrication of probable cause by Plaintiff's former employer, American Temperature Controls, Inc. ("ATC"), claiming that ATC "went to the R.I. State Police and made a fraudulent criminal complaint of embezzlement against the Plaintiff." ECF No. 157-2 at 41. Thus, this 2014 filing does not trigger Warwick's duty to preserve anything.

      Moving to the filing of the complaint as a trigger, the Court finds that a duty to preserve at least some records was triggered when Warwick was served with Plaintiff's original Superior Court complaint in this case on June 9, 2017. ECF No. 8 at 13. However, with no preservation letter from Plaintiff, Warwick's duty to preserve as of that date is significantly limited by the vague and conclusory nature of Plaintiff's allegations against Officer Petit and Warwick. Wai

8

Feng Trading Co. Ltd, 2019 WL 118412, at *1-2 (without preservation request that specifies documents that may be relevant, filing of complaint not sufficient to give notice of claim and trigger duty to preserve specific documents alleged to be no longer available). Further, as to the category of documents that clearly <u>should</u> have been preserved once Warwick became aware that it had been named in this case – documents pertinent to police misconduct by Officer Petit prior to and in connection with the alleged retaliatory fabrication/concealment of evidence to initiate a criminal embezzlement charge not based on probable cause – Warwick advises that it did preserve and has already produced all complaints and internal affairs material pertinent to Officer Petit and that there is nothing else to produce. <u>See</u> ECF No. 209 at 4. Because he did not file a reply, Plaintiff has not controverted this representation. Accordingly, to the extent that Plaintiff's motion rests on spoliation related to these documents, the motion for sanctions is denied.

Otherwise, the Court has sustained Warwick's relevancy objections to Plaintiff's sweeping <u>Monell</u> requests and has determined that the only <u>Monell</u> documents that are potentially discoverable are "complaints of police misconduct of which Warwick was aware that were found to have merit and are based on intentional falsification of documents and/or fabrication of probable cause to initiate wrongful criminal proceedings and making false warrant applications against Warwick police officers (including Officer Petit) during the period from July 1, 2012, though June 11, 2014." <u>Boudreau v. Petit</u>, C.A. No. 17-301WES, 2025 WL 437498, at *6 (D.R.I. Feb. 7, 2025). With no preservation letter and pleadings that are vague (except that they clearly allege that Officer Petit's "misconduct" was outside the scope of his employment both as a Warwick police officer and as a member of the statewide child pornography task force), the Court finds that Warwick's duty to preserve these <u>Monell</u> materials (except as to

9

Officer Petit) was not triggered by the filing of the complaint and did not arise until the 2024 Court Orders issued clarifying what is relevant and must be produced. Accordingly, to the extent that it rests on spoliation related to these <u>Monell</u> documents, the motion for sanctions is denied because Warwick was not subject to a sweeping and disproportional duty to preserve that encompassed these records at the time of their destruction pursuant to the operation of the retention policy. See <u>Bistrian</u>, 448 F. Supp. 3d at 474-75 (spoliation not established by failure to suspend retention policies resulting in small loss of documents relevant only in hindsight).

      As to the remainder of what Plaintiff's motion has put in issue, the Court finds that Plaintiff's request for eleven-to-twelve-year-old visitor logs revealing the identity of every person who entered the Warwick Police Station on certain days is hopelessly unhinged from what conceivably could be relevant or proportional to this case; the Court declines to consider sanctions to the extent that Warwick has not retained such documents. Similarly, the Court finds that Plaintiff has failed to demonstrate why his claim that Officer Petit pursued an <u>unauthorized</u> embezzlement investigation between July 2013 and June 2014 somehow renders relevant <u>all</u> documents that reflect the unrelated <u>authorized</u> work Officer Petit was performing (that is, duty rosters, timecards, log entries, dispatch records and more) so as to give rise to a duty to suspend the retention program and preserve all such records. The Court further finds that Plaintiff's vague request for all documents related to the training of Officer Petit based on a sweeping concept that is foundational to all police work – "probable cause" – effectively calls for the production of every document related to every training to which Officer Petit was ever exposed, from his recruitment at some unknown time in the likely distant past and continuing over the course of his entire career.[3] Such a request is overbroad and therefore insufficient to trigger a

