UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JASON BOUDREAU,      :
    Plaintiff,      :
            :
   v.         :  C.A. No. 17-301MSM
            :
KEVIN PETIT, et al.,     :
    Defendants.    :

### ORDER DENYING MOTION FOR
### LEAVE TO ISSUE SUBPOENA DUCES TECUM

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Now pending before the Court is *pro se*[1] Plaintiff Jason Boudreau's[2] motion for leave to issue a subpoena duces tecum to Automatic Temperature Controls, Inc. ("ATC") and/or John W. Clegg & Co. ("Clegg"), ATC's accounting firm, or, if ATC and Clegg cannot locate the document Plaintiff seeks, that Plaintiff be given leave to serve the subpoena duces tecum on the Office of the Rhode Island Attorney General ("RIAG"). ECF No. 247. Plaintiff has made this motion for leave in compliance with the Court's Order of September 30, 2024, (based on the Court's finding of "serious[] abuse[ of] discovery privileges") in Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 4356314, at *5 (D.R.I. Sept. 30, 2024); see also Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 4279522, at *1 (D.R.I. Sept. 24, 2024) (motion for reconsideration denies

---

[1] The Court has afforded Plaintiff such leniency as is appropriate in his circumstances as noted in other decisions issued in this case. E.g., Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 4279522, at *1 n.1 (D.R.I. Sept. 24, 2024).

[2] For readers not familiar with this case, it involves the claim of convicted sex offender, Plaintiff Jason Boudreau, who was found storing and accessing child pornography on his then employer's – Automatic Temperature Control – computer, for which he was convicted but sentenced leniently by the State. Subsequently, he was prosecuted again – this time federally – for possession of child pornography (conduct that occurred after the criminal conduct he committed at ATC) and was sentenced to 235 months of incarceration. Plaintiff has filed civil cases against the individuals involved in the State child pornography prosecution, of which this case is one. See generally Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 4356314, at *1-3 & nn.2-3 (D.R.I. Sept. 30, 2024).

Plaintiff's request for public money to reacquire documents that he himself possessed but failed to preserve); Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 3092151, at *4 (D.R.I. June 18, 2024) (Plaintiff ordered to show cause regarding apparent discovery abuses). Plaintiff has also been criticized for abusive litigation tactics. See, e.g., Boudreau v. Lussier, 13-cv-388-WES-LDA, Text Order of July 31, 2015 (Court denies Plaintiff's motion for injunctive relief as "both legally and factually baseless" and disingenuously seeking to interfere with conditions imposed on him as a convicted sex offender, with referral to magistrate judge to consider sanctions).

In Boudreau, 2024 WL 4356314, the Court specifically addressed Plaintiff's longstanding pattern of using litigation and discovery to burden and harass ATC and denied his request to proceed with subpoenas to ATC itself, its payroll company, its insurer or to the Rhode Island Department of Labor & Training ("RIDLT") for records regarding ATC. Id. at *5-7. In addition, in now asking for the alternative remedy of a subpoena to RIAG, Plaintiff fails to disclose that the Court has specifically denied Plaintiff's motion to compel compliance with a prior subpoena directed to RIAG and rejected Plaintiff's attempt to draw RIAG into spoliation proceedings seeking documents related to the embezzlement charge because it could no longer locate the pertinent thumb drive where Plaintiff himself had been in possession and/or control of the same thumb drive. Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 4279514, at *1 (D.R.I. Sept. 24, 2024), reconsideration denied, 2024 WL 4794724 (D.R.I. Nov. 14, 2024).

In this instance, by contrast with prior subpoenas to ATC or its vendors (or to RIAG), Plaintiff targets a single document – "the 2011 fiscal year end financials for [ATC] that [Clegg] issued in February 2012" (the "Clegg Statement"). ECF No. 247 at 1. Confirming that this is a document that Plaintiff has had in the past but failed to retain notwithstanding his duty as a plaintiff to do so, Boudreau, 2024 WL 4356314, at *4 & n.10, Plaintiff quotes directly from the

2

Clegg Statement, which describes a "discover[y]" by ATC reported to its accountants (Clegg) of a misappropriation of assets by its "former controller" (that is, by Plaintiff) carried out in two ways: first, by the "theft of cash" and, second, by "unapproved bonuses." ECF No. 247 at 1. According to Plaintiff, the Clegg Statement notation supports a total uncollectible misappropriation of $59,754, which is nearly twice the amount of the unapproved bonuses that formed the basis for the criminal prosecution for which Plaintiff is now suing Warwick Police Officer Petit. Id.; see also ECF No. 1-1 at 55-56. Plaintiff speculates that the difference in these amounts "may have been inflated for tax purposes, which goes to credibility."[3] Id. Plaintiff also points out that the Clegg Statement indicates that the accountants were advised that "local authorities were notified" of the misappropriation. Id. Plaintiff argues that the "local authorities" may have been Warwick Police Officer Petit so that Officer Petit's delay in meeting with ATC about an embezzlement prosecution until July 2013 (after Plaintiff served Officer Petit with the 2013 complaint as alleged in this case) supports the inference that the prosecution was retaliatory.

There are several reasons why this request for leave to issue subpoenas must be denied. First, Plaintiff's credibility theory makes no sense in that the Clegg Statement reflects two forms of misappropriation, while the criminal embezzlement prosecution focused only on one; therefore, there is nothing sinister or suspicious about an accounting loss (comprising both of theft of cash and unauthorized bonuses) that exceeded the amount of theft by unauthorized bonuses only, which were the foundation for the embezzlement charge pursued by State

---

[3] The motion does not say whose credibility would be affected by the Clegg Statement, but the Court assumes Plaintiff means Steve Lussier, the primary ATC representative who (as Plaintiff alleges) met with Defendant Warwick Police Officer Petit in July 2013 about a possible embezzlement charge two weeks after Officer Petit received service of a prior civil lawsuit. Boudreau v. Petit, C.A. No. 17-301 WES, 2024 WL 665546, at *2 (D.R.I. Feb. 16, 2024). Plaintiff alleges that Lussier and Petit engaged in a conspiracy to frame Plaintiff for embezzlement in retaliation for the 2013 lawsuit. Id.

prosecutors. Second, Plaintiff's argument that he needs the document to develop his factual contention that ATC made a report of the misappropriation to "local authorities" prior to July 2013 rings hollow when the Court considers that this fact is already amply supported by the record, starting with the complaint, which attaches a letter dated July 2011 from Steven Lussier reporting to RIDLT ATC's claim that Plaintiff misappropriated money from ATC. ECF No. 1-1 at 55; see Boudreau v. Petit, C.A. No. 17-301 WES, 2024 WL 665546, at *1 (D.R.I. Feb. 16, 2024). At bottom, Plaintiff has the text of the critical language of the Clegg Statement, which he can use to question witnesses. Therefore, if this language in the Clegg Statement becomes relevant, Plaintiff has the quote already and can use it.[4] There is no need to require third parties like ATC and Clegg to assume the burden of a probably futile search for a document that neither of them is likely still to possess or to require RIAG to assume the burden of a futile search for a document that Plaintiff already knows it does not possess.

Based on the foregoing, Plaintiff's motion for leave to issue subpoena duces tecum (ECF No. 247) is DENIED.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
October 29, 2024

---

[4] The Court offers no opinion regarding admissibility.