UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JASON BOUDREAU,                    :
          Plaintiff,              :
                                  :
      v.                        :            C.A. No. 17-301MSM
                                  :
KEVIN PETIT, et al.,               :
          Defendants.             :

**MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTIONS FOR
PROTECTIVE ORDER AND FOR EXTENSION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

    In his Second Amended Complaint (ECF No. 232, "SAC"), *pro se*[1] Plaintiff Jason

Boudreau ("Plaintiff") alleges that, in July 2013, Warwick Police Officer Kevin Petit acted

outside of the scope of his duties as a Warwick police officer to retaliate against Plaintiff for his

having sued Officer Petit in a 2013 civil case (that this Court later found to be without merit).

Plaintiff contends that Officer Petit fabricated, suppressed and concealed evidence and

knowingly relied on false statements, as well as, despite the lack of probable cause, applied for

an overbroad and unauthorized search warrant in October 2013.  The SAC asserts that this

wrongful conduct by Officer Petit triggered Plaintiff's 2014 "fabricated" criminal prosecution by

the State for embezzlement of $34,826.11 from his former employer, Automatic Temperature

Controls, Inc. ("ATC").  ECF No. 232 ¶ 189; see also State v. Boudreau, P2-2015-0095A,

Defendant's Motion to Dismiss, Ex. 16 (R.I. Super. Ct. Aug 28, 2019).  Plaintiff's Monell claim

against Warwick, including its Police Department, rests on his conclusory contention that,

---

[1] The Court has afforded Plaintiff such leniency as is appropriate in his circumstances.  E.g., Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 4279522, at *1 n.1 (D.R.I. Sept. 24, 2024).

despite its awareness of analogous prior incidents, Warwick failed to train and supervise Officer Petit to prevent this conduct, as well as that Warwick's treatment of Plaintiff's civilian complaint about Officer Petit is consistent with a police "[C]ode of [S]ilence" condoning Officer Petit's conduct.[2]  ECF No. 232 ¶ 235.

Now pending before the Court is the motion of Defendants for a protective order.  ECF No. 261.  With the close of fact discovery approaching on April 1, 2026,[3] the motion is focused on thirty-three new interrogatories (ECF Nos. 254, 255) and forty-six new document requests (ECF No. 256) served on Warwick in November 2025 (collectively, the "new discovery"). Defendants ask the Court to order that they be protected from responding to the new discovery because (1) as to the new interrogatories, they exceed the permissible number (twenty-five) that may be served on a single party pursuant to Fed. R. Civ. P. 33(a)(1); (2) all of the new discovery is duplicative of the well more than five hundred requests (including interrogatories, document requests and requests to admit) as to which Defendants have already responded or the Court has previously ruled are out-of-bounds (as to some more than once); and (3) like much of the prior discovery, the new requests are overbroad, not targeted at relevant information or documents and are disproportionate.  Defendants contend that, given Plaintiff's utter lack of focus on permissible discovery that has not yet been provided, the Court may find that the new discovery has been propounded to harass and impose undue burden and expense.  They ask the Court to order that they need not respond pursuant to Fed. R. Civ. P. 26(c)(1)(A).

The motion for a protective order originally sought to protect Warwick entirely from responding to the new discovery.  It was accompanied by Warwick's motion to extend the time

---

[2] The claim of a "[C]ode of [S]ilence" to cover-up a pattern of police retaliation against individuals exercising First Amendment rights is a new allegation in the SAC ¶¶ 235-267.

[3] Plaintiff has filed a motion to extend the factual discovery deadline to June 30, 2026.  ECF No. 271.