---

[3] Nor has Plaintiff advised whether he has sought the relevant information in a less burdensome way – such as by asking about training that bears on the specific misconduct that Plaintiff alleges led to the prosecution for

duty to cease the orderly operation of the retention program with regard to all such material. Because there is no duty to preserve, spoliation sanctions for the failure to retain such records are denied. Finally, while Plaintiff certainly may propound discovery seeking the identity of Officer Petit's supervisor on two specific days in 2013 and 2014, that does not trigger a duty to preserve every document that names such a person sufficient to justify sanctions because all such documents were not retained.[4]

At bottom, Plaintiff has shown only that certain documents that were within the scope of mostly overbroad and inappropriate discovery requests are no longer available because of Warwick's routine retention policy; this is not actionable spoliation. See Hefter Impact Techs., LLC v. Sport Marka, Inc., Civil Action No. 15-13290-FDS, 2017 WL 3317413, at *7-8 (D. Mass. Aug. 3, 2017) (no spoliation sanctions where laptop was wiped based on routine retention policy during period when there was no clear duty to preserve information it contained, and conceivably relevant information that was lost was marginal). Plaintiff has failed to show that the missing material is relevant at all, or, to the extent that any might be relevant, that the relevant information cannot be obtained from another source, nor has he demonstrated that he has been prejudiced due to the operation of Warwick's retention policy. And he has not presented a scintilla of evidence to suggest that Warwick, aware of the content and materiality of a specific record, engaged in an affirmative act to cause it to be lost. Moody, 271 F. Supp. 3d at 431-32.

---

embezzlement. To that extent, the motion fails to meet the requirement of Fed. R. Civ. P. 37(e) that sanctions are appropriate only if the lost information cannot be replaced with additional discovery.

[4] As with the training documents, Plaintiff's motion for sanctions as to these records does not disclose whether he sought to propound other less burdensome discovery seeking the relevant information – the name of Officer Petit's supervisor on a specific day. To that extent, the motion fails to meet the requirement of Fed. R. Civ. P. 37(e) that sanctions are appropriate only if the lost information cannot be replaced with additional discovery.

While the foregoing amounts to more than enough reason to deny Plaintiff's motion for sanctions, the Court pauses to note that its ability to address Plaintiff's sanctions motion was impaired by two factors. First, page three of Plaintiff's brief is missing, which Warwick pointed out in its opposition brief, yet Plaintiff did not file a reply. Second, Plaintiff's motion fails to set the requests in issue in context. This omission is significant because Plaintiff has propounded hundreds of requests and the Court has issued numerous decisions regarding the overbreadth, disproportionality and impropriety of discovery he has propounded, to the point of finding that some amounted to harassment and were propounded for the purpose of inflicting burden. Yet, although many of the requests listed in the sanctions motion appear to duplicate requests that the Court has previously found to be so overbroad and vague as to deny Plaintiff's motion to compel responses, the numbers designating the requests in issue for sanctions do not mesh with the numbers designating the overruled requests, making it impossible for the Court to ascertain to what extent the sanctions motion is based on Warwick's failure to preserve documents responsive to requests that the Court has already ruled seek material that is irrelevant or so disproportional that Plaintiff's motions to compel have been denied.

### III.    Conclusion

Based on the foregoing, the Court finds that Plaintiff has failed to establish that there are any specific relevant non-privileged documents, which existed when Warwick was put on notice that they should be preserved and became subject to a duty to preserve, but which have been lost due to the ongoing operation of Warwick's retention policy. Nor does the Court find that Plaintiff has established prejudice arising from the non-availability of specific documents; nor does the Court find that Plaintiff has clearly and convincingly demonstrated that specific documents (or any documents) were intentionally destroyed; nor does the Court find that

Plaintiff has presented any evidence permitting the inference of intentional or bad faith destruction of relevant material.  Because Plaintiff's motion for sanctions (ECF No. 178) does not come close to establishing even the threshold requirements for consideration of any spoliation sanction, including without limitation the requested sanction of default, the motion is denied.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 19, 2025