2

to respond to any of the new discovery (ECF No. 262) until after the ruling on the motion for a protective order.  This motion to extend was granted by Text Order on January 21, 2026.  In issuing this Text Order, the Court relied on the preliminary observation (based on judicial examination of the new discovery) that the motion for a protective order appeared to have merit in that the new discovery appeared to be overbroad, disproportional, burdensome and significantly related to matters that the Court has already addressed in prior rulings.  In the Text Order, the Court also noted its concern about the impact of such an extension on the pretrial schedule.  To address this concern, and mindful that substantial judicial resources had already been expended in discovery management of this case, particularly to provide guidance regarding the scope of discovery (rulings that Plaintiff appeared to ignore),[4] the Court included in the January Text Order a judicial directive to Defendants:

> [T]o the extent that there are any non-duplicative requests for relevant, proportional and discoverable information or documents in the new discovery, Defendants should (but are not ordered to) respond before the protective order motion is resolved.

Text Order of Jan. 21, 2026 (emphasis added).  In response to this directive, on reply, Defendants represent that, as of February 19, 2026, Warwick "is in the process of responding to the discovery requests in response to Plaintiff's Second Request for Production of Documents addressed to Warwick that are not addressed in this motion."  ECF No. 267 at 9.

For his part, Plaintiff was granted two extensions of time to object to the motion for a protective order.  Text Orders of Jan. 21 and Feb. 4, 2026.  In granting the first of these

---

[4] That is, based on the extensive work this Court has already done, Defendants have the benefit of many judicial rulings to guide them regarding the scope of discovery.  See, e.g., Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 4771355, at *1-2 (D.R.I. Nov. 13, 2024) (count-by-count analysis of relevancy and proportionality including for Monell claims); Boudreau v. Petit, C.A. No. 17-301WES, 2025 WL 437498, passim (D.R.I. Feb 7, 2025) (same).

extensions, mindful of the observation incorporated in the previous text order issued the same day and mindful of Plaintiff's *pro se* status, the Court provided additional guidance to Plaintiff:

> [Plaintiff's] response to the motion for protective order should address . . . whether the new discovery is duplicative of prior requests to which Defendants have already responded or whether the new discovery has been propounded in disregard of the Court's many prior discovery rulings.

Text Order of Jan. 21, 2026.

In his opposition, Plaintiff disregarded this guidance to the extent that he failed to address any specifics regarding what he still needs that is relevant to this case.  Instead, he asks the Court to focus on the filing of the SAC on April 9, 2025; without adverting to any new factual allegations to justify new discovery,[5] he contends that this amendment triggered his right to propound discovery duplicative of that to which Defendants have already responded, as well as that the Court's prior orders are mooted by the amendment.  He also argues that the Court's Monell orders are unduly restrictive with respect to post-incident discovery and that his new discovery should be allowed to address that deficiency; that he should be provided a privilege log listing every document he has requested that is covered by privilege (despite the Court's prior orders that a privilege log is not required)[6]; that he should be allowed double the number of allowable interrogatories because he named the Warwick Police Department separately from the

---

[5] Plaintiff does point to the SAC's conclusory paragraphs alleging that Warwick operated its Police Department pursuant to a "[C]ode of [S]ilence."  ECF No. 232 ¶¶ 235-267.  However, apart from Plaintiff's allegation that Warwick did not react appropriately to the formal complaint Plaintiff made in 2012 and/or 2013, the only "facts" are Plaintiff's citation to two cases in the SAC – Wheeler v. Nelson, C.A. No. 18-cv-687-MSM and United States v. Pavao, No. 1:22 CR-00034-MSM-PAS, 2023 WL 3934555 (D.R.I. June 9, 2023), rev'd and remanded, 134 F.4th 649 (1st Cir. 2025) (per curiam).  As noted *infra*, these cases simply do not supply facts supportive of the allegation that, during the relevant period, Warwick's Police Department was operated based on a policy of silence and cover-up to protect an officer who intentionally fabricated evidence to bring a criminal charge not based on probable cause for the purpose of retaliation against a person exercising a First Amendment right.

[6] E.g., Boudreau v. Petit, C.A. No. 17-301WES, 2025 WL 437498, at *4 (D.R.I. Feb. 7, 2025) ("Warwick's assertion of the attorney-client privilege/work product doctrine is sustained.  No privilege log is ordered because the documents sought are not relevant").

municipality of Warwick; and that Defendants failed to meet and confer before filing the motion for a protective order. Plaintiff asks the Court to allow him to prosecute this overbroad and disproportionate discovery in significant reliance on out-of-district decisions that, for the most part, are based on the now-obsolete version of Fed. R. Civ. P. 26 that was tightened-up in 2015.

On reply, Defendants counter that they have already provided Plaintiff with the core discovery he propounded earlier in the fact phase of this case; that, in those instances where Plaintiff challenged the adequacy of their responses, they have long-since complied with the Court's orders requiring them to provide more; and that, in compliance with the Court's directive, they are in the process of responding to some of the document requests in ECF No. 256.

The motion for a protective order has been referred to me for determination.

## I.      BACKGROUND

From September 2009 to June 2011, Plaintiff was employed as the Finance Manager at Cranston-based ATC, overseeing ATC's financing statements, payroll, salaries and bonuses. Boudreau v. Petit, C.A. No. 17-301 WES, 2024 WL 665546, at *1 (D.R.I. Feb. 16, 2024). Plaintiff was fired in June 2011 when ATC discovered that he was using its computer to possess child pornography. Id. Because he served on a state-wide task force focused on internet crimes against children, Warwick Police Officer Petit participated in the criminal investigation of Plaintiff's use of ATC's computer to possess child pornography. Id. Based on this criminal investigation, Plaintiff was charged by the State and convicted in 2014 on a plea of *nolo contendere* to possession of child pornography. United States v. Boudreau, 58 F.4th 26, 29 (1st Cir. 2023).

Meanwhile, after ATC discovered Plaintiff's use of its computer for possession of child pornography and fired him, ATC also allegedly discovered and advised Officer Petit that it believed that Plaintiff had been embezzling from it by periodically taking "bonus[es]" to which he was not entitled. ECF No. 79-1 at 7; see also Boudreau, 2024 WL 665546, at *2 . In May 2013, while the State child pornography charge was pending but before Plaintiff was adjudicated, Plaintiff filed a lawsuit against ATC and various persons including Officer Petit whose conduct arguably triggered the child pornography prosecution.[7] Boudreau v. Lussier, 13-cv-00388-WES. In the 2013 lawsuit, Plaintiff claimed that he was the victim of wrongful interception of electronic communications that formed the basis for the state child pornography prosecution.[8] Id. Additionally, in 2012 and/or 2013, Plaintiff alleges that he filed a formal complaint with Warwick regarding misconduct by Officer Petit yet Warwick's investigation of this complaint "did not comport" with Warwick Police Department policies. ECF No. 232 ¶¶ 252-53.

Meanwhile, on July 30, 2013, Officer Petit interviewed an ATC principal about ATC's allegation that Plaintiff had embezzled from it by paying bonuses to himself to which he was not entitled. See generally ECF No. 232 ¶¶ 71-72; Boudreau, 2024 WL 665546, at *2. In June 2014, based on an investigation performed by the Rhode Island State Police, Plaintiff was

---

[7] The judicial officer presiding over the 2013 case (and other civil lawsuits brought by Plaintiff against Officer Petit and the ATC principals) expressly raised his "concern" that these cases were brought by Plaintiff against ATC, its principals and Officer Petit in retaliation for the child pornography criminal prosecution and, as to ATC and its principals, to deter further participation in prosecuting him. See Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 3092151, at *3 (D.R.I. June 18, 2024) (citing Boudreau v. Lussier, No. CA 13-388S, 2014 WL 651536, at *1 (D.R.I. Feb. 19, 2014)) (quashing overbroad subpoenas addressed to ATC's business vendors and other third parties seeking burdensome production of documents not relevant to the case; "[t]he Court is also concerned that . . . Plaintiff could be using this civil litigation to . . . retaliate against those he holds responsible for his criminal charges").

[8] Plaintiff's 2013 lawsuit ended when the Court entered summary judgment against him. See Boudreau v. Lussier, 901 F.3d 65, 69 (1st Cir. 2018) (affirming "summary judgment in favor of defendants on all of Boudreau's claims").

charged by the State with embezzlement.  Boudreau, 2024 WL 665546, at *2.  These charges were pending in 2015, when Plaintiff was charged again (this time federally) with possession of child pornography for conduct that occurred after Plaintiff had been convicted by the State of possession of child pornography using ATC's computer.  United States v. Boudreau, 16-cr-00011-JJM.  Based on his federal guilty plea, Plaintiff was convicted of the new child pornography charges and is now serving a 235-month sentence in federal prison.  Boudreau, 58 F.4th at 29 (dismissing Plaintiff's appeal and summarizing Plaintiff's history of crimes against children, both "hands-on" and by possessing child pornography).

In 2017, Plaintiff filed this case in which he alleges that Officer Petit fabricated the evidence to support what Plaintiff claims is the unwarranted charge of embezzlement to retaliate against Plaintiff for filing the 2013 lawsuit.  This case was stayed until March 2023, when the embezzlement charge was dismissed because of ATC's unwillingness to participate in the prosecution further as a result of its settlement agreement with Plaintiff.  See Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 4356314, at *2 (D.R.I. Sept. 30, 2024).  With the stay lifted, discovery began.  During the past three years, the Court has issued more than ten discovery decisions and many text orders in its struggle to manage discovery in this case.

## II.    STANDARD OF REVIEW

Rule 26(c)(1) permits a party from whom discovery is sought to move for a protective order based on "good cause" to protect that party from undue burden or expense.  Fed. R. Civ. P. 26(c)(1).  Courts have "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required."  Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).  "The 'good cause' standard . . . is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case."  Gill v. Gulfstream Park Racing Ass'n,

7

Inc., 399 F.3d 391, 402 (1st Cir. 2005) (internal quotation marks and brackets omitted).  The "burden of demonstrating good cause rests on the proponent of the protective order."  Walker v. IHI Power Servs. Corp., C.A. No. 23-57 WES, 2025 WL 949239, at *2 (D.R.I. Mar. 28, 2025). "To show good cause, the party seeking the protective order must demonstrate a particular need for protection; [b]road allegations of harm, unsubstantiated by specific examples or articulated reasons, do not satisfy the Rule 26(c) test."  Heagney v. Wong, Civil Action No. 15-40024-JSH, 2016 WL 2901731, at *3 (D. Mass. May 18, 2016) (internal quotation marks omitted) (alternation in original); see Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986) ("A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements.").

Rule 26(c)(1) requires that a motion for a protective order "include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action"; this is similar to the Fed. R. Civ. P. 37 requirement for motions to compel.  Fed. R. Civ. P. 26(c)(1); see Fed. R. Civ. P. 37(a)(1); see also Gericke v. Begin, Civil No. 11-cv-231-SM, 2012 WL 4340520, at *1 (D.N.H Sept. 20, 2012) (motion to compel did not include required certification – for that reason alone motion could "properly be denied"); Lalonde v. Textron, C.A. Nos. 02-334S, 02-491S, 2005 WL 8176212, at *2 (D.R.I. Oct. 12, 2005) (failure to include Fed. R. Civ. P. 37 meet and confer certification in motion to compel is "technical" violation of rule that in circumstances supports denial of motion to compel), appeal denied, 2006 WL 8458404 (D.R.I. Feb. 10, 2006).  However, it remains within the discretion of the Court to consider a Fed. R. Civ. P. 26(c)(1) motion on the merits and waive strict compliance with the meet-and-confer requirement.  Criscione v. Divincenzo, Case No. 1:24-CV-1446-PAB, 2025 WL 3153390, at *3 n.5 (N.D. Ohio Nov. 12, 2025); see Stein v

Collins, Civil No. 3:23-cv-30100-KAR, 2025 WL 1248916, at *3 (D. Mass. Apr. 30, 2025) (court retains discretion to determine whether to deny motion for failure to comply with Fed. R. Civ. P. 37's meet and confer requirement).  When there is no point in denying such motion without prejudice just so that it may be refiled, resulting in delay, the Court may exercise its discretion to decline to enforce the prefiling conference requirement in the circumstances of the particular case.  Jackson v. Unicity Int'l, Inc., Case No. 2:25-cv-00738-GMN-NJK, 2025 WL 2222767 at *1 n.1 (D. Nev. Aug. 5, 2025).

## III.    ANALYSIS

The pleading and discovery phases of this case have been plagued by Plaintiff's improper, abusive and defiant-of-court-orders conduct.  See, e.g., Boudreau, 2024 WL 4356314, at *8 (finding that Plaintiff "seriously abused" discovery privileges for the purpose of harassment and to inflict burden and not to procure discovery that is relevant or proportional); Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 4279094, at *1 n.1 (D.R.I. Sept. 24, 2024) (finding Plaintiff's misconduct and defiance of court order undermined court's goal of moving case into discovery phase), adopted, 2025 WL 305933 (D.R.I. Jan. 27, 2025); Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 4279522, at *1 (D.R.I. Sept. 24, 2024) (denying motion for reconsideration; "Plaintiff is seeking the deployment of public money to reacquire documents that he himself possessed but apparently failed to preserve").  Plaintiff's abusive discovery tactics in this case are analogous to conduct found by other judicial officers in other cases that Plaintiff brought against persons involved in Plaintiff's criminal prosecutions.  Boudreau v. Smith, Case No. 3:17-cv-589 (SRU), 2019 WL 5417744, at *3-4 (D. Conn. Oct. 22, 2019) (in case against persons involved in Plaintiff's arrest for federal child pornography prosecution, granting protective order barring discovery on matters that court had already ruled to be

9

irrelevant or are otherwise improper, denying additional interrogatories that are vague and cumulative); Boudreau v. Lussier, No. CA 13-388S, 2014 WL 651536, at *1-2 (D.R.I. Feb. 19, 2014) (in case against persons involved in Plaintiff's state child pornography prosecution, court determines Plaintiff's subpoenas should be quashed, except with leave to serve one limited subpoena).

The pending motion for a protective order is focused on discovery that appears to be the latest iteration of this unfortunate pattern.  Importantly, despite the Court's guidance urging Plaintiff to target his arguments by focusing on what remains unproduced that is relevant and proportional, how the new discovery harmonizes with the Court's many prior orders and rulings, and to what specific extent the new discovery is not duplicative because it is grounded in new allegations in the SAC, the Court still cannot ascertain how to separate the wheat from the chaff. By way of just two examples, Plaintiff concedes that the new discovery is "duplicative" but vaguely argues that this may be disregarded because the prior versions were propounded to a "different defendant since the first defendant claimed it was not in 'this Defendant's possession'"; however, Plaintiff provides the Court with no detail regarding which of the seventy-nine requests he refers to and which defendant deferred with such a response.  ECF No. 266 at 2.  Similarly, Plaintiff presents a lengthy Monell argument but appears to take issue with the Court's prior Monell discovery scope decisions[9] only with respect to the holding that Warwick must comply by providing documents and information from July 1, 2012, through June 11, 2014, the date of Plaintiff's arrest by the Rhode Island State Police for embezzlement. Yet Plaintiff fails to establish how Monell-based discovery outside the scope of the Court's prior

---

[9] Boudreau v. Petit, C.A. No. 17-301WES, 2025 WL 437498, at *6 (D.R.I. Feb. 7, 2025) (ruling on scope of Monell discovery); Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 4771355, at *4 (D.R.I. Nov. 13, 2024) (same).

rulings is tailored to focus on Warwick's policies, customs or practices that are causally linked to the specific conduct that he alleges Officer Petit engaged in. Boudreau v. Petit, C.A. 17-301WES, 2025 WL 437498, at *2 (D.R.I. Feb. 7, 2025). Instead, Plaintiff buttresses his opposition by relying on cases holding that post-incident material "may" be relevant in some cases but fails to explain why an expanded period would result in discovery that is relevant in this case.[10]

### A. Good Cause to Protect Warwick from Responding to Interrogatories (ECF Nos. 254, 255)

Focusing first on Plaintiff's new interrogatories, Plaintiff contends that his decision to name Warwick twice, once as municipality and once as a unit (police department) within the municipality, entitles him to propound more than twenty-five interrogatories. To support this argument, Plaintiff relies on Warwick's having failed to press its status as a single defendant until now. Plaintiff ignores the Court's prior ruling on this point. Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 5202023, at *1 n.2 (D.R.I. Dec. 23, 2024) (Warwick and Warwick Police Department are single entity and therefore constitute single defendant). He also ignores the Court's prior rejection of his motion for leave to propound more interrogatories. Text Order of Dec. 23, 2025.[11] Because the interrogatories in the new discovery plainly go past the limit of

---

[10] When anchored in the facts in the SAC and the specific Monell rulings issued by the Court, Plaintiff's challenge to the Court's Monell ruling based on the need for post-incident discovery makes no sense. That is, the core incident occurred in July 2013 when Officer Petit met with ATC about the embezzlement claim, while Plaintiff's formal complaint about Officer Petit, which Plaintiff alleges was not properly investigated, was filed in 2012 and/or 2013. ECF No. 232 ¶¶ 71-73, 252-53. Thus, the time frame for Monell discovery set by the Court expressly permitted post-incident discovery regarding Warwick's investigation of Plaintiff's formal complaint against Officer Petit. See Fernandes v. Bouley, Civil Action No. 20-11612-GAO, 2022 WL 2915702, at *6 (D. Mass. July 25, 2022) (lack of proper investigation and failure to take disciplinary action against police officers in relation to the alleged constitutional violations underlying the suit is sufficiently relevant to Monell to permit discovery even though post-incident). Further, the Court's Monell ruling specifically contemplated that discovery may focus on such post-incident investigation of the specific claim. Boudreau, 2025 WL 437498, at *2 (Monell discovery may focus on "records regarding investigations pertinent to the specific claim").

[11] In the text order, the Court reminded Plaintiff that the City of Warwick and the Warwick Police Department are a single entity.

twenty-five and Plaintiff's motion to expand that limit has already been denied (and Plaintiff has not suggested any solution such has asking the Court to permit him to proceed with a specified smaller set) the Court finds good cause to grant the requested protection as to the interrogatories.

While the Court could stop with this ruling, it seems appropriate to comment further on the other problem with these interrogatories – the content of the questions. Plaintiff stumbles badly in that most of them are facially improper. For starters, Plaintiff has asked nine new interrogatories seeking information regarding other cases against Warwick, most of which the Court has already examined and found to be irrelevant. Boudreau, 2025 WL 437498, at *5 n.10 (holding that Wheeler, Shackelford, Chisholm, and Heon are irrelevant); Boudreau v. Petit, No. CV 17-301WES, 2024 WL 4771355, at *3 n.4 (D.R.I. Nov. 13, 2024) (holding that Wheeler is irrelevant). These interrogatories add two new cases that are equally irrelevant.[12] Also ignoring the Court's prior rulings, Plaintiff again asks questions based on his misinterpretation of a holding of the Rhode Island Superior Court. Boudreau v. Petit, C.A. No. 17-301WES, 2024 WL 4871783, at *1 (D.R.I. Nov. 21, 2024) ("Superior Court's holding is that no person or entity committed any Brady or other intentional violation of Plaintiff's rights because the material that was omitted from the set that was provided to Plaintiff's criminal attorney was merely cumulative and would not have been exculpatory but would have only further confirmed Mr.

---

[12] Plaintiff's new discovery asks for detailed information about United States v. Pavao, No. 1:22-CR-00034-MSM-PAS, 2023 WL 3934555, at *2 (D.R.I. June 9, 2023). Pavao is entirely irrelevant to this case not only because it dealt with whether a prolonged traffic stop was based on adequate reasonable suspicion, with no finding of any misconduct by the officer, but also because the First Circuit reversed the District Court's finding that reasonable suspicion was lacking and found that the "officer acted lawfully." United States v. Pavao, 134 F.4th 649, 659 (1st Cir. 2025) (per curiam). Similarly, Plaintiff asks for detailed information about a claim dismissed at screening for failure to state a claim in Mejia v. Cenerini, No. CA 12-508 S, 2012 WL 5472164, at *1-2 (D.R.I. July 12, 2012), adopted by text order (D.R.I. Nov. 9, 2012). The problem is that Mejia alleges that the state court judge's signature on an affidavit supporting a warrant issued in connection with the claimant's 2009 arrest was forged and the facts in the affidavit were false and did not establish probable cause, but Mejia was summarily dismissed because, far from no probable cause to prosecute, the claimant had been charged, convicted and sentenced by the federal court. See id.; see also Mejia v. Cenerini, No. CA 12-508 S, ECF No. 2. Mejia is not relevant to this case.

12

Boudreau's guilt [of possession of child pornography]") (internal quotation marks omitted) (alteration in original). That leaves a series of questions that are hopelessly overbroad, seek largely irrelevant information and require answers that would be burdensome and disproportional to provide. By way of examples, Plaintiff asks Warwick to describe with "specificity and detail" generic procedures for: procuring a search warrant; communicating with the Rhode Island attorney general about criminal investigations; providing training to officers accused of misconduct; record keeping; and the details of every police misconduct complaint of which the officer was exonerated since 2013. None of these are anchored in the facts of this case.[13] And the Court is unable to ascertain whether those that are not facially improper are nevertheless duplicative of questions that have already been answered. Thus, entirely apart from the problem with the number of interrogatories, based on this alternative analysis, the Court finds good cause to protect Warwick from responding to any of them.

**B.      Good Cause to Protect Warwick from Responding to Some Document Requests (ECF Nos. 256)**

As to the forty-six new document requests, Warwick is responding to some of them and these responses are not yet due.[14] See ECF No. 267 at 9. As to the remainder, the Court finds that they suffer from many of the same defects as the interrogatories, in that they are focused on matters as to which the

---

[13] The exception is Plaintiff's ongoing attempt in this case to cure his lack of evidence based on a claim of spoliation of evidence that may never have existed. The Court has repeatedly addressed this argument and held, for example, that "that Plaintiff has failed to establish that there are any specific relevant non-privileged documents, which existed when Warwick was put on notice that they should be preserved and became subject to a duty to preserve, but which have been lost due to the ongoing operation of Warwick's retention policy." Boudreau v. Petit, C.A. No. 17-301MSM, 2025 WL 553975, at *1 n.2, 6 (D.R.I. Feb. 19, 2025) (denying sanctions for spoliation, finding Plaintiff's "spoliation claim is somewhat illogical in the context of this case as the allegedly 'lost evidence' apparently was within Plaintiff's constructive/actual possession, custody and control prior to and after his claims in this case were pending, but, aware of the content, he failed to take steps sufficient to preserve the evidence").

[14] This appears to be Document Requests 4-6, 11-13, 16, 19, 23, 24, 29-32, 35-46. Based on the Court's Text Order of January 21, 2026, granting Defendants' motion to extend, these responses are due thirty days after the issuance of this decision, although the Court hopes that production will be completed sooner.

Court has already ruled, such as documents related to the irrelevant <u>Wheeler</u>, <u>Shackleford</u>, <u>Mejia</u>, <u>Chishom</u> and <u>Heon</u> cases discussed *supra*, and documents broadly related to any conduct, training and supervision of Officer Petit and other officers untethered to the facts of this case.  <u>Boudreau</u>, 2025 WL 437498, at *2, 6 (ordering discovery regarding training and supervision and investigation of Officer Petit and other police misconduct of which Warwick is aware, provided that such discovery must be time limited and "narrowly tailored to focus <u>on the specific conduct</u> alleged to have resulted in the constitutional deprivation that harmed the claimant") (emphasis in original).  Others of these requests are improper because they seek documents that relate to the engagement of legal counsel by Warwick and/or Officer Petit that are clearly privileged and as to which the Court has already ruled, including that a privilege log is not necessary.  <u>Id.</u> at *4-5.  Overall, these concerns, coupled with Plaintiff's clear and utter disregard for the Court's prior discovery orders, amount to good cause to justify the limited protective order that Warwick now seeks.

      C.       **<u>Warwick's Failure to Meet and Confer</u>**

Plaintiff is absolutely right that Defendants' motion for a protective order fails to comply with the requirement of Fed. R. Civ. P. 26(c)(1) that the movant must certify that the parties have met and conferred.  The Court further finds that Defendants' silence in response to this argument establishes that there is no certification because there was no meet and confer.  And there is no question that the omission of a certification that the movant made a good faith effort to resolve the discovery dispute before seeking court intervention may be grounds to deny a motion for a protective order.  <u>Aponte-Navedo v. Nalco Chemical Co.</u>, 268 F.R.D. 31, 41 (D.P.R. 2010).

The unique facts and circumstances of this case, however, implore the Court's discretion in managing discovery.  <u>See</u> <u>Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.</u>, 333 F.3d 38, 41 (1st Cir. 2003) ("District courts exercise broad discretion to manage discovery matters."); <u>Seattle Times Co.</u>, 467 U.S. at 36 (courts have broad discretion to decide when a

14

protective order is appropriate and what degree of protection is required). The Court notes that Defendants have not eschewed compliance with the need to meet and confer in this case; to the contrary, it is clear that they have struggled in the context of other discovery issues to meet and confer despite the significant difficulties and delays inherent in communicating with Plaintiff who is incarcerated and serving a long sentence in a federal prison. See ECF No. 270-1 at 2-16 (fifteen-page single-spaced meet and confer letter from Defendants to Plaintiff highlighting inadequacies in his discovery compliance). The Court further notes the probable futility of a meet and confer regarding this motion in light of the reality that it arose as a culmination of events that preceded the filing of the motion, particularly prior court proceedings and Plaintiff's disregard of the Court's prior rulings as outlined supra. In addition, Plaintiff has not pointed to any issue that he contends would have been mooted by a meet and confer. And Defendants have complied with the Court's directive to respond to at least some of the new discovery.

Based on the foregoing and in the unique circumstances here, the Court exercises its discretion to waive strict compliance with the meet-and-confer requirement, particularly in light of the inevitable delay that would result from requiring Defendants to engage in a time-consuming and likely fruitless meet and confer before refiling the motion. See Criscione, 2025 WL 3153390, at *3; Jackson, 2025 WL 2222767, at *1 n.1. The Court declines to deny the motion based on Defendants' failure to comply with Fed. R. Civ. P. 26(c)(1).

## IV.   CONCLUSION

Based on the foregoing analysis, the motion of Defendants Warwick Police Officer Kevin Petit and the City of Warwick, including its Police Department, for a protective order, ECF No. 261, is GRANTED, except for those document requests in ECF No. 256 to which Warwick is in the process of responding, and except to the extent that Defendants asked the Court to require

that any new discovery that Plaintiff may propound must be approved in advance, which aspect of the motion is denied.  To the extent that Plaintiff included a request to extend pretrial discovery deadlines in his Opposition, ECF No. 266 at 15, that request is denied.  And to the extent that Plaintiff' Opposition asked the Court to allow him to seek an interlocutory appeal of the Court's prior rulings regarding the scope of <u>Monell</u> discovery, the Court finds that this request is beyond the scope of this decision and makes no determination, one way or the other.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 17, 2